UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOISE SIMMONS, mother and next friend of minor child J.S., *et al.,* | ) |
| | ) |
| Plaintiffs, | ) |
| | )     Civil Action No. 08-0388 (JR) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.,* | ) |
| | ) |
| Defendants. | ) |

## <u>NOTICE OF FILING ADMINISTRATIVE RECORD</u>

Defendants hereby file the administrative record in the above captioned case.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the
District of Columbia

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division

<u>/s/ Edward P. Taptich</u>
EDWARD P. TAPTICH [012914]
Chief, Equity Section 2

 <u>/s/ *Juliane DeMarco*</u>
JULIANE DEMARCO, [490872]
Assistant Attorney General
Equity Division
441 4th Street, N.W., 6S
Washington, D.C. 20001
Tel. - (202)724-6614
Fax - (202)727-3625

July 2, 2008

## Index of Administrative Record

|     |                                                                                  | **Page** |
|-----|----------------------------------------------------------------------------------|----------|
| 1.  | Certification of Record                                                           | 1        |
| 2.  | HOD dated 12/3/07                                                                 | 2-7      |
| 3.  | Request of Number of OHI Students, 11/28/07                                       | 8-9      |
| 4.  | Plaintiffs disclosure statement dated 11/13/07, w/att.                            | 10-11    |
| 5.  | JS-01 Expedited Due Process Complaint Notice, 9/20/07                             | 12-15    |
| 6.  | JS-02 MDT meeting notes and IEP, 9/4/07                                           | 16-34    |
| 7.  | JS-03 Letters and IEP to/from Ms. Kelly, 6/19-6/20/07                             | 35-39    |
| 8.  | JS-04 Psycho-Educational Evaluation, 3/27/06                                      | 40-47    |
| 9.  | JS-05 HOD, 2/21/07                                                                | 48-52    |
| 10. | JS-06 Comprehensive Psychiatric Evaluation, 5/11/06                              | 53-58    |
| 11. | JS-07 Clinical Psychological Evaluation, 4/13/06                                 | 59-63    |
| 12. | JS-08 Psychiatric Evaluation                                                      | 64-68    |
| 13. | JS-09 Math Scores, 9/11/06                                                        | 69       |
| 14. | JS-10 Letter from Children's Medical Center, 11/4/05                             | 70       |
| 15. | JS-11 Meeting Notes, 12/18/06                                                     | 71-73    |
| 16. | JS-12 MDT Meeting Notes, 3/26/07                                                  | 74-84    |
| 17. | JS-13 IEP, 3/26/07                                                                | 85-92    |
| 18. | JS-14 Letter from attorney Ekekwe dated 9/14/07 with acceptance letter from Sunrise Academy, 9/13/07 | 93-95    |
| 19. | DCPS Disclosure Statement, 11/14/07, w/att.                                       | 96-97    |

20. DCPS-01 MDT Notes, 9/4/07                           98-102

21. DCPS-02 Prior to Action Notice, 9/4/07             103

22. DCPS-03 Letter of Invitation, 10/1/07              104-105

23. DCPS-04 IEP, 9/4/07                                106-116

24. Hearing Notice, 11/7/07                            117-119

25. Scheduling Memorandum, 9/20/07                     120-121

26. Expedited Due Process Complaint Notice, 9/20/07    122-127

27. Transcript of Hearing, 11/21/07                    128 *etc.*

# H. St. Clair, Esq.
## Attorney at Law

2I5 Ninth Street, SE    Suite I02
Washington, D.C.  20003-2II3
Tel. & Facsimile  (202) 543-2409

# CERTIFICATION of RECORD

RE:      The matter of J████ S███████    DOB:███ 1998
Date:    5-19-2008
TO:      Student Hearing Office, OSSE
FROM:  H. St. Clair, Esq., IHO

Having rendered a decision in the above referenced matter, I made this record as the assigned independent hearing officer.

The record includes:

1. The Hearing Officer Decision/Determination completed by me and dated December 3, 2007.

2. The Hearing Officer Exhibit: a DCPS certification concerning the number of OHI disability coded students at M.C. Terrell Center dated November 28, 2007.

3. A packet of Petitioner Exhibits 1 thru 14 dated November 13, 2007.

4. A packet of DCPS Exhibits 1 thru 4 dated November 14, 2007.

This certification by me is that this is the administrative record in this matter made before me and that it is true, correct and complete.

CORRECTION:   The adjective "no" was typographically omitted from Finding of Fact No 4 in the December 3, 2007 HOD.   The Finding should read: 4. There was no evidence to the effect the student was suspended from a DCPS school.  The student was not denied a Manifestation Determination Review.

1

# *District of Columbia*

## Office of the State Superintendent of Education

### Office of Compliance & Review

*State Enforcement and Investigation Division*

### *__confidential__*

H. St. Clair, Esq., Due Process Hearing Officer
1150 Fifth Street, SE, First Floor, Washington, D.C. 20003
Facsimile: (202) 698-3825

| | | |
|---|---|---|
| In the Matter of | ) | **IMPARTIAL** |
| | ) | **DUE PROCESS HEARING** |
| J███████ S██████████, student | ) | |
| Date of Birth: ████, 1998 | ) | **DECISION & ORDER** |
| | ) | |
| Petitioner, | ) | |
| | ) | Request Date:    September 20, 2007 |
| versus | ) | Hearing Date:    November 21, 2007 |
| | ) | |
| The District of Columbia Public Schools, | ) | Held at:    Student Hearing Office, DCPS |
| Attending: SunRise Academy, | ) | 1150 Fifth Street, SE |
| | ) | First Floor - Hearing Room 7A |
| Respondent. | ) | Washington, D.C. 20003 |

Parent:                    Eloise Simmons
                           2734 Langston place, SE
                           Washington, D.C. 20020

Counsel for the Parent/Student:    Olekanma A. Ekekwe, Esq.
                           1001 Pennsylvania Avenue, NW, Suite 600
                           Washington, D.C. 20004

District of Columbia Public Schools:    Laura George, Esq., Attorney-Advisor
                           **Office of the General Counsel, DCPS**
                           825 North Capitol Street, NE 9th Floor
                           Washington, D.C. 20002

An INDEX of NAMES is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant witnesses. The index will be detached before release of this DECISION & ORDER as a public record.

i

# <u>INDEX of NAMES</u> for J█████ S█████████

**Hearing Date:** November 21, 2007

Appearing on behalf of the parent/student:

1. Eloise Simmons, mother  *
2. Jada Jackson, cousin
3. Tameka Jackson, cousin
4. Makini Niliwaambieni, Principal SunRise  **
5. Felicia Norman, educational consultant, Scruples Corporation  **

Appearing on behalf of DCPS:

1. Iris Pulliam, Special Education Coordinator, M.C. Terrell Center  **

\* Gave testimony.
\*\* Gave testimony via telephone.

## INTRODUCTION

On September 20, 2007, Counsel for the Parent filed the herein Complaint on behalf of the Parent and student complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained of inappropriateness of educational placement and, for relief, requested placement at the SunRise Academy.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 1:00 A.M., Wednesday, November 21, 2007 at the Student Hearing Office, DCPS, 1150 Fifth Street, SE - First Floor, Hearing Room 7A, Washington, D.C. 20003. The hearing convened as scheduled.

## JURISDICTION

The hearing convened under Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004, Title 34 of the Code of Federal Regulations, Part 300, and Title V of the District of Columbia Municipal Regulations.

**ISSUES:**

1. **Was the student denied a Manifestation Determination Review?**

2. **Was M.C. Terrell Center an inappropriate educational placement for the student?**

3. **Did fail to convene an IEP/Placement meeting for the student?**

4. **Could SunRise Academy provide educational benefit to the student?**

## SUMMARY of the EVIDENCE and FINDINGS of FACT

As a preliminary matter DCPS moved for a DISMISSAL pointing out that the Parent did not attend a resolution session.

The hearing officer determined that DCPS failed to schedule the resolution session for a certain date and time in conformity with paragraph 33 of the *Blackmon/Jones Consent Decree* and DENIED the DCPS motion to DISMISS. DCPS offered dates but did not schedule a resolution session in this matter.

By facsimile dated November 13, 2007, the parent disclosed 8 witnesses and 14 documents.

By facsimile dated November 14, 2007, DCPS disclosed 1 witness and 4 documents.

The documents were placed into the record and are referenced/footnoted herein where

relevant.

Counsel for the Parent represented that, while attending Stanton Elementary School, the student had disciplinary problems; that the problems continued after the student was coded OHI full-time and placed at M.C. Terrell Center (MCTC), a placement that the Parent opposed from the beginning.

The Parent was ordered forward.

The Parent testified that she enrolled the student at MCTC at the beginning of the 2007-08 School Year but attempted to return the student to Stanton ES after a disciplinary incident at the MCTC; that Stanton ES informed her that the student could not return to Stanton ES. The Parent testified that she had received numerous telephone calls from the principal at MCTC complaining of the student's behavior but that the student had not been suspended; that on occasion, the Metropolitan Police were summoned and that a police officer told her that MCTC was not a good school for the student. The Parent described MCTC as open-space with students running about unsupervised; that security at MCTC was inadequate. The Parent testified that the student started at SunRise Academy sometime during the week of November 12, 2007.

The Principal of SunRise Academy testified via telephone to the program at the academy; the testimony is not recounted here.

The conserve administrative time, the DCPS witness was taken out of order.

The Special Education Coordinator (SEC), MCTC testified via telephone that she was familiar with the student and that MCTC was implementing the student's September 4, 2007 IEP;[1] that the student had made progress at MCTC. On cross-examination, the SEC testified that she did not recall having a conversation with the Parent. In response to questions from the hearing officer, the SEC testified that the student was in a full-time self-contained classroom with seven other students, a special education teacher and a teacher assistant.

The educational consultant from the Scruples Corporation testified via telephone; the testimony is not recounted here as the consultant had no personal knowledge of the student.

The parties rested.

Argument.

In consideration of the testimony, documents and arguments herein, the hearing officer found the following facts:

1. During the September 4, 2007 MDT/IEP/Placement meeting,[2] the student was coded OHI with 27.5 hours of services education services and was placed at the MCTC. Parent objected to the student attending M.C. Terrell Center and recommended SunRise Academy. The Parent had decided that she would only accept SunRise Academy for the student.

2. While the Parent testified of police involvement with the student's disciplinary problems at MCTC, no police record was introduced at the hearing.

<p style="text-align:center">2 of 3 pages</p>

---

[1] Parent Document No 2
[2] *ibid*, page 4

3. There was no evidence to the effect MCTC was inappropriate for the student. The uncontroverted testimony of the SEC was that MCTC was implementing the September 4, 2007 IEP.

4. There was evidence to the effect the student was suspended from a DCPS school. The student was not denied a Manifestation Determination Review.

# DISCUSSION and CONCLUSIONS of LAW

### DCPS is required to make FAPE available to all children with disabilities within the jurisdiction of the District of Columbia.

*IDEIA 2004* requires DCPS to fully evaluate every child suspected of having a disability within the jurisdiction of the District of Columbia, ages 3 through 21, determine eligibility for special education services and, if eligible, provide same through an appropriate IEP and Placement. In this matter DCPS met the requirement.

During the hearing, the Parent did not produce any evidence to the effect MCTC was not implementing the September 4, 2007 IEP. Moreover, the Parent could not recall critical details and dates and was not a credible witness.

**Findings were made for DCPS as to Issues 1 & 2. Issues 3 & 4 were mooted.**

In consideration of the foregoing, the hearing officer made the following

# ORDER

WITH PREJUDICE, the herein
Complaint is DISMISSED.

**This is THE FINAL ADMINISTRATIVE DECISION. Appeal can be made to a court of competent jurisdiction within ninety (90) days of the issue date of this decision.**

Date: December 3, 2007

H. St. Clair, Esq., Hearing Officer

Issued: _____
       Student Hearing Office, DCPS

3 of 3 pages

STUDENT'S NAME: J█████ S█████████

SCHOOL OF ATTENDANCE: Sunrise Academy

D.O.B. ████-98

HEARING DATE: 11-21-07    ROOM: 7A    TIME: 1 A.M./P.M.

| PARTICIPANT NAME: | ON BEHALF OF DCPS OR STUDENT: | TITLE: |
|---|---|---|
| Laura George | DCPS | Attorney |
| Eloise L. Simmons | Student | Mother |
| Jada Jackson | | Cousin |
| Tameka Jackson | | Cousin |
| Olekanma Ekekwe | Student | atty/Advocate |
| Makini Nilimambien. | | |
| Nilimambien | | |
| Fris Pulliam | SEC | M. C. Terrell |
| Bersiak Norman | | |
| Felicia | | |
| | | |
| | | |
| | | |
| | | |

**PLEASE CHECK ONE OF THE FOLLOWING BOXES**

Hearing Held/Concluded _____ Withdrawn _____ Settlement _____ Continued _____

Other: _____

_____

_____

**Impartial Hearing Officer (PLEASE SIGN)**

## FACSIMILE TRANSMITTAL SHEET

| TO: *Laura George* | FROM: Iris D. Phillips-Pulliam, LICSW  Special Education Coordinator |
|---|---|
| COMPANY: *OGC* | DATE: *11/28/07* |
| FAX NUMBER: *2) 698-3825* | TOTAL NO. OF PAGES INCLUDING COVER: |
| PHONE NUMBER: *2)548-2580* | TELEPHONE NUMBER: 202 645-3740 |
| RE: *OHI Students* | FAX NUMBER: 202 645-7322 |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

*Re. J. S▬▬▬ Hearing*

8



**MCT Center**
@M. C. Terrell Elementary
3301 Wheeler Road, SE
Washington, DC 20032

November 28, 2007

To: Herb Sinclair
    Hearing Officer

Thru: Laura George
    OGC

From: Iris Pulliam
    M C Terrell Center

Re: Request of Number of OHI Students

According to IDEA Other **Health Impairment (OHI)** is defined as follows:

"Other health impairment means having limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that-- Is due to chronic or acute health problems such as asthma, **attention deficit disorder or attention deficit hyperactivity disorder**, diabetes, epilepsy, a heart condition, hemophilia, lead poisoning, leukemia, nephritis, rheumatic fever, sickle cell anemia, and Tourette syndrome Adversely affects a child's educational performance."

The students enrolled in the M C Terrell Center classified as OHI have been diagnosed with attention deficit disorder or attention deficit hyperactivity disorder. The Psychiatric Evaluation of J___ S_____ (5/11/06) diagnosed J___ with Axis I: Attention Deficit Disorder, Combined Type. The academic recommendations for J___ were inclusive of a therapeutic school placement with a small teacher/student ratio. Also recommended was group counseling and individual therapy. The M C Terrell Center is capable and staffed to be able to implement these recommendations.

At present the center has five (5) students with the classification of OHI only.

If any further assistance is required, please contact me at 645-3740/3590.

# LAW OFFICES OF OLEKANMA A. EKEKWE, PC
## 1001 Pennsylvania Avenue, NW
## Suite 600
## Washington, DC 20004

TELEPHONE: (202) 742-6694
FACSIMILE: (1800) 524-2370

November 13, 2007

Rasheeda Wilson, Esq.
DCPS, Office of the General Counsel
825 N. Capitol Street, NE-9th Fl.
Washington, DC 20002
By Fax 442-5098

### Disclosure Statement for J████ Si█████ (DOB███98)

Dear Ms. Wilson:

A due process hearing is scheduled in this case for Friday, August 17, 2007, at 3:00 p.m. Pursuant to CFR 300.509(a)(3), Parent compels the presence of DCPS personel named as witness, in addition to all documents disclosed by DCPS, Parent will rely on any of the following witnesses and documents:

Witnesses:
1. Eloise Simmons, Mother 2734 Langston Place SE Washington, DC
2. Anita Kumar, Advocate, 1001 Pennsylvania Ave., NW Suite 600 Washington, D.C. 20004
3. David Clarke or designee High Roads School, 1246 Taylor Street NW Washington DC
4. William Taylor, or designee, Case Manager, Scruples Corporation, Mental Health, 2811 Pennsylvania, Ave., SE Washington, DC 20020
5. ThomasYoung, Social Worker, D.C. DHS
6. Mr. Ross, Stanton Elementary School, 2701 Naylor Rd SE Washington DC
7. Mr. Norman Brooks, Stanton Elementary School 2701 Naylor Rd SE Washington, DC
8. Ms. Nwawambinie Director of Sunrise Academy/Desginee 1130 6th Street NW Washington, DC

Documents:

JS-01   - Hearing request
JS -02  - 9/4/07 IEP meeting notes and IEP

JS -03   - Letter to and from Ms. Kelly
JS -04   - 3/27/06 Psycho-Educational Evaluation
JS -05   - 2/21/07 HOD
JS -06   - 11/15/02 Psychiatric from Scruples
JS -07   - 4/13/06 Clinical Psychological Evaluation
JS -08   - 5/11/06 Psychiatric Evaluation
JS -09   - 9/11/06 Math Scores
JS -10   - 11/4/05 letter from children hospital
JS -11   - 12/18/06 meeting notes
JS -12   - 3/26/07 meeting notes
JS -13   - 3/26/07 IEP
JS –14   - Fax from Sunrise Academy of Acceptance Letter

　　　Parent reserves the right to examine any witness called or witness called or identified as potential witness by the representative of DCPS. In addition, parent reserves the right to rely upon and use any documents disclosed, offered into evidence, produced or relied upon, or used by the representative of DCPS, whether for this hearing, or any other hearing relating to this student. Parent further reserves the right to have witnesses testify By telephone if necessary; and parent reserves the right to supplement this disclosure with new information or documents when necessary.


Sincerely,


Olekanma Ekekwe, Esq.
Attorney for the Student and Parent



State Education Agency for the District of Columbia
State Enforcement and Investigation Division (SEID)
Special Education Programs



# EXPIDITED Due Process Complaint Notice

- This form is used to give notice of a complaint to the District of Columbia Public Schools, District of Columbia Public Charter School (DCPS or LEA) an/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a Free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, D.C. 20002; fax number 202/442-5556.

- **Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.** Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting of a Due Process Hearing.

A. **INFORMATION ABOUT THE STUDENT:**

Student Name: J███ Si███████    Birth Date: ███98

Address: 2734 Langston Place, S.E. Washington DC 20020

Home School: Stanton Elementary School

Present School of Attendance: MC Terrell School

**Is this a charter school?** ____No____    (If yes, you must provide a copy of this notice to the charter school principal or director)

**Parent/Guardian of the Student:** Eloise Simmons

**Address (If different from the student's above):** Same

**Phone/Contact Number:** 202 742-6694    **Fax Number (if applicable):** 1 800 524 2370

**B.    Individual Making the Complaint/Request for Due Process Hearing:**

**Name:** ____Olekanma Ekekwe on behalf of Eloise Simmons____

**Address:** ____1001 Pennsylvania NW Suite 600, Washington, DC 20004____

**Phone: (w)** ____202 742-6694____ **(fax)** ____1 800 524-2370____ **(e-mail)** ____academy@olekanmalaw.com____

**Relationship to Student:**

☐ **Parent**              ☐ **Legal Guardian**                    ☐ **Parent Surrogate**
☐ **Self/Student**      ☐ **Local Education Agency (LEA)**    ☐ **Parent Advocate**

**C.    Legal Representative:**

**Name:** ____Law Offices of Olekanma A. Ekekwe, PC____

**Address:** ____1001 Pennsylvania NW Suite 600, Washington, DC 20004____

**Phone: (w)** ____202 742-6694____ **(fax)** ____1 800 524-2370____ **(e-mail)** ____academy@olekanmalaw.com____

**Will attorney / legal representative attend the resolution session?** ☐ **Yes**    ☐ **No**

**D.    Complaint Made Against (check all that apply):**

| | |
|---|---|
| ☐X  DCPS school (name of school if different from page one) | |
| ☐  Charter school (name of school if different from page one) | |
| ☐  Non-public school or residential treatment facility (name) | |
| ☐  Parent | |

**E.    Resolution Session Meeting Between Parent and LEA:**

I understand that it is my right to have a resolution meeting to receive this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: all Parties must agree to waive the resolution meeting to avoid having this meeting).

☐X  I wish to waive the Resolution Session Meeting

**F.    Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

☐    I am requesting mediation as an alternative to the resolution session meeting.

☐    I am requesting mediation <u>only</u> at this time.

x ☐    I am requesting a due process hearing. (Suggested dates 9/30/07; 10/2/07; 10/8/07)

☐    I am requesting mediation <u>only</u> at this time.

G.    **Facts and Reasons for the Complaint:**
In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

1.    What is the nature of the problem, including the facts related to the problem that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

J████ Si███████ is a 9 year-old, special education student currently attending the 4th grade at Stanton Elementary School in the District of Columbia. He was placed at MC Terrell because it his neighborhood school with full time special education program. Ms. Simmons informed that she did not believe that MC Terrell would provide appropriate services for her son. Ms. Simmons also wanted to visit the school before her son was sent to the school. Stanton informed that they were authorized to only present MC Terrell to the parent as a placement option. The following day, Ms. Simmons visited MC Terrell and found it to be an unstructured school without walls. J████ went back to Stanton elementary, but he was told that he could not come to the school. Parent was sent a letter informing her not to allow J████ to attend Stanton. Two days later bus services went into effect and J████ began attending MC Terrell. Since attending MC Terrell, J████ has twice been assaulted by a teacher. Police officer palmer took report on the latest incident of assault. Moreover parent has received numerous calls informing her that the school is not able to address J████ behavioral needs

Parent had informed DCPS that she intends to place her son at Sunrise academy at public expense. Parent believes that Sunrise Academy has structure program and academic and related services that would meet J██████ need. DCPS has denied J██████ a Free Appropriate Public Education (FAPE) by failing provide appropriate placement for J██████

Based upon the above, Parent contends:

1.    DCPS denied J█████ a Free Appropriate Public Education (FAPE) as follows:

    a.    DCPS denied J█████ FAPE by failing to properly convene and conduct the IEP/placement meeting.

    b.    DCPS denied J█████ FAPE by failing to properly provide an appropriate placement.

2.    DCPS denied J█████ FAPE by failing to properly convene and conduct an MDR.

To the extent known to you at this time, how can this problem be resolved?

We are seeking:

1.    Declaratory relief for denial of FAPE, denial of due process and for discrimination based solely on client's disability by DCPS.

2. A determination that DCPS denied J██████ FAPE by failing to properly provide an appropriate placement.

3. A determination that DCPS shall fund J██████ placement at Sunrise Academy.

4. A determination that the Hearing Officer award J██████ two (2) months of compensatory education.

H. Estimated amount of time needed for the hearing: ___two hours_____

Note: In the absence of a specified amount of time SHO schedules hearing in two hour blocks of time and will allocate two hours to conduct the hearing. Please indicate if you believe more than two hours will be needed

I. **Accommodations and Assistance Needed:**

Please list any special accommodations you may require for a Resolution Session Meeting / Mediation Conference / Due Process Hearing:   NONE

| | |
|---|---|
| ☐ Interpreter (please specify the type) | |
| ☐ Special Communication (please describe the type) | |
| ☐ Special Accommodation for Disability (please be specific) | |
| ☐ Other | |

J. **Waiver of Procedural Safeguards:**

☐ I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

K. **Signature and Affirmation:**

I affirm that the information provided on this form is true and correct.

_____
Signature of Parent or Guardian                Date

L. Signature of Attorney/Legal Representative:

/s// Olehanna Ekehwe          9/20/07
_____
Legal Representative/Advocate                Date

M. Signature of LEA Representative (if hearing requested by LEA):

_____
Representative of LEA                Date

Mail, fax or deliver this complaint notices to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
1150 5ᵗʰ Street, SE, 1st Floor
Washington, DC 20003
Fax number 202/698-3825

4

15

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

*2*

MDT

MEETING DATE: *9-4-07*

MDT REFERRAL DATE: _____

STUDENT: ~~J___ S___~~                    SCHOOL: *Stanton ES*

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| *Mitchell Branson* | *Mitchell Branson* | *Special Ed. Coordinator* |
| *Eloise Simmons* | | *Mother* |
| *Maxima Etotwe* | | *Advocate* |
| *Annette Oakie* | *Annette Oakie* | *Social Worker* |
| *Lucille Hill-Blidi* | *Lucille Hill-Blidi* | *Counselor* |
| *Sharon M. Beverly-Gomillion* | *Sharon M. Beverly-Gomillion* | *Special Education Setting* |
| *Mabel Balls* | *M. Balls* | *School Psychologist* |

The purpose of this meeting is to update an IEP
for ~~J___ S___~~

Mrs. Hill-Blidi (School Counselor reports)

• ~~J___~~ was very active and often got in trouble with adults.
• Has a low tolerance with peers.
• ~~J___~~ did however respond to one to two people appropriately in the building but not in the learning environment.

THE PARENT ☑ IS PRESENT ☐ IS NOT PRESENT AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT_____

☑ CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION

☐ IS TO BE EXITED FROM SPECIAL EDUCATION

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

2 of 5

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES

MDT REFERRAL DATE _____

MEETING TYPE: ~~I~~ EP / Placemnt    DATE 9-4-07

STUDENT S_____, J    SCHOOL  Stanton Elementary School

Mrs. Gomillion (Special Educator)
· has worked with J_____ for 3 years
· hasn't had many difficulties with J_____ in the classroom
· has a good report with the mother.
· has trouble following school rules, disrespectful towards staff members and teachers
· Recommends that J_____ continue to receive instruction in special education in reading and written expression
· Mrs. Gomillion reports that Math is a strength for J_____,


Mrs. Doxey
· presented social emotional goals to the team
· the goals shared are from J_____ last IEP dated 3-26-07.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

3 of 5

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES

MDT REFERRAL DATE _____

MEETING TYPE: IEP/ Placement    9-4-07

STUDENT S___, J    SCHOOL Stanton Elementary School    DATE 9-4-07

Ms. Ekekwe (Advocate)
feels J___ still needs math goals. Although
math is a strength the student could benefit from
having math goals.
reports that J___ is in need of updated
educational and psychological evaluation as
recommended by the previous school psychologist
based on the report of Ms. Ekekwe the settle
agreement states J___ is to receive independent
evaluations.

The school psychologist is in agreement that
J___ is in need of educational testing. (Woodcock Johnson)
Stanton takes the position that the academic
testing can be administered at the neighborhood
school.
The advocate and parent disagree with this
testing being provided by the local school.

The MDT is in agreement that J___ is in
need of more hours in specialized instruction. As a result
his hours in specialized instruction will be increased from
10 hours to 12½ hours.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

4 of 5

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: IEP / Placement        DATE 9/4/07

STUDENT S_____, J        SCHOOL Stanton Elementary School

Ms. Simmons is in agreement with the recommendation
& her advocate as noted on previous pages.

By increasing the numbers of hours in specialized
instruction J_____ setting will be changed from
a combination setting to an out of general
education setting.

Location of Services
• Advocate reports that J_____ has been accepted
at Sunrise Academy. Located at 6th St. N.W.
• Sunrise is an all day academy for more males.   This setting
                                        MVB        is a therapeutic
                                                   setting.
Because of J_____ emotional and behavioral issues
the advocate reports that Sunrise will appropriately
address students current educational and emotional needs.

DCPS proposes that we can appropriately address
students current educational and emotional needs
at M.C. Terrell. M.C. Terrell provides a
small structured environment that can also provide
the educational needs of the student.

The parent and advocate are in disagreement
with the proposed location of services. Ms. Simmons
expresses that J_____ would not be successful at
M.C. Terrell because of the interaction he would
experience with family members that are in the

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

S of S

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: IEP / Placment

MDT REFERRAL DATE _____

STUDENT S_____, J    SCHOOL Stanton Elementary School    DATE 9/4/07

same program at M.C. Terrell, J_____ currently has relatives attending M.C. Terrell. This would lead to him not being able to experience success as presented by the parent and advocate. However DCPS continues to propose M.C. Terrell Center as an appropriate placement for J____ MVB at this time. The advocate indicates requested MVB that an attempt was made to contact Sunrise Academy via phone to verify that student was accepted and to discuss their program.

DCPS has issued a prior action notice that the location of services will be implemented at the M.C. Terrell center.

## DOCUMENTED LEVEL OF SERVICE
### Complete and attach to MDT/IEP meeting notes

| | | |
|---|---|---|
| School *Stanton Elem.* | Principal *Mr. Norman Brooks* | Special Education Coordinator *Mitchell Brunson* |
| Date *9-7-07* Case Manager | | Assistant Director |
| Student *[redacted] S.* | DOB *[redacted]-98* Age | Grade *4* ID# *9096283* SSN# [redacted] |
| Parent *Eloise Simmons* | Telephone (H) | (W) |
| Address *2294 Langston Place* *SE. #101* | Washington | DC *20020* |
| Street # Street | Quad Apt. No. City | State Zip Code |

REFERRAL SOURCE: (Check)   ☐ 120 Day   ☐ Reeval.   ☐ HOD   ☒ SA   ☐ MA   ☒ Annual
*MWB*

☐ Nonpublic   ☐ Residential   ☐ Citywide   ☐ Courts   ☒ Local School   ☐ Other:

Previous least restrictive environment (LRE Setting) *Combination of general education, special education, and related service providers*

## JUSTIFICATION FOR SETTING CONSIDERATION
### (Submit TAT/MDT Documentation)
### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | |
|---|---|---|---|
| • *extended time* | Current IEP | Yes ☒ | No ☐ |
| • *preferential seating* | Signatures of required participants (MDT notes) | Yes ☒ | |
| • *repeated review/drill* | Intervention Behavior Plan | Yes ☒ | |
| | Copies of current class work and homework assignments: | Yes ☐ | |
| • *concise directions* | Medical Reports: | Yes ☐ | No ☐ |
| | Clinical Reports: | Yes ☐ | No ☐ |
| | Psychiatric Reports | Yes ☐ | No ☐ |
| | Medications: | Yes ☐ | |
| | Attendance Record | Yes ☐ | |
| | Copies of most recent evaluation(s) | Yes ☒ | |
| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation | | |

## 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general educators with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☐ combination general education and resource classroom | ☐ combination of general educators, special educators and related service providers | ☐ between 21 % and 60% of service time |
| 3 | ☒ out of general education classroom | ☒ special educators and related service providers | ☒ between 61 % and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings).

### Check the level of need as indicated:
### DIRECTIONS:

| If two or three boxes are checked in the Row 1, check LOW. If two or three boxes are checked in the Row 2, check MODERATE. If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student. |
|---|---|

## 7. LEVEL OF NEED

| ☐ LOW | ☐ MODERATE | ☒ HIGH |
|---|---|---|

Attention: Technical Support Supervisor, Compliance Team

07-02-2001

21

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**SPECIAL EDUCATION**

MULTIDISCIPLINARY TEAM (MDT)

**Prior to Action Notice**

Check Purpose:
- [ ] Initial Evaluation
- [ ] Initial Placement
- [ ] Reevaluation
  - [ ] Change in Category Exit
  - [ ] Related Service Add
  - [ ] Related Service
  - [X] Change in Placement
  - [ ] Annual
  - [ ] Other _____

Date _9-4-07_
Student _J____, S.____    DOB __ 98
School _____
Current Disability Category _Other Health Impairment (OHI)_
Setting _Out of general education_

Dear _Ms. Simmons/Ms. Ekekwe_

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
- [X] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Other _____

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)
- [ ] Your child is not eligible for special education service(s).
- [ ] Your child is eligible or continues to be eligible to receive special education services as a student with _OHI_
- [ ] Your child will begin receiving _psychological services_ as a related service(s).
- [ ] Your child will no longer receive _____ as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed,
  from _combination setting_ to _out of general education services._
- [ ] Your child is no longer eligible and will be exited from the special education program.
- [ ] Other: _____

Location of Services _M.C. Terrell Center_

**Description and Explanation of agency action proposed or refused.**
_The MDT has determined that an out of general education setting will appropriately address student's current educational needs._

**Description of Other Options Considered and reasons for rejection of each option**
_The MDT has determined that a combination setting will not appropriately address students current educational needs._

Other relevant factors to the decision:_____

MDT Members:
- [X] Principal or Designee
- [X] Parent
- [ ] Student
- [ ] Social Worker
- [ ] General Education Teacher
- [X] Special Education Teacher
- [ ] Speech and Language
- [ ] *LEA & Interpreter (*may be one)
- [X] Psychologist
- [ ] Other: _____

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent: _Ms. O. Ekekwe_

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact _Mitchell Brunson_ a_(202)645-3255_(school telephone number).
See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior to Action Notice
07-02-2001

22

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

| DCPS - IEP  Page 1 of 4 |
|---|

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last S_____  First J_____  MI ___

Student ID 9091283  Soc. Sec. No. _____  Age: ___  Grade ___

Gender ☒ M ☐ F  Date of Birth ___98  Ethnic Group African-American

Address 2734 Langston Place, SE  #101
    Street Name                        Quadrant   Apartment #
    Washington, DC    20020
    City            State    Zip Code

☐ Non-attending

Attending School Stanton ES    Home School Stanton ES

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent Eloise Simmons

Address of (if different from student): ☐ Parent ☐ Guardian ☐ Surrogate
2734 Langton Place, SE  #101
    Street Name    Quad  Apt. No.  City    NA    State  Zip Code
Telephone: Home (202) 678-5313    Work

## II. CURRENT INFORMATION

Date of IEP Meeting: Sept 4, 2007

Date of Last IEP Meeting: 3-26-07

Date of Most Recent Eligibility Decision: 3-26-07

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval.  ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: III

### ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| ☒ | BEHAVIOR | ☒ | TRANSPORTATION |
|---|---|---|---|
| | ESY | | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | NA |
| Parent | English | English | NA | English |
| Home | English | English | NA | NA |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment
Oral _____
Rdg / Written _____
Instrument: _____
Date: _____

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr / Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks./mos |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | | 26 | 26 | Hr. | W | Spec. Ed. Teacher | 9-5-07 | 10 | mos. |
| Psychological Services (Counseling) - BB | | 1.5 | 1.5 | Hr. | W | Social Worker/ Psychologist | 9-5-07 | 10 | mos. |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| TOTAL | | 27.5 | 27.5 | Hours Per Week | | | | | |

## V. Disability(ies)

OHI

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☐ 21-60%  ☒ 61-100%

Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Eloise Simmons  Mother
Oleksina Ekekwe
Sharon M. Bayly-Gomillan
Mabel Batts
Annette Doxie

_E.S._  I DISAGREE with Placement with DCPS

I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature _____  DISAGREE  Date 9-4-0_

23

DCPS - IEP
Page 2 of 4

Student Name _____ J____ S_____ | Managing School: Stanton ES
Student ID Number 9091283  DOB ___-98 | Attending School: Stanton ES

Additional Comments: ☐

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Score(s) When Available

Academic Areas: (Evaluator) S. Beverly - Gomillion, Special Ed. Tchr
Math Strengths:
J____ can add and subtract whole numbers with and without regrouping.

Impact of disability on educational performance in general education curriculum:

Math Cal. 2.5  GE
Math Rea. _____ ____
See goal page: _____
Date: 9-11-06

Reading Strengths:
Can identify consonant and vowel sounds. Can identify sight words
Impact of disability on educational performance in general education curriculum:
Deficits in basic reading skills impact on J____ ability to develop skills on his grade level

Rdg. Com 1.8  GE
Rdg. Basic 2.1  GE
Written Ex. <1.0  GE
See goal page: 1, 2.
Date: 9-11-06

Communication (Speech & Language) (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
Exp.Lang. _____ ____
Rec- Lang. _____ ____
Artic _____ ____
Voice _____ ____
Fluency _____ ____
Exp. Voc. _____ ____
Rec. Voc. _____ ____
See goal page: _____
Date: _____

Motor/Health (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) /Results
When Available
_____ ____
_____ ____
_____ ____
See goal page: _____
Date: _____

Social Emotional Behavioral Areas: (Evaluator) Tara M. Benn, M.Ed. (Reviewer)
Strengths:
His ability to ask for assistance and identify staff with whom it feels comfortable with.
Impact of disability on educational performance in general education curriculum:
Difficulty following directions, noncompliance and leaving class w/out permission.

Score(s) When Available
_____ ____
_____ ____
_____ ____
See goal page: _____
Date: _____

Cognitive/Adaptive Behavior: (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
_____ ____
_____ ____
_____ ____
See goal page: _____
Date: _____

Prevocational Skills: (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
_____ ____
_____ ____
_____ ____
See goal page: _____
Date: _____

| Student Name | | Managing School | Stanton ES | DCPS - IEP |
|---|---|---|---|---|
| | | Attending School | Stanton ES | Page 3 of 4 |
| Student ID Number | 9091283    DOB ▮▮-98 | | | Goal Number: ▯▯ |

## VIII. SPECIALIZED SERVICES

Additional Comments:

Area addressed by goal: _Academics: Reading_

**ANNUAL GOAL : (including mastery criteria.)**

J▮▮ will demonstrate 6 months to 1 year's growth in his reading skills by demonstrating 80% mastery of the following short-term objectives

Provider(s): _Special Education Teacher_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1. Given daily practice and instruction, J▮▮ will be able to identify the purpose and restate important facts from a text heard or read with 80% accuracy. | | Monthly |
| 2. Given daily teacher instruction, J▮▮ will be able to identify the meaning of a favorite poem or story with 80% accuracy. | | Monthly |
| 3. Given daily instruction and practice, J▮▮ will be able to decode phonetically regular multi-syllabic real and non-sense words fluently using letter-sound knowledge with 80% accuracy. | | Monthly |
| 4. Given daily instruction in reading, J▮▮ will be able to distinguish cause from effect with 80% accuracy | | Monthly |
| 5. Given daily instruction and classwork, J▮▮ will be able to identify the main idea of a selection heard or read with 80% accuracy. | | Monthly |
| 6. Given daily instruction and practice, J▮▮ will be able to identify personality traits of characters from a reading selection with 80% accuracy. | | Monthly |

**EVALUATION PROCEDURE(S)**

| Portfolio | Log | Chart | ~~Test~~ | Documented Observation | ~~Report~~ | Other _____ |
|---|---|---|---|---|---|---|

| Student Name | J███ S███ | Managing School | Stanton ES | DCPS - IEP Page 3 of 4 |
| Student ID Number | 9091283 | DOB | ███-98 | Attending School | Stanton ES | Goal Number: 2 |

**VIII. SPECIALIZED SERVICES**    Additional Comments:

Area addressed by goal: <u>Academics: Written Expression</u>

**ANNUAL GOAL : (including mastery criteria.)**

J███ will demonstrate 6 month to 1 year's growth in his written expression skills by demonstrating 80% mastery of the following short-term objectives

Provider(s): Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1. Given daily instruction in written expression, J███ will be able to write legibly in cursive, leaving spaces between words in a sentence with 80% accuracy. | | Monthly |
| 2. Given instruction on letter writing, J███ will be able to write a friendly letter complete with date, salutation, body closing and signature with 80% accuracy. | | Monthly |
| 3. Given daily instruction and practice in writing J███ will be able to identify and use correct punctuation including end marks, commas for series, and punctuation for dates, city and state with 80% accuracy. | | Monthly |
| 4. Given appropriate classroom instruction and practice, J███ will be able to distinguish between complete and incomplete sentences and recognize and use correct word order in written sentences with 80% accuracy. | | Monthly |
| 5. Given instructions to write on a familiar topic (eg. personal experience, event), J███ will be able to write 3 to 5 related sentences describing the topic with correct grammar and punctuation with 80% accuracy | | Monthly |
| 6. Given a list of weekly spelling words, J███ will be able to spell the words, define the words and use the words appropriately in sentences with 80% accuracy. | | |

| **EVALUATION PROCEDURE(S)** | | | | | | |
|---|---|---|---|---|---|---|
| Portfolio | Log | Chart | Test | Documented Observation | Report | Other _____ |

District of Columbia Public Schools      07-02-2001      Division of Special Education      Appendix - A      IEP Page 3 of 4

26

| Student Name: ████ ████ | Managing School: Stanton ES | DCPS - IEP |
|---|---|---|
| | Attending School: Stanton ES | Page 3 of 4 |
| Student ID Number: 9091283   DOB: ██-98 | | Goal Number: 3 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐

Area addressed by goal: _Academic - Mathematics_

**ANNUAL GOAL:** (including mastery criteria.)

J████ will demonstrate 6 months to 1 year's growth in his mathematics skills by demonstrating 80% mastery of the following short-term objectives.

Provider(s): _Special Education Teacher_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1. Given daily practice and instruction, J████ will be able to multiply 2-digit and 3-digit numbers with 80% accuracy | | Monthly |
| 2. Given daily teacher instruction and practice, J████ will be able to solve word problems requiring addition, subtraction, multiplication and division with 80% accuracy | | Monthly |
| 3. Given teacher X instruction and modeling, J████ will be able to solve problems involving division of 2 and 3-digit numbers with 80% accuracy. | | Monthly |
| 4. Given teacher instruction and practice, J████ will be able to identify the place value of each digit in 3 & 4-digit numbers with 80% accuracy | | Monthly |
| 5. Given daily teacher instruction, modeling and practice, J████ will be able to add and subtraction like fraction with 80% accuracy | | Monthly |
| | | |

**EVALUATION PROCEDURE(S)**

☑ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☒ Report  ☐ Other _____

Student Name _____, _____  
Student ID Number **9091283**  DOB **98**

Managing School *Stanton ES*  
Attending School *Stanton E.S.*

DCPS - IEP
Page 3 of 4

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐

Goal Number: ☐

Area addressed by goal: *Social-Emotional*

**ANNUAL GOAL: (including mastery criteria.)**

_____ will improve his social emotional development through increasing attending skills and remaining on task. 80% of the time

Provider(s): _____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| _____ will display on task behaviors with cues 4 out of 5 trials | | |
| _____ will identify triggers that causes him anger towards others 4 out of 5 times | | |
| _____ will display on Task behaviors with cues 4 out of 5 trials | | |
| _____ will be able to complete 80% of assigned task in 4 out of 5 trials | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

| Student Name | J___ S___ | | Managing School | Stanton | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 90 912 83 | DOB ___ 98 | Attending School | Stanton | Page 4 of 4 |

**Additional Comments:** ☐

**IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION**
**SERVICE ALTERNATIVES**

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in general education?  ☐ Yes  ☒ No

Explanation for removal out of regular education classroom.

Student requires a full-time (out of general education)
setting to address his academic and social-emotional
needs

**X. Supplementary Aids and Services**

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr/Min | D/W/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations  for testing:  ☐ None needed

Timing/Scheduling:  Extended time
Setting:  Preferential seating
Presentation:  Repeated review/drill, Concise directions
Response:
Equipment:

**XI. STATE AND DISTRICT ASSESSMENTS:**
☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.
☒ Level III  (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations
☐ Level V  Portfolio

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.
☐ Level IV  (Describe the alternative assessment)

**XII. Areas Requiring Specialized Instruction and Related Services:**

☒ Reading  ☐ Physical/Sensory  ☐ Transition  **Modifications:**  ☐ Language Arts/English
☒ Mathematics  ☒ Social Emotional  ☐ Vocational  ☐ Social Sciences
☒ Written Expression  ☐ Physical Development  ☐ Independent Living  ☐ Biological & Physical Sciences
☐ Other:  ☐ Speech/Language  ☐ Fine Arts
☐ None  Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

**XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| In general education Combination setting | Rejected Rejected | Continued school failure Time away from non-disabled peers |
| Out of general education | Accepted | Impact on student's self-esteem. |

Modification(s)/Accommodation(s) to address the harmful effects:

Full-time placement out of general education setting to
address his deficits in academics and social emotional skills.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
825 North Capital Street, N.E., 6th Floor
Washington, D.C.  20002-4232


<u>Caring for Our Students with Disabilities</u>
<u>A Procedural Manual for Parents</u>

RECEIPT


I, _____, received a copy of *A Procedural*
(Parent/Guardian Name)

*Manual for Parents* from _Mitchell V. Brunson_ /Title _SPED Coordinator_
(Person Issuing Document)

_Stanton ES_
(School)


_9 . 4 . 07_
(Date)


_____
Parent/Guardian Signature


(This receipt is to remain in a designated file in the school.)

30

16

District of Columbia Public
Schools Washington, D.C.

**Division of Special Education**

FUNCTIONAL BEHAVIORAL ASSESSMENT

Student ▬▬▬▬▬▬▬  DOB ▬▬/98  DATE ▬▬▬▬▬

School *Stanton Elementary*  Grade *3*  Special Ed
Coordinator ▬▬▬▬▬

**Describe and Verify the Seriousness of the Problem.**

Constantly disregards classroom and school rules. He fights with peers
and disrespect adults. Walking away from class and supervised areas is a safety hazard.

Frequency *multiple time daily*  Intensity *Serious*  Duration *2-3 hours*

**Identify specific characteristics of the behavior that is interfering with learning.**

▬▬▬▬ behavior interfere with the instructional focus and academic
process of the entire class. Missed learning time when he walks out.

**Collect information on:** Time when the behavior does/does not occur; Location of the behavior; Conditions when the behavior does/does not occur; Individuals present (when most/least likely to occur); Events or conditions that typically occur before the behavior; Events or conditions that typically occur after the behavior; Common setting events; Other behaviors that are associated with the problem behavior.

**What environmental conditions may affect the behavior?**

- unknown environmental conditions
- prior hospitalization

**What does the student view as positive reinforcement?**

- Extra computer time
- snacks
- playing football

**What interventions were previously attempted, and what were the results?**

- one on one counseling - behavior continued (walking out of class)
- extra computer time - He wanted to stay on the computer all day
- Token economy - help some
- small group instructions - Got in fights

**Collect information on possible functions of the problem behavior.**

☑ Direct Assessment
  ☐ Scatterplots  ☐ ABC Charts  ☐ Rating Rubric  ☐ Amount versus quality of behavior
☐ Indirect Assessment
  ☒ Interviews  ☐ Questionnaires  ☐ Surveys

**Analyze information using triangulation and /or problem pathway analysis.**



**Generate a hypothesis statement regarding probable function of problem behavior.**
**Test the hypothesis statement regarding the function of the problem behavior.**

▬▬▬▬ behavior appears to function to avoid having to do certain task
and receive special attention from peers and adults

District of Columbia Public Schools    07-02-2001    Division of Special Education    FBA

31

District of Columbia Public Schools
Washington, D.C.

**INTERVENTION BEHAVIOR PLAN**

I.E.P.  Attachment A
Intervention Behavior Plan

Date Developed: _____

Student Name _~~████████~~_    ID# _____    DOB ~~██~~/98  Grade 3

Address _____    Counselor _Lucille Hill-Blidi_
Street #    Street Name,    Quadrant    Apartment #    City,    State,    Zip Code

Telephone (H) _____    (W) _____

Attending School _Stanton Elementary_    Teacher _M. Hubbard_    Room _____    Section _____

Additional Comments: ☐

**TARGETED BEHAVIOR(S):**

- Does not follow directions and rules; walks away from class & supervised areas
- Fights with peers & uses profanity towards adults and peers
-

**POSITIVE INTERVENTION STRATEGIES: Student Objective -**

- The student will be able to remain in supervised areas at all times
- The student will able to identify acceptable ways to communicate
- The student will be able to demonstrate techniques to maintain self control

**Implementation description -**

- Student will show respect for adults and peers
- Student will earn points towards free computer time
- Student and teacher will create a daily check list to monitor behavior. A copy will be sent home.

**POSITIVE INTERVENTION STRATEGIES: Teacher Strategies**

- employ token economy system
- model socially acceptable behavior for student
- Set boundaries and behavioral expectation for student
- One-on-one counseling

**MONITORING SYSTEM: Responsible Teacher -** _____

**Describe System -**

Daily Log
Child will receive/loose incentives based on behavior

**Data collection timeline -**

Daily, Weekly, Monthly, Quarterly Assessment

**FOLLOW-UP MEETING: Date -** _____  ____  ____

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    IEP ATTACHMENT A    INTERVENTION BEHAVIOR PLAN

32

IEP Attachment B
Transportation

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**

TRANSPORTATION DIVISION

STUDENT TRANSPORTATION
DATA FORM

_07-08_

School Year

(MDT must first determine if student meets the requirements for transportation services and has it included in the IEP.)

Person Making Request: _Mitchell V. Brunson_

Date of Request: _9-4-07_

Status of Request: _intial_

Date Request Received: _9-4-07_

Person Receiving Request: _____

STUDENT IDENTIFICATION NUMBER

Student: ▓▓▓▓  Last Name ▓▓▓▓  First  MI

_Ms Simmons_
Parent / Guardian (Print legibly or type)

_2734 Langston Pl. SE 101_
House No.    Street Name    Quad. Apt.

_Wash D.C. 20020_
City    State  Zip

_____

Telephone (H)

_4-7-98 M  English  Stanton ES (202)645-3255_
DOB    Gender  Primary Language  Submitting School and Telephone Number

_____

Telephone (W)

_OH-I_
Disability Classification    Medical Issues

_Gloria Jefferson_
Emergency Contact

MODE OF TRANSPORTATION  ☐ *Bus  ☐ Tokens  ☐ Farecard

_Grandmother_
Relationship

• SPECIAL ACCOMMODATIONS FOR BUS

Height _____ Weight _____

_(202) 678-5313_
Telephone No.

Oxygen _____ Tracheotomy tube _____ Seizures _____ Helmet _____

_(202) 664-6741_
Pager/ Cell No.

Harness _____ 1-1 Aide _____ Behavioral issues _____

Medication _Concerta_ ___ Specific allergies _____

Dosage required during transportation :

Students will be taken to a central location until 6:00 p.m. if the bus attendants are unable to deliver them to the designated location. After 6:00 p.m. the police will be contacted. This year's central location is _____

☐ Yes ☐ No  Dosage _____ ☐ PM ☐ AM

☐ Mobility ☐ Ambulatory ( ☐ Cane, ☐ Crutch, ☐ Walker)

☐ Ambulatory w/ assistance ( Cane, ☐ Crutch ☐ Walker)

☐ Non Ambulatory ( ☐ Standard, ☐ Motorized, ☐ Oversized )

w/ lap tray ☐ Yes ☐ No

☐ Car Seat  ☐ Positioning Device _____

☐ Special Restraint  ☐ Other, Describe: _____

Click one of the following:

☑ AM Pick-up & PM Drop-off is the same as the student address.

☐ _____    Telephone No. _____

AM Pick-up Address

☐ _____    Telephone No. _____

PM Drop-off Address

**Transportation will NOT be provided without confirmed placement through the proper procedures. Justification for other than neighborhood settings must be explained on the back by the school official requesting the transportation services.**

_Mitchell Brunson_    _(202)645-3255_    _9-4-07_
School Official requesting transportation service:    Telephone No.    Date

_M.C. Terrell    3301 Wheeler Rd. S.E._    _(202)645-3740_
School to Attend:    Address of School    Telephone No.

**Questions may be directed to the Special Education Transportation Liaison.**

District of Columbia Public Schools    07-02-2001    Division of Special Education    IEP Attachment B

33

### EVALUATION TO JUSTIFY TRANSPORTATION

Student ___Joseph S_____ ID# _90191283_ DOB _█/█/98_

Attending School _M.C. Terrell ES. (Center)_ Neighborhood School _Stanton ES_

#### Attach a copy to the Transportation Data Form and maintain as a part of the IEP

Justification for Transportation as a related service as stipulated in 300.24 (15). (Check all that apply):

1. ☐ Medical reports document a severe health condition that prevents the student from walking to school
   Specify _____

2. ☐ Medical reports document a physical disability that prevents the students from walking to or getting to
   school independently. Specify _____

3. ☐ A documented severe cognitive disability prevents the students from walking or getting to school
   independently. Specify _____

4. ☐ A visual and/or hearing disability interferes with the student's ability to arrive at school at school independently.
   Documentation source _____

5. ☐ A severe communication disability prevents the student from communicating for his/her own safety
   Documentation source _____

6. ☐ A behavior /emotional disability is so severe or erratic that there is concern for the safety of the student
   and/or others. Documentation source _____

7. ☐ The student is eligible for the preschool special education program and could not participate without
   special transportation.

8. ☒ The student is/will attend a distant school because the IEP cannot be implemented at the zoned school.

9. ☐ The student is medically fragile. Documentation source _____

10. ☐ The student requires assistance to get on and off the bus. Documentation source _____

11. ☐ The student is unable to function independently due to the severity of the disability. Documentation
    source _____

12. ☐ The student requires a non-routine transportation schedule (i.e. contract services, abbreviated school
    day). Explain _____

13. ☐ Medical reports document that the student has a physical disability and/or severe health condition that
    prevents him or her from walking to school. Documentation source _____

14. ☐ A documented severe cognitive disability prevents the student from walking to school. Documentation
    source _____

15. ☒ Other (Specify) _The nature and severity of the Students disability warrants transportation._

DISTRICT OF COLUMBIA PUBLIC SCHOOLS        07-02-2001        DIVISION OF SPECIAL EDUCATION        APPENDIX-A

34

# LAW OFFICES OF OLEKANMA A. EKEKWE, P.C.
## 1001 Pennsylvania Avenue, NW
### Suite 600
### Washington, DC 20004

TELEPHONE: (202) 742-6694
FACSIMILE: (800) 524-2370

June 20, 2007

Ms. Kelly
Special Education Coordinator
Stanton Elementary School
2701 Naylor Road
Washington, D.C. 20020
**BY FAX 202-645-3264**

3

      Re: J█████ S███████ (DOB ███/98)

Dear Ms. Kelly:

    We received your fax dated 6/19/07. A meeting was held on June 8, 2008, you were not present. There were several discussions and acknowledgement that the clinical/psychological, functional behavior assessment and educational evaluation was not completed. There was no revision of the iEp done on that day because the IEP forms were not available to the team members. Team decided to reconvene but did not take place.

    I don't understand how you could forward a copy of what you call corrected IEP.

    It was also clear from the meeting that no psycological services were being provided to J█████. I don't think you can make corrections to the IEP without the parent's consent or without other team memebers.

               Sincerely,
               Olekanma Ekekwe

35



# STANTON ELEMENTARY SCHOOL

Norman K. Brooks
Principal

Patricia T. Brantley
Assistant Principal

2701 Naylor Road, S.E.    Washington, D.C. 20020    Phone (202) 645-3255   Fax (202) 645-3264

## FACSIMILE COVER SHEET

Date: 6/19/2007

To: Ms. Ekekwe/Ms. Simmons        Facsimile Number: 800 5242370

From: Brenda Kelly SECT        Number of Page(s): 4 (including cover)

This message is intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (202) 645-3255. Thank you for your cooperation.

Comments:

Corrected Copy - p.1 of IEP

S_____    S_____

DOB ___/___/1998

36

## Stanton Elementary School

June 19, 2007

**Via Facsimile**
Olekanma Ekekwe
Law Office of Olekanma Ekekwe
717 D Street N.W.
Suite 314
Washington, DC 20008

Re: ▊▊▊ S▊▊▊▊  DOB: ▊▊▊/98

Dear Ms. Ekekwe:

Attached is a corrected copy of the above named student's IEP. You will also find the Prior Notice of the meeting held on June 8, 2007. The student did not attend the final week of school, therefore no tests were administrated.

If you have and questions or concerns, please feel free to contact me at 645-3255

Sincerely,

*Brenda Kelly*

Brenda Kelly
SEC

CC:   Rashida Wilson
      Norman Brooks

Corrected Copy

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP  Page 1 of 4
Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last ~~S~~    First ~~J~~    MI

Student ID 9091283    Soc. Sec. No. ~~~~    Age: 8    Grade 3

Gender ☒ M ☐ F    Date of Birth ~~~~-98    Ethnic Group African-American

Address 2734 Langston Place    SE #101
Washington, DC    20020

☐ Non-attending
Attending School Stanton ES    Home School Stanton ES
☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /
Parent ~~~~
Address of (if different from student):

☒ Parent ☐ Guardian ☐ Surrogate

Telephone: Home 2/889-05E    Work

### II. CURRENT INFORMATION
Date of IEP Meeting: 03/26/2007
Date of Last IEP Meeting:
Date of Most Recent Eligibility Decision:

Purpose of IEP Conference:
☐ Initial IEP    ☐ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: II

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

☒ BEHAVIOR BA    ☐ TRANSPORTATION
☐ ESY    ☐ TRANSITION

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | NA | Oral |
| Parent | English | English | NA | English | Rdg / Written |
| Home | English | English | NA | NA | Instrument: Date: |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks.mos. |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 10 | 10 | | Hr | W | Spec Ed Teacher | | 10 | wks mos. Bk |
| Psychological Service | 1.5 | 1.5 | | hr | W | Exclected Social Worker | | 10 | wks mos. Bk |
| | | | | | | | | | |

TOTAL 11.5 / 11.5 Hours Per Week

### V. Disability(ies)
OHI

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%    ☐ 21-60%    ☐ 61-100%

Percent of time NOT in a Regular Education Setting

### VI. IEP TEAM (Participants in the development of the IEP)
Print and sign your name below.

ES J. Quit created ~~~~
J. didn't agree with anything
for Mr. Hubbard- Cheseee Hawkins - ET-15

Lucille Hill-Bidi, counselor
Shawn M Beverly Gamillan
Tara M. Benn, M.Ed. School Psychologist

O E Kekwa Advocate
Lucille Hill Bidi
Ma C Hawk Ch
Sharyn M Beverly Gamillan
Tara J. Benn

ES I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature ~~~~    Date 3/26-07

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 1 of 4

38

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**SPECIAL EDUCATION**

MULTIDISCIPLINARY TEAM (MDT)

**Prior to Action Notice**

Check Purpose:
- [ ] Initial Evaluation
- [ ] Initial Placement
- [X] Reevaluation
  - [ ] Change in Category Exit
  - [ ] Related Service Add
  - [ ] Related Service
  - [ ] Change in Placement
  - [ ] Annual
  - [X] Other  ReEV

Date  06/08/2007

Student  J███████  S███████     DOB ████1998

School  Stanton Elementary

Current Disability Category  OHI

Setting  Combination general education and resource classroom

Dear  Ms. Ekekwe/Ms. Simmons

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
- [X] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Other _____

**A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child:** (check all that apply)

- [ ] Your child is not eligible for special education service(s).
- [X] Your child is eligible or continues to be eligible to receive special education services as a student with  OHI
- [X] Your child will begin receiving  Social Work Services  as a related service(s).
- [ ] Your child will no longer receive _____ as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed,
       from _____ to _____
- [ ] Your child is no longer eligible and will be exited from the special education program.
- [ ] Other: _____

Location of Services  Stanton Elementary

**Description and Explanation of agency action proposed or refused.**

Based on the documentation reviewed by the team, it was determined that the student can not be educated in the general education setting. The student could access the general education curriculum in a combination setting part-time with non-disabled

**Description of Other Options Considered and reasons for rejection of each option**

Based on the documentation reviewed by the team, it was determined that the student can not be educated in the general education settin. The student could access the general education curriculum in a combination setting part-time with non disabled p

Other relevant factors to the decision-  N/A

MDT Members:
- [X] Principal or Designee
- [X] Parent
- [ ] Student
- [ ] Social Worker
- [X] General Education Teacher
- [X] Special Education Teacher
- [ ] Speech and Language
- [X] *LEA & Interpreter (*may be one)
- [X] Psychologist
- [ ] Other: _____

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent: _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact Ms. Kelly  at  (202) 645-3255  (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior to Action Notice
07-02-2001

1



**interdynamics, inc.**
Evaluations and Therapy

Lanham Maryland 20706
Phone: 301.306.4590
Fax: 301.306.4591

# PSYCHOEDUCATIONAL EVALUATION
## Confidential Report

| | | | |
|---|---|---|---|
| **Name:** | J███ S████████ | **Evaluation Date:** | March 27, 2006 |
| **Date of Birth:** | ████, 1998 | **Examiners:** | Carolyn B. Hoffman, Psy.D. |
| | | | Margaret Cirillo, LPC |
| **Age at Evaluation:** | 8 years, 0 months | **Supervisor:** | James Moses Ballard II. Ph.D. |
| **Grade:** | 2nd | | Licensed Clinical Psychologist |
| **School:** | Stanton Elementary School | | MD 1160: DC 354 |

## REASON FOR REFERRAL

J█████ was referred for this evaluation to assess his current levels of cognitive and academic functioning. Results from this evaluation will be used to assist in determining the most appropriate educational interventions for J█████.

## TESTS & TECHNIQUES ADMINISTERED

File Review
Interview with J█████
Interview with Ms. Eloise Simmons, J█████ mother
Interview with Ms. Robin Henderson, Scruples
BASC Structured Developmental History with Ms. Simmons
Wechsler Intelligence Scale for Children – Fourth Edition (WISC-IV)
Woodcock-Johnson III - Tests of Achievement: Standard Battery (WJ-III)
Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI)

## RELEVANT BACKGROUND INFORMATION

J█████ is an eight year-old African American boy who lives in Washington, DC with his mother, Ms. Eloise Simmons and his 6 year-old brother, Gregory. Ms. Simmons indicated that J█████ was born full term via c-section and reached most of his developmental milestones appropriately. However, he remains enuretic; Ms. Simmons revealed that he and his brother both urinate on themselves multiple times daily and three to four times each night. There has been no medical reason found for this. She revealed that she smoked approximately one pack of cigarettes a day and that she smoked marijuana while pregnant with J█████.

J████ S█████         nfidential PsychoEducational Evaluation

J████ currently receives mental health counseling with Ms. Robin Henderson at Scruples, in Washington, DC. He currently takes Concerta each morning and Risperdal at bedtime, though Ms. Simmons could not recall the exact dosages and revealed that sometimes when J████ is very hyper she has to "double up" his evening medication dosage to help him sleep. Prior to taking the Risperdal he suffered from insomnia and would frequently stay awake until 3:00 – 4:00am. He has been diagnosed with ADHD; Ms. Simmons was uncertain if there were other diagnoses and there was no available record at the time of this writing indicating for what or by whom these medications were prescribed.

J████ is having profound difficulties at school. He has attended Stanton Elementary School in Washington, DC, since he was three years old and in Pre-K. He is currently enrolled in the second grade, but has missed most of this school year due to suspensions and midday removals from the classroom. Ms. Stanton indicated that school officials report that J████ behavioral difficulties are extreme, and include fighting, talking in class, constant fidgeting, inability to pay attention, and frequent angry outbursts. He receives Special Education services, though no IEP was available and Ms. Stanton could not identify specifics of his program. She is very concerned about J████ receiving adequate services and believes he needs additional support at school. He was involved in an incident with five other children at school where, reportedly, J████ paid another boy to perform oral sex on him. The boys were suspended and an investigation was conducted, but the findings were inconclusive and no follow-up action was taken. On January 6, 2006, school officials called the DC Mobile Stabilization Unit due to J████ out-of-control behaviors. Rather than have the boys transported for crisis care by DC personnel, Ms. Simmons came to the school and agreed to take the boys to Children's Hospital. She reported taking them, but stated that the hospital told her that no beds were available, so they received no treatment.

## PREVIOUS EVALUATIONS

A psychoeducational evaluation conducted in September 2003 utilized the K-ABC Mental Processing subtests to assess J████ cognitive ability and the K-ABC Achievement Tests to evaluate his academic functioning. The subsequent report indicated that J████ was a student of "normal/average cognitive abilities who has severe visual perception delays, slightly delayed visual-motor integration skills, and deficits in pre-readiness reading, math, and written language academic areas." The discrepancy between ability and achievement scores led to a diagnosis of "learning disabled." During the assessment, it was noted that J████ had difficulty understanding some of the more complex verbal test instructions, and his speech was often garbled. The examiner determined that J████ learning disability was "not primarily the result of visual impairment, hearing impairment, motor problems, mental retardation, emotional disturbance, or environmental, cultural, or economic disadvantage including poor instructional experience and/or chronic absenteeism." It was suggested that there was a possible organic etiology to J████ learning disabilities. There is no record of J████ having participated in subsequent clinical or neuropsychological evaluations.

## BEHAVIORAL OBSERVATIONS

This evaluation was conducted in one session in a quiet office at Interdynamics, Inc., that was designed for the purpose. J████ arrived promptly for his appointment with his mother and brother, and separated easily when requested to join the examiner. He appeared extremely drowsy; his mother revealed that this was likely a medication effect from the Risperdal. J████ claimed that he did not sleep well the previous night and that he had not eaten breakfast. He enthusiastically enjoyed the

41

ɹ̶̶̶ C̶̶̶̶̶̶̶    ̶onfidential PsychoEducational Evaluation

lunch that was provided for him. At two points in the evaluation, however, J███ fell asleep. He quickly regained his focus and responded well to examiner redirection and support. but was fatigued throughout the evaluation. His rate, rhythm, and volume of speech were within normal limits. His affect was blunted but appropriate. J███ interacted well with the examiner during the two play breaks that were taken. No abnormalities in gait or movement were observed. J███ indicated that he does not wear or need glasses. His hearing was unimpaired as assessed during his most recent school physical. He maintained appropriate eye contact, focused on and responded appropriately to the tasks, and was able to sit still in his chair for extended periods of time.

## TEST RESULTS AND INTERPRETATION
## COGNITIVE FUNCTIONING

### WISC-IV Scores Snapshot

| WISC-IV Composite | Score |
|---|---|
| Verbal Comprehension Index (VCI) | 85 |
| Perceptual Reasoning Index (PRI) | 88 |
| Working Memory Index (WMI) | 99 |
| Processing Speed Index (PSI) | 62 |
| Full Scale IQ (FSIQ) | 79 |

In order to obtain J███ current level of cognitive functioning, he was administered the Wechsler Intelligence Scale for Children—Fourth Edition (WISC-IV), a standardized test that is divided into subtest. Ten core subtests comprise four indices that contribute equally to the FSIQ score. The four indices are the Verbal comprehension Index (VCI), the Perceptual Reasoning Index (PRI), the Working Memory Index (WMI), and the Processing Speed Index (PSI). The VCI is composed of subtests measuring verbal abilities utilizing reasoning, comprehension, and conceptualization. The PRI is composed of subtests that measure perceptual reasoning and organization. The WMI includes subtests that measure attention, concentration, and working memory. The PSI is composed of subtests measuring the speed of mental and graphomotor processing. On any of the subtests that comprise the indices, a scaled score of 10 is considered Average. A scaled score of 13 to 15 indicates Above Average functioning in that domain, while 5 to 7 indicates Below Average functioning. Scores of 16 and higher are described as Superior, a 4 is considered Borderline, and scores 3 and below are considered deficient.

### WISC-IV Composite Scores Summary

| Scale | Sum of Scaled Scores | Composite Score | 95% Confidence Interval | Qualitative Description |
|---|---|---|---|---|
| Verbal Comprehension (VCI) | 22 | 85 | 79-93 | Low Average |
| Perceptual Reasoning (PRI) | 24 | 88 | 81-97 | Low Average |
| Working Memory (WMI) | 20 | 99 | 91-107 | Average |
| Processing Speed (PSI) | 6 | 62 | 58-76 | Extremely Low |
| Full Scale (FSIQ) | 72 | 79 | 75-85 | Borderline |

The Full-Scale IQ (FSIQ) is considered the most representative estimate of global intellectual functioning. J███FSIQ places his overall level of cognitive functioning squarely in the Borderline range (FSIQ = 79, 95% Confidence Interval = 75-85). There is no significant difference between Kevin's

Confidential PsychoEducational Evaluation

Verbal and Performance scores, indicating that his reasoning abilities with words and without words are evenly developed. However, his overall IQ score was lowered considerably by his very low score on the Processing Speed Index (PSI = 62; 95% Confidence Interval = 58 – 76). Given the variance in his abilities, using the overall FSIQ to categorize J███████ functioning would mask the individual differences among abilities that are clinically important and worthy of study. For example, J███████ ability to hold information in his mind while performing some operation or manipulation with that information is a strength. Quickly and correctly scanning and sequencing simple visual information remains an area of need for J█████.

## Verbal Comprehension Index - Subtest Scores Summary

| Subtests | Scaled Score (SS) | Percentile Rank |
|---|---|---|
| Similarities | 5 | 5 |
| Vocabulary | 9 | 37 |
| Comprehension | 8 | 25 |
| Information | 5 | 5 |

J█████ composite score of 85 on the Verbal Comprehension Index, which measures his verbal reasoning, verbal concept formation, and knowledge acquired from his/her environment, indicated that his verbal abilities, as represented by his performance on the VCI, are in the Low Average range. His performance on the subtests contributing to the VCI is somewhat variable, although it is not significantly unusual. J█████ earned his highest score on the Vocabulary subtest (SS = 9), which is designed to measure the child's fund of knowledge, long term memory, verbal conceptualization, and verbal expression. It requires that the meaning of a word was known, can be recalled, and expressed coherently. There is no apparent demand to reason in this subtest. J█████ performed similarly on the Comprehension subtest (SS = 8), which does measure verbal reasoning and conceptualization. It also assesses the child's ability to evaluate and use past experience, knowledge of conventional standards of behavior, social judgment and maturity, and common sense. Given J█████ success on these tests, it is important to note that neither of these tasks depends on visual stimuli. In the school setting, instruction that allows for verbal reasoning and expression without relying on visual cues will allow J█████ to best utilize his cognitive strengths.

## Perceptual Reasoning Index - Subtest Scores Summary

| Subtests | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|
| Block Design | 10 | 7 | 16 |
| Picture Concepts | 11 | 8 | 25 |
| Matrix Reasoning | 13 | 9 | 37 |

J█████ earned a score of 88 on the Perceptual Reasoning Index (PRI), which classified his nonverbal skills in the Low Average range. The PRI is designed to measure fluid reasoning with tasks that assess nonverbal concept formation, visual perception and organization, simultaneous processing, visual-motor coordination, learning, and the ability to separate figure and ground in the visual stimuli. J█████ performed comparably on the subtests that contribute to the PRI, suggesting that his visual-spatial reasoning and perceptual-organizational skills are fairly evenly developed. However, he earned a lower score on the Block Design task (SS = 7), which required him to view a pictured model in a stimulus book and use blocks to recreate the design within a specified time limit. This task involves the integration of visual and motor processes, assessing the child's hand-eye abilities.

43

J____ S____         __nfidential PsychoEducational Evaluation         ~~Page 5 of 6~~

### Working Memory Index - Subtest Scores Summary

| Subtests | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|
| Digit Span | 16 | 13 | 84 |
| Letter-Number Sequencing | 9 | 7 | 16 |
| Arithmetic | 14 | 8 | 25 |

J____ earned his highest index score (99) on the Working Memory Index (WMI). These tasks each required him to briefly hold information so that manipulations or calculations could be performed. However, there was significant variability between his scores, which signifies different levels of proficiency. J____ scored much better on the Digit Span subtest (SS = 16) than on the Letter-Number Sequencing subtest (SS = 9). However, J____ performance on Letter-Number Sequencing was still in the Average range. This task is also administered later in the testing process, and J____ was showing clear signs of fatigue. Therefore, though mental manipulation is necessary for successful performance on Letter Number Sequencing, and it presents a challenge for a child whose cognitive abilities are more concrete, it is likely in J____ case his depressed score was an effect of his depleted energy level.

### Processing Speed Index - Subtest Scores Summary

| Subtests | Scaled Score | Percentile Rank |
|---|---|---|
| Coding | 3 | 1 |
| Symbol Search | 3 | 1 |

As assessed by the Processing Speed Index (PSI), J____ ability to process simple or routine visual material without making errors is in the Low Average range. J____ performance here indicates that the accuracy with which J____ can *visually* process simple or routine information is an area of need for him. Performance on this test is influenced by short-term visual memory and visual motor coordination. These tasks are also sensitive to neurological conditions. J____ strong performance on memory tasks that do not utilize visual cues suggest that his deficits lie in the visual realm and do not indicate overall memory or retrieval difficulties.

### ACADEMIC FUNCTIONING

#### Woodcock Johnson -III Standard Scores
(M=100; SD=15)

| Clusters | Standard Score | Grade Equivalent |
|---|---|---|
| Math Calculation Skills | 102 | 2.7 |
| Broad Math | 98 | 2.4 |
| Oral Language | 107 | 3.6 |
| Broad Reading | 89 | 2.1 |
| Broad Written Language | 96 | 2.3 |
| Written Expression | 94 | 2.2 |

| WJ-III Individual Subtest Scores | Standard Score | Grade Equivalent |
|---|---|---|
| Letter-Word Identification | 92 | 2.2 |

44

J▓▓▓ S▓▓▓▓▓    ...onfidential PsychoEducational Evaluation    Page 6 of 8

| | | |
|---|---|---|
| Reading Fluency | 92 | 2.1 |
| Story Recall | 110 | 4.7 |
| Understanding Directions | 105 | 3.2 |
| Calculation | 101 | 2.6 |
| Math Fluency | 103 | 2.9 |
| Spelling | 98 | 2.4 |
| Writing Fluency | 90 | 2.1 |
| Passage Comprehension | 89 | 1.8 |
| Applied Problems | 95 | 2.1 |
| Writing Samples | 101 | 2.4 |

J▓▓▓ was administered the Standard Battery of the Woodcock Johnson — Third Edition Tests of Achievement (WJ-III). These tests provide measures of academic achievement and oral language abilities. His performance in several categories is compared to grade peers using a standard score, percentile rank, and age equivalent, and his relative strengths and weaknesses will be described in this report.

J▓▓▓ performed at or above grade level in each of the domains assessed by the WJ-III, which indicates that his academic skills and his ability to apply those skills are within the average range. J▓▓▓▓▓ performed in the slightly below average only in Broad Reading (SS = 89; GE = 2.1), which indicates that this is an area in which J▓▓▓ needs academic support. His performances here correlated with his performance on the WISC-IV, which showed J▓▓▓▓ area of need to include visual processing. The skills measured in the reading tests range from visually recognizing letters and words in isolation to comprehending connected discourse. The Letter-Word Identification subtest requires the individual to read isolated letters and words from a list rather. J▓▓▓ earned a standard score of 92 on this task, which placed his abilities at the 2.2 grade level. The Reading Fluency subtest required J▓▓▓ to read simple sentences quickly and indicate if the statement is true or false. J▓▓▓ earned a standard score of 92 on Reading Fluency, which is at the 2.1 grade level. In addition to basic reading skills, depressed processing speed can inhibit performance on this test. The extra time J▓▓▓ may need to accomplish basic reading influences his ability to quickly execute more complex tasks. The Passage Comprehension test is a measure of reading comprehension and lexical knowledge. J▓▓▓ earned his lowest score on this task (SS = 89; GE = 1.8). While he showed a very good ability to sound out the words, he quickly reached the ceiling of his vocabulary knowledge. He also responded well to examiner encouragement, but his combined performance on these tasks indicated J▓▓▓▓ need for support with sight reading. Educational aides that will help J▓▓▓ in this domain include teacher support so J▓▓▓ can maintain his positive attitude while his basic instruction is provided to develop sight reading, flashcard exercises to increase his sight reading ability and speed, and the allowance of extra time in completing reading assignments.

Among his academic abilities, J▓▓▓ shows good Oral Language abilities (SS = 94, GE = 10.2). The skills measured in the oral language tests range from lower-level abilities, such as identification of isolated picture, to higher-level abilities, such as comprehension and recall of connected discourse. J▓▓▓ earned his highest score on the WJ-III on the Story Recall test (SS = 110; GE = 4.7), which assessed his ability to listen to verbally presented information and then recall elements of it. Both receptive and expressive language skills are required to perform this task. The Understanding Directions subtest measures listening ability and language development (SS = 1.5; GE = 3.2). Both of these tasks measure linguistic competency, listening ability, and meaningful memory. J▓▓▓ can use these strengths to expand his knowledge of vocabulary words, because oral language and

Jↄↄↄↄ Sↄↄↄↄↄↄↄↄ    Confidential PsychoEducational Evaluation

comprehension abilities can be emphasized over the use of visual aids in helping him learn basic reading skills.

The Math Calculation Skills Cluster on the WJ-III is an aggregate measure of computational skills and automaticity with basic math facts, and provides a measure of. The Calculation and Math Fluency subtests comprise this cluster. As was found on the WAIS-III, Jↄↄↄↄ mathematics skills were found to be average (SS = 102; GE = 2.7). Broad Math includes mathematics reasoning and problem solving, number facility, and automaticity. This cluster includes Calculation, Math Fluency, and Applied Problems. Jↄↄↄↄ performance here was also an par (SS = 95; GE = 2.7) and was consistent with his math Calculations score. It should be noted that though Jↄↄↄↄ has grade-expected math skills, it took longer than average to perform calculations and, like was seen on the POI on the WAIS-III, he is likely to need extra time and special attention to complete grade-appropriate math problems.

With regard to his writing abilities, Jↄↄↄↄ performed in the Average range (Broad Written Language SS = 92; GE = 2.9). He exhibited good reasoning ability when planning his written passages, but it is important to note that several letter reversals were observed. While these were not scorable errors, it is important to note for instructional purposes that Joseph's visual-motor acuity remains an area in which additional instruction is indicated.


PERCEPTUAL MOTOR FUNCTIONING

Jↄↄↄↄ was administered the Beery-Buktenica Developmental Test of Visual Motor Integration. This instrument consists of a sequence of geometric forms to be copied with paper and pencil. These tasks are of increasingly complex design, thus, evaluating both fine-motor control and motor planning skills. Jↄↄↄↄ written replications were scored for precision and accuracy. He obtained a Standard Score of 97, which is in the 42nd percentile of functioning. His performance was in the Average range of functioning, though there were notable errors. Joseph exhibited poor spatial organization in several of his designs; scorable errors included left-right asymmetry in his designs and an inability to represent dimensionality. When asked, he indicated he could see the difference between the stimulus shapes and what he was drawing, but admitted that he could not replicate the designs. Overall, his test results suggest underdeveloped grapho-motor or visual-motor abilities, and indicate that Jↄↄↄↄ should be tested to ascertain to what extent neuropsychological components impact his learning.


IMPRESSIONS/EDUCATIONAL IMPLICATIONS

Jↄↄↄↄ is an eight year old African American boy who lives in Washington DC with mother and younger brother. He completed the Wechsler Intelligence Scale for Children — Fourth Edition (WISC-IV) to obtain his current level of cognitive functioning. He obtained a Full-Scale IQ (FSIQ) of 75, which is in the Borderline Range of functioning, a Verbal Comprehension Index (VCI) score of 85, which is in the Low Average range, and a Perceptual Reasoning Index Composite Score of 88, which is in the Low Average range. His overall IQ score was lowered by Jↄↄↄↄ extremely low scores on tasks that involved processing speed. There is variance between Jↄↄↄↄ cognitive and academic achievement performance, which suggests the presence of a learning disability. Given Jↄↄↄↄ historical challenge with visual perception tasks, it was not surprising in this evaluation to find that he consistently performed best on tasks of verbal conceptualization and fluency that presented stimuli verbally, with no reliance on visual cues for success. His scores on tasks that required him to visually analyze stimuli or utilize visual-motor skills were consistently lower. Jↄↄↄↄ was administered the Standard Battery of

46

Confidential PsychoEducational Evaluation

the Woodcock Johnson –Third Edition Tests of Achievement to provide a measure of his academic achievement. Overall, while his performances on reading and writing tasks were consistent with those seen on the WAIS-III, J██████ performed at or above grade level in each of the domains assessed by the WJ-III. His lowest score was earned on tests of Broad Reading (SS = 89; GE = 2.1), indicating that this is an area in which J██████ may need academic support. Educational aides that will help J██████ include flashcard exercises and additional instruction to develop both his sight reading and phonic skills, and continuing to allow J██████ extra time to complete reading assignments. It should also be noted that J██████ reversed several of his letters—c, d, and b, specifically—while performing writing tasks. While this points to the need for a neuropsychological evaluation to determine the extent to which J██████ learning difficulties are organic, additional instruction to improve his basic writing skills may also improve his functioning in this area.

## RECOMMENDATIONS

The following recommendations are offered:

1. J██████ is experiencing extreme behavioral problems. A Clinical evaluation should be administered to identify the social and emotional factors that are affecting his current levels of functioning.

2. Given his performance on tasks of visual perception and visual-motor integration, and based on the results of the clinical evaluation, a neuropsychological assessment is recommended to ascertain organic contributants to J██████ difficulties.

3. Based on the results of a clinical evaluation, it is recommended that J██████ participate in a psychiatric medication evaluation to ensure he is receiving optimal treatment.

4. Specialized instruction in sight reading and writing will be a tremendous help to J██████. His depressed scores on tasks that assessed his reading, writing, and processing speed abilities suggest that additional assistance in these domains is also indicated.

5. Participation in an Anger Management Program is recommended to help J██████ learn positive ways to manage the anger his mother describes as "out of control."

Carolyn B. Hoffman, Psy.D.
Examiner

James Moses Ballard, II, Ph.D.    9/10/2006
Licensed Clinical Psychologist
MD 1160; DC 354

47

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
ENFORCEMENT AND INVESTIGATION DIVISION

SPECIAL EDUCATION DUE PROCESS HEARING

CONFIDENTIAL

HEARING OFFICER'S DETERMINATION

STUDENT: J████ S███████          DATE OF BIRTH: ███/98

ADDRESS: 2734 Langston Place, S.E.
Washington, D.C. 20020

PRESENT SCHOOL ATTENDING: Stanton E.S.
HOME SCHOOL:  Same

DATES OF HEARING: January 17 and February 9, 2007

TESTIFIED AT THE HEARING:

| | |
|---|---|
| Rodriquez Ross* | Ass't. Principal, Stanton E.S. |
| Norman Brooks* | Principal, Stanton E.S. |
| Eloise Simmons | Mother |
| Brenda Kelly* | Special Education Coordinator |
| Brian Hubbard* | General Education Teacher |
| Tara Benn* | School Psychologist |

(* Testified by telephone)

Student's Representative: Olekanma Ekekwe, Esq.
Address: 717 D Street, N.W.
Washington, D.C. 20004
FAX: 202-783-1751

School System's Representative: Saurabh Gupta, Esq.
Address: 825 N. Capitol Street, N.E., Washington, D.C. 20002

5



2007 FEB 21 AM 11: 55
DC PUBLIC
SCHOOL SYSTEM

48

**INTRODUCTION:**

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on January 17 and February 9, 2007, at the request of Olekanma Ekekwe, counsel for the parent and the student. Saurabh Gupta represented DCPS, the other party to this hearing.

**JURISDICTION:**

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446); and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300 and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099

**ISSUES:**

1.  Did DCPS deny a Free Appropriate Public Education (FAPE) to the student by failing to provide an appropriate IEP and appropriate placement for the student?

2.  Did DCPS deny a FAPE to the student by failing to identify the student as Other Health Impaired (OHI)?

**DOCUMENTS SUBMITTED INTO EVIDENCE BY DCPS:**

**DCPS-1-DCPS-6**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY STUDENT:**

**JS-1-JS-13**

**FINDINGS OF FACT:**

1.  The student is an eight-year-old male who has been found eligible for special education services by DCPS as a student with the disability classification of Learning Disabled. The student was found eligible for special education on October 15th 2003. The last DCPS IEP on the student was dated November 16th 2005. The November 16th IEP called for ten hours a week of specialized instruction and 45 minutes a week of O.T. services. (DCPS-2)

2.    An independent clinical psychological evaluation was done on April 13, 2006 that diagnosed ADHD and Disruptive Behavior Disorder. The evaluator recommended one on one tutorial especially when introduced to new material and small group structured play therapy. (DCPS-5)

3.    An independent psychiatric evaluation was done on May 11, 2006 that found the student had ongoing difficulties with school leading to multiple suspensions. The report stated: "J███████ requires significant intervention to address his emotional and behavioral needs." The psychiatrist recommended a therapeutic school placement. (JS-8)

4.    On October 23, 2006, DCPS psychologist Tara Benn did a review of the independent psychological and psychiatric evaluations. Ms. Benn found no discrepancy between the student's cognitive and academic achievement and he therefore was not learning disabled. Ms. Benn also found that the student was not emotionally disturbed since the transfer to another class with Mr. Hubbard has resulted in him following rules more often. Ms Benn based her recommendations only on a document review and did not interview or observe the student. (JS-13, Testimony of Ms. Benn)

5.    On November 13, 2006 an MDT meeting convened. The special education teacher stated that the student has achieved most of his IEP goals and is generally well behaved and interacts well with the other students. The general education teacher stated that the student is keeping up with his work and is doing well in math and able to do class work on his own. The MDT team determined that the student is no longer eligible for special education services as a student who meets the criteria for Learning Disabled. DCPS proposed that the student be placed back in the general education program. The parent and her advocate disagreed. (DCPS-3)

6.    On December 18, 2006 an MDT meeting was convened. The general education teacher Mr. Hubbard stated: "J█████ Simmon's behavior is a major concern affecting his academic progress…J█████ academic skills are on grade-level." The assistant principal Mr. Ross indicated: "his concern that J█████ could become a detriment to himself/others." Ms. Simmons stated she frequently receives phone calls from the school regarding the student's behaviors. (JS-2) The principal testified that the student's behavior problems have escalated since he was exited from special education. (Testimony of Mr. Brooks) The assistant principal testified that the student has daily behavior problems including hitting other students and verbally abusing teachers. (Testimony of Mr. Ross)

3

## DISCUSSION AND CONCLUSIONS OF LAW:

Counsel for the parent has met her burden of proof that DCPS denied a FAPE to the student by failing to classify the student as OHI based on his diagnosis of ADHD as indicated in the independent evaluations. Federal courts have held IDEA grants jurisdiction to administrative hearing officers to determine eligibility for special education services. In *Hacienda La Puente Unified School District of Los Angeles v. Honig*, 976 F. 2d 487 (9th Cir. 1992), the United States Court of Appeals for the Ninth Circuit held that a hearing officer has jurisdiction pursuant of IDEA over requests for determination of a student's eligibility for special education and related services. The Seventh Circuit reiterated that holding and stated: "The *Hacienda* decision comports with congressional intent because one of the statutory duties of a hearing officer is to 'identify' those children that are disabled and to resolve any disputes between parents and school districts as to whether a particular child is disabled or not." *Rodireiecus L v. Waukegan Sch. Dist., No. 60*, 90 F. 3d 249, 253 (7th Cir. 1996) In *Kroot v. District of Columbia*, 800 F. Supp. 976, 982 (D.D.C. 1992) a federal district court recognized that hearing officers have authority to determine eligibility for special education services. This hearing officer finds that the student is eligible for special education services as a student with the disability classification of Other Health Impaired (OHI) based on Findings of Fact #2 & #3.

This hearing officer finds very significant the testimony of the principal that the student's behavioral problems have escalated since he was exited from special education services, the testimony of the assistant principal that the student has daily behavioral problems and the statement of the general education teacher, who works with the student on a daily basis, in the December 18th MDT Meeting Notes that "J██████ S██████ behavior is a major concern affecting his academic progress." The independent evaluations all recommended continued specialized instruction and small group instruction, yet because the student was performing on grade level he was exited from special education. The above testimony of a DCPS principal, assistant principal and statement of the general education teacher indicate that the student needs the specialized instruction and behavioral supports that enabled him to make educational progress before being exited from special education on November 13th 2006. This hearing officer concludes that DCPS did not properly consider the independent evaluations that the student should continue to be eligible for special education services as a student with the disability classification of OHI. Section 300.502 (c)(1) imposes an affirmative obligation on a public agency to consider the results of a parent-initiated evaluation at private expense in any decision regarding the provision of FAPE to a child when the evaluation meets agency criteria as was done here. DCPS therefore denied a FAPE to the student.

Counsel for DCPS argues that because the student is on grade level there is no denial of a FAPE. Under 34 C.F.R. Section 300.101 (c), "each state must ensure that FAPE is available to any individual child with a disability who needs special education and related services, even though the child has not failed or been retained in a course or grade, and is advancing from grade to grade." This new provision of the 2006 Regulation

51

reinforces a district's FAPE obligations and is consistent with *Rowley* where the Supreme Court stated: "We do not hold today that every child with a disability who is advancing from grade to grade in a regular school system is automatically receiving a FAPE."

It is hereby **ORDERED** that:

1. **DCPS shall convene an MDT meeting within fifteen (15) school days of issuance of this Hearing Officer's Determination and consistent with this HOD find the student eligible for special education services as a student with the disability classification of Other Health Impaired (OHI) and develop an appropriate IEP including a Behavior Intervention Plan and counseling services. All meetings shall be scheduled at a mutually agreeable time through counsel for the student. There shall be one day of delay of the above time frame for every day of delay caused by the student, parent or counsel for the student. The MDT team shall discuss and determine if compensatory education is warranted. If so, a compensatory education plan shall be developed and implemented.**

2. **The parent is the prevailing party in this action.**

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

Seymour DuBow, Esq.
Impartial Hearing Officer                    Date filed: February 21, 2007

Date Issued: 2/21/07

# SCRUPLES CORPORATION

Patient Name:        J█████ Si█████
Date of Birth:       █████, 1998
Age:                 7 years, 7 months
Date of Evaluation:  November 15, 2005
Psychiatrist:        Amir Rehman, M.D.

## COMPREHENSIVE PSYCHIATRIC EVALUATION

### Reference Source
Eloise Simmons/ Mother

### Identification Data
█████ is a 7 year old, African American male who was brought in for an evaluation by his mother Eloise Simmons.

### Chief Complaints
ADHD

### History of the Present Complaint
J█████ an alert young man accompanied by his mother Mrs. Simmons.    He presents with difficulty to focus, being easily distracted, having a short attention span as well as being fidgety and restless. J█████ also exhibits hyperactivity with aggressive and disruptive behavior. Mother reports that J█████ has been exhibiting the above behaviors for the past three years and it has been interfering with his education. On assessment J█████ affect is appropriate with full range, he appears to be stated age with normal accounts of recent memories. His mood is euthmic/normal and he is oriented to all he has normal movements and activity levels. J█████ speeh is normal and his attitude is cooperative, he has good eye contact and thought process is logical and coherent with good impulse control.  There are no significant preoccupations with his thought process, cognitively he has ability to abstract and his attention and concentration is easily distracted with a short attention span.  Intellectually he is average with good judgment and insight.  Previous history of ADHD is denied.

### Past Psychiatry History
None Reported

### Past Medical History
None Reported

### Substance Abuse History
None Reported

### Developmental History/Psychosocial History
None Reported

6

53

Re: J███ S████████
November 15, 2005
Page 2

**Family History**
None Reported

**DSM IV DIAGNOSIS**

| | |
|---|---|
| AXIS I | ADHD 314.01 |
| AXIS II | None |
| AXIS III | None |
| AXIS IV | None |
| AXIS V | GAF Score: 50 |

**Diagnostic Formulation Treatment Plan**
- J████ Simmons is a 7-year old African American male who meets the criteria for ADHD (Attention Deficit Hyperactivity Disorder).
- Parent and psychiatrist will carefully monitor medication of Concerta 27 mg based on consumers progress.
- Consumer to follow up in one week.

Amir Rehman, M.D.
Psychiatrist

54

# SCRUPLES CORPORATION

## PSYCHIATRIC INTAKE EVALUATION

Psychiatrist: Dr. Amir Rehman/Dr. M. Peko

Name: J_____ S_____ .           Date: 11/15/05

IDENTIFYING INFORMATION: Age 7 yrs  Race AA  (Male), Female, Single, Married, Separated,

Other_____  School Grade/Education 2nd .        DOB:_____

Unemployed, employed, disabled.  Occupation:_____  Living Arrangements: c̄ mother & his brother .

CHIEF COMPLAINT: _____ attention deficit, hyperactivity _____

HISTORY OF PRESENT ILLNESS: Depressed mood, insomnia, decreased interest, decreased motivation, crying spells, decreased energy, decreased appetite, feelings of guilt, thoughts of hurting self/others, excessive worrying, fearfulness, nervousness; heart racing; shaking; fear of speaking/performing in social situations, racing thoughts, mood swings, periods of marked increased activity & creativity, impulsive behavior, increased energy, low frustration tolerance, easily agitated, anger outbursts, paranoid ideations, <u>difficulty to focus, easily distracted, short attention span, fidgety, restlessness, hyperactivity, aggressive/disruptive behavior</u>, flashbacks, nightmares, substance abuse problems, withdrawal symptoms.

pt accompanied his mother who reported J_____ c̄ the above walked by gtes for the past 3 yrs which interfere c̄ his education.

Any current / Hx of withdrawal symptoms. ☑ N/A  ☐ Denies  ☐ Nausea  ☐ Tremors/Shakes  ☐ Anxiety
☐ Diaphoresas  ☐ Blackouts/Seizures/DT's  ☐ Abdominal/Muscle Cramps  ☐ Diarrhea  ☐ Flu like sx
☐ Pilorection  ☐ Weakness

- Current Suicidal Ideations/Homicidal Ideations/Hallucinations: ∅
- Precipitating Factors: ∅
- Any Identifiable Risk Factors: ∅ .

☑ Patient contracts for safety and is not dangerous to self/others

55

Name: _____    Date: _____

## PAST PSYCHIATRIC HISTORY:
Hospitalizations: ☑ Denies _____

Suicide Attempts (Methods): ☑ Denies _____

Outpatient Treatment: _____ Ø _____

Substance Abuse Treatment HX: ☑ Denies _____

MEDICAL / SURGICAL HISTORY: ___ *none reported* _____
*stable.* _____

Head Trauma: _____ Ø _____ LOC ___ Ø _____ Seizure HX: ___ Ø ___

CURRENT MEDICATION / OTC'S / HERBALS / CAFFEINE: _____
_____ Ø _____

ALLERGIES: ☑ NKDA: _____

FAMILY HISTORY OF MENTAL ILLNESS/SUBSTANCE ABUSE: ☑ Denies ____

PSYCHOSOCIAL (.....parents and peers): _____
☑ See Identification    ☐ Good Social Support    ☐ Poor Social Support

- Any family/social problems: ___ *mother* ___
- Strengths _____ Weaknesses _____
Legal Hx (probation, pending charges, DUI's) ☑ Denies _____

H/O sexual/physical/emotional abuse: ☑ Denies _____

Child/Adolescent – Developmental and Educational HX. ⟶ *fair*  ⟶ *poor fair*

## DRUG AND ALCOHOL HISTORY:
Tobacco: ☑ Denies _____ - Last Used
ETOH: ☑ Denies _____ - Last Used
Illicit Drug: ☑ Denies _____

56

Name: _____    Date: _____

## MENTAL STATUS EXAMINATION: ☐ Check all that apply.

### Appearance
- [x] Appears stated age
- [ ] Appears older than stated age
- [ ] Appears younger than stated age
- [ ] Overweight
- [ ] Underweight
- [ ] Bizarre
- [ ] Neat and clean
- [ ] Unkempt
- [ ] Tics
- [ ] Restless

### Alertness
- [x] Alert
- [ ] Hypervigilant
- [ ] Inattentive
- [ ] Unresponsive
- [ ] Lethargic
- [ ] Fluctuating alertness & drowsiness
- [ ] Drowsy

### Orientation
- [x] Oriented to all
- [ ] Not oriented for time
- [ ] Not oriented for person
- [ ] Not oriented for place
- [ ] Not oriented for situation

_____

### Mood
- [x] Euthmic/normal
- [ ] Dysphoric
- [ ] Expansive
- [ ] Irritable/angry
- [ ] Labile
- [ ] Euphoric
- [ ] Depressed
- [ ] Sad
- [ ] Anxious
- [ ] Fearful
- [ ] Panicky
- [ ] Guilty
- [ ] Ashamed
- [ ] Congruent
- [ ] Incongruent

### Affect
- [x] Appropriate with full range
- [ ] Inappropriate
- [ ] Constricted / restricted in range
- [ ] Blunted
- [ ] Flat
- [ ] Labile
- [ ] Sad
- [ ] Anxious

### Recent Memory
- [ ] Normal
- [ ] Mildly impaired
- [ ] Moderately impaired
- [ ] Severely impaired

### Psychomotor Activity
- [x] Normal movements and activity level
- [ ] Psychomotor retardation
- [ ] Catonic stupor
- [ ] Psychomotor agitation
- [ ] Hyperactivity
- [ ] Tics of the _____

### Speech
- [x] Normal
- [ ] Organized
- [ ] Coherent
- [ ] Disorganized
- [ ] Confused
- [ ] Nonspontaneous
- [ ] Pressured
- [ ] Excessive
- [ ] Slurred
- [ ] Slowed
- [ ] Loud
- [ ] Soft

### Attitude
- [x] Cooperative
- [ ] Friendly
- [ ] Attentive
- [ ] Seductive
- [ ] Defensive
- [ ] Apathetic
- [ ] Hostile
- [ ] Suspicious and guarded

### Thought Process
- [x] Logical and coherent
- [ ] Circumstantial
- [ ] Tangential
- [ ] Incoherent
- [ ] Racing thoughts
- [ ] Perseveration
- [ ] Meaningless repetition
- [ ] Condensation
- [ ] Irrelevant answers
- [ ] Flight of ideas
- [ ] Blocking
- [ ] Slow processing

### Impulse Control
- [x] Good
- [ ] Fair
- [ ] Poor

### Thought Content
- [x] No significant preoccupations
- [ ] Preoccupation with illness
- [ ] Preoccupation w/external stressors
- [ ] Preoccupation w/_____
- [ ] Poverty of content
- [ ] Ideas of reference
- [ ] Delusions of _____
- [ ] Phobias
- [ ] Obsessions
- [ ] Compulsions
- [ ] Suicidal ideation
- [ ] Homicidal ideation
- [ ] Hypochondria
- [ ] Paranoia
- [ ] Difficulty concentrating
- [x] Distractibility
- [ ] Hallucinations _____
- [ ] Other _____
  (e.g. egomania, monomania, c unica mystica)

### Behavior
- [x] Good eye contact
- [ ] Poor eye contact
- [ ] Cooperative
- [ ] Uncooperative
- [ ] Provocative
- [ ] Manipulative
- [ ] Controlling
- [ ] Hostile
- [ ] Passive
- [ ] Dependent
- [ ] Suspicious

### Intellectual Level
- [x] Average
- [ ] Above average
- [ ] Below average

### Judgement
- [x] Good
- [ ] Fair
- [ ] Poor

### Insight
- [x] Good
- [ ] Fair
- [ ] Poor

### Cognitive Functions
- [ ] Intact
- [ ] Impaired
- [ ] Simple calculations
- [ ] Ability to read
- [ ] Fund of knowledge
- [ ] Ability to abstract

### Attention/Concentration
- [ ] Intact/Attentive
- [ ] Fair
- [ ] Partially impaired
- [ ] Poor
- [x] Short attention span
- [x] Easily distracted

57

## DIAGNOSTIC / ASSESSMENT REPORT

### SUMMARY OF FINDINGS & RECOMMENDATIONS FOR SERVICE DELIVERY

#### (INCLUDING ANY BARRIERS TO BE ADDRESSED DURING TX)

ADHD — never been treated in the past

DIAGNOSIS:    AXIS I: _____ ADHD _____

_____

AXIS II: _____ def _____

AXIS III: _____ ∅ _____

AXIS IV: _____ ∅ _____

AXIS V:   GAF: _____ 50 _____

Recommendations:

Concerta 27mg i qd #8

— f/u in 1week

☒ Risks / benefits / side effects discussed.  Benefits outweigh risks.  Alternate options discussed with patient/parent/guardian and patient/parent guardian is agreeable to the treatment.

☒ Patient/parent/guardian of the child agrees to arrange appointment (for the child/himself) with PMD for Physical exam and monitoring the physical health.

☐ Patient agrees to quit using alcohol/illicit drugs and will not drink and use drugs with the prescription medications.

☐ Patient reported that she is currently not nursing/not pregnant/not trying to get pregnant and will stop using the medications if plan for pregnancy and will report to the doctor.

☐ Patient is recommended for counseling for behavior modification/anger management/coping skills/substance abuse.

☐ Patient is recommended for community support services.

☐ Patient is recommended inpatient/out patient substance abuse rehabilitation program.

| Psychiatrist Signature | | |
|---|---|---|
| Qualified Practitioner | | Date: 11/15/05 |

Revised 9/29/05.

58



10001 Derekwood Lane, Suite #120
Lanham Maryland 20706
Phone: 301.306.4590
Fax 301.306.4591
www.interdynamicsinc.com

**interdynamics, inc.**

Evaluations and Therapy

# Clinical Psychological Evaluation
Confidential

Name: Joseph Simmons
DOB: 1998 (Age: 7-11)
School: Stanton
Grade:     2nd

Date of Report: April 13, 2006
Examiner:     James Moses Ballard, II, Ph.D.
              Licensed Clinical Psychologist
              MD 1160; DC 354

### Reason for Referral:

Joseph Simmons was referred for a clinical evaluation to help in the identification of mental, emotional and behavioral issues that impact on his adjustment to school and performance in the classroom.

### Tests and Techniques Administered:

Clinical Interview with Ms. Eloise K. Simmons, mother and Joseph
Mini Mental Status Evaluation
Behavior Assessment System for Children, 2nd Edition – PRS
The Devereux Scales of Mental Disorders
Disruptive Behavior Disorders Rating Scale-Parent Form (form 4)
Home Situations Questionnaire (form 6)
Children's Sentence Completion Test
Graphic Projective Drawings: house, tree, persons (male and female)
Children's Apperception Test (CAT)

Joseph was on time for his scheduled appointment. He was accompanied by his mother, Ms. Eloise K. Simmons, who served as informant during the clinical interview. Joseph presented as a 7 year, 11 month old male of African American descent. He is a 2nd grade student at Stanton Elementary School. Joseph was delivered full-term, by Caesarean section. Ms. Simmons reported that Joseph's heart rate "kept going down." He required medical attention. Developmental milestones were described as occurring "on time." Potty training was slow; Joseph experiences nocturnal enuresis. Also, he cries in his sleep sometimes; this behavior is usually accompanied by "bad dreams."

Ms. Simmons revealed that Joseph and his brother both urinate on themselves multiple times daily and three to four times each night. There has been no medical reason found for this. She revealed that she smoked approximately one pack of cigarettes a day and that she smoked marijuana while pregnant with Joseph.

Joseph currently receives mental health counseling with Ms. Robin Henderson at Scruples, in Washington, DC. He currently takes Concerta each morning and Risperdal at bedtime; although, Ms. Simmons could not recall the exact dosages and revealed that sometimes when Joseph is very hyper she has to "double up" his evening medication dosage to help him sleep. Prior to taking the Risperdal he suffered from insomnia and would frequently stay awake until 3:00 – 4:00am. He has

CB-07

been diagnosed with ADHD; Ms. Simmons was uncertain if there were other diagnoses and there was no available record at the time of this writing indicating for what or by whom these medications were prescribed.

J█████ is having profound difficulties at school. He has attended Stanton Elementary School in Washington, DC, since he was three years old and in Pre-K. He is currently enrolled in the second grade, but has missed most of this school year due to suspensions and midday removals from the classroom. Ms. Stanton indicated that school officials report that J█████ behavioral difficulties are extreme, and include fighting, talking in class, constant fidgeting, inability to pay attention, and frequent angry outbursts.

J█████ receives Special Education services. Ms. Stanton could not identify specifics of his program. She is very concerned about J█████ receiving adequate services and believes he needs additional support at school. She is not convinced that Stanton Elementary is a "good school for J█████." She stated that she wants a school placement where J█████ can receive one on one tutorial and small classroom instruction."

J█████ was involved in an incident with five other children at school where, reportedly, Joseph paid another boy to perform oral sex on him. The boys were suspended and an investigation was conducted, but the findings were inconclusive and no follow-up action was taken. On January 6, 2006, school officials called the DC Mobile Stabilization Unit due to J█████ out-of-control behaviors. Rather than have him transported for crisis care by DC personnel, Ms. Simmons came to the school and agreed to take J█████ to Children's Hospital. She reported taking him, but stated that the hospital told her that no beds were available. J█████ received no treatment.

Ms. Simmons reported that she has a history of treatment for Schizophrenia, Chronic Undifferentiated. She stated, "I have been in mental health facilities all my life." She acknowledged that J█████ was conceived while she was an inpatient. Ms. Simmons was not able to provide information regarding the identity of the biological father. During the pregnancy, Ms. Simmons was on various psychotropic medications including Serzone, Depakote and Haldol. She stated that she had a chronic hyperthyroid condition.

## PREVIOUS EVALUATIONS
A PsychoEducational Evaluation was conducted in September 2003. The K-ABC Mental Processing subtests were used to assess J█████ cognitive ability and the K-ABC Achievement Tests to determine J█████ levels of academic functioning. The examiner, Richard Colom, School Psychologist, report indicated that J█████ was a student of "normal/average cognitive abilities who has severe visual perception delays, slightly delayed visual-motor integration skills, and deficits in pre-readiness reading, math, and written language academic areas." The discrepancy between ability and achievement scores led to a diagnosis of "learning disabled." During the assessment, it seemed that J█████ had difficulty understanding some of the verbal instructions.

## Results and Discussion:

### BASC – 2, PRS-C
The results of the BASC – 2, PRS –C is based on Ms. Simmons' rating of J█████ behavior. The narrative and scale classifications are based on T scores obtained using norms. Scale scores in the Clinically Significant range suggest a high level of maladjustment. Scores in the At-Risk range may identify a significant problem.

The Externalizing Problems composite scale T score is 105 and it falls in the Clinically Significant range. Atypicality is 83 and falls in the Clinically Significant range. The T score for Withdrawal is 60. This score falls in the At-Risk range. Hyperactivity T score is 80 and is in the Clinically Significant range. The T score of 106 on Aggression is in the Clinically Significant range; and the T score of 111 is clearly in the Clinically Significant range. The ratings provided by Ms. Simmons

Je███ Si███████                                    Clinica. Psychological Evaluation
                                                              Page 3 of 5

suggest that Je███ will tend to externalize his behavior in an overt fashion. Of the Internalizing Problems categories, Je███ is rated in the Clinically Significant range on Depression (T score = 95). The Behavioral Symptoms Index composite scales T score of 92 is in the Clinically Significant range.

## DSMD
Je███ was administered the Devereaux Scales of Mental Disorder. The scales are interpreted using a Mean score of 100; Standard Deviation of 15. Scores between 60 and 70 are in the "elevated" category.

**Table 1: DSMD Results**

| Conduct | 92 | Externalizing | 87 |
|---|---|---|---|
| Attention | 78 | Internalizing | 73 |
| Anxiety | 71 | Critical pathology | 100 |
| Depression | 73 | Total Scale | 91 |
| Autism | 100 | | |
| Acute Problems | 94 | | |

All of the scores from the Devereux fall in the "Very Elevated" range. According to Ms. Simmons rating, Je███ is presenting several symptoms including inappropriate conduct, attention problems, anxiety, depression and autistic problems. Conduct problems is the highest rating in her opinion. The depression is consistent with the rating from the BASC – 2, PRS-C

Externalizing Composite score of 97 is in the "Very Elevated" range. Je███ will be more inclined to overt demonstrations of maladaptive behavior. Indices suggesting affective concerns are present and are significant, in the "Very Elevated" range. The data suggests that Je███ is likely to be moody and perhaps, display a mercurial affect. The following are some of the descriptors that were identified, by his mother, as occurring Very Frequently:

- He annoys others
- Initiates or picks fights
- Hurts or physically threatens others
- Resists doing what is asked of him
- Fails to control his anger
- Has trouble working quietly
- Easily distracted
- Has trouble concentrating

## CSCT
On the sentence completion items, the student is asked to complete a partial statement with his / her own thoughts. The stem is worded to be open-ended, allowing the student to provide content emphasis. For the most part, Je███ provided responses that were benign; and this makes the occasional significant response noteworthy. For example, for the stem "The worst thing about me is," Je███ responded, "my anger." At another point, he responded to "I don't like people who…" with the words, "are bad." Yet another interesting response was to the stem "When I get scared I," to which he responded, "run to my mom." The responses show a broad mixture of moods. He seems himself as angry; he sees himself as "bad." He admits to "running to mommy" for the security he needs when he feels scared.

## Graphic Projectives
Je███ was asked to draw representations of a house, a tree, persons (male and female). He made firm lines and definite graphic samples. The house that Je███ drew had a roof, a chimney, and was a frontal view. The roof of the house was slanted to one side. In addition to the chimney,

J█████ S█████████

there was a T.V. antenna on the roof. The "tree" that he was asked to draw was basic and suggested some regression. The female figure had no distinguishing characteristics; neither did the male figure. The heads were slightly over sized and non-expressive, with black circles for eyes, and dashes for the nose and mouth features. The figures are asymmetrical. The male and female figure had three fingers. Neither figure is presented as stable; they appear to be flowing, being drawn on forty-five degree angles. The drawings are consistent with one who has dependency needs; and there are problems with impulse control.

## CAT

The Children's Apperception Test is presented as a series of 10 cards with pictures of either people or animals in social situations. The student is required to tell stories about the pictures on the different cards. J█████ told brief, to the point stories consistent with his age group. The stories consistently had a happy ending, even in cases where the story might have suggested otherwise. For example, he related a story about a tiger that was chasing a monkey; the tiger caught the monkey; but everything was already in the end. The CAT stories did not identify any problems of note.

## Summary

J█████ presented as a 7 year, 11 month old male of African American descent. He is a 2nd grade student at Stanton Elementary School. He is reported to have behavior problems that show up at school and at home. At school, he demonstrates a variety of maladaptive behaviors including bullying peers, initiating physical fights, destroying property and stealing from others. J█████ argues with adults, defies or refuses to comply with adults' requests or rules and deliberately annoys other people. Also, he engages in fidgeting behavior, blurts out answers and comments before questions have been completed and has difficulty awaiting his turn.

J█████ was observed to have a good relationship with his mother. No conflict was noted between them. Ms. Simmons did acknowledge that J█████ can be hyperactive and demonstrates behavior problems at home. J█████ social behavior is regressed in that he urinates on himself daytime and nighttime. Medical etiologies have been ruled out. He receives individual counseling; and he is on medication for ADHD symptoms. The effect of medications on enuresis should be considered.

J█████ needs a structured situation and one on one tutorial when he is learning new material. He should do well with the one on one without the need to pull him from the classroom. He is distractible; therefore, the one to one would need to remain with J█████ during the session.

## Diagnoses

| | |
|---|---|
| Axis I | (314.9) Attentional Deficit Hyperactivity Disorder, NOS |
| | (312.9) Disruptive Behavior Disorder, NOS |
| Axis II | None |
| Axis III | Congenital "heart rate" problem |
| Axis IV | School related problems; Behavior problems |
| Axis V | GAF    60 |

## Recommendations

The following recommendations are offered in this case.

- Psychiatric consultation would be helpful to review medications for effectiveness and to rule out enuresis as a side effect.

- J█████ would benefit from one on one tutorial especially when introduced to new material.



- J█████ would benefit from a Functional Behavior Plan. Based on the results of the FBA, a Behavioral Intervention Plan would be considered.

- J█████ would benefit from small group, structured play therapy. This would provide a setting where he could learn social skills and the delay of gratification.

Thank you for the referral. Please advise if you have a question concerning this report.

James Moses Ballard, II, Ph.D.
Licensed Clinical Psychologist
MD 1160; DC 354



10001 Derekwood Lane, Suite #120
Lanham Maryland 20706
Phone: 301.306.4590
Fax: 301.306.4591
www.interdynamicsinc.com

**interdynamics, inc.**

**Evaluations and Therapy**

# PSYCHIATRIC EVALUATION

**Student Name:** J~~oseph S~~
**DOB:** ~~__~~/98
**School: Stanton Elementary School**
**Grade: 2**

**Age:** 8.1

**Date of Evaluation:** 5/11/06
**Examiner:** Spencer Johnson, M.D.
Psychiatrist

## PRESENTING PROBLEMS:

J~~oseph S~~ was referred to Interdynamics, Inc. for a psychiatric evaluation to assist in identifying the existence of psychiatric needs related to current educational planning. There is a need to know whether J~~oseph's~~ emotional issues are affecting his academic progress.

## EXPERIENCE OF PSYCHOLOGICAL DISTRESS, MENTAL IllNESS, TREATMENT:

Currently prescribed Risperdal and Concerta.

## HISTORY OF PRESENT IllNESS/PSYCHIATRIC HISTORY:

In November 2005, J~~oseph~~ was taken to Children's Hospital by Mobil Stabilization Unit after an incident at school.

## IMMEDIATE PRECIPITANT, STRESSORS, AND RECENT LOSSES:

None reported.


Pg. 2

## DEVELOPMENT HISTORY:

Developmental milestones were achieved within normal limits.

## MEDICAL HISTORY:

J████ was born full term by cesarean delivery. Ms. Simmons admits to smoking cigarettes and marijuana while pregnant with J████. There are no reports of injuries, illnesses or head trauma resulting in overnight hospitalizations. He is up to date with immunizations and has not had any childhood illnesses. Ms. Simmons reports that J████ is enuretic during the day and night. J████ has been diagnosed Attention Deficit Hyperactivity Disorder and takes Concerta and Risperdal as a form of treatment.

## SIGNIFICANT SCHOOL HISTORY:

J████ is a second grade student at Stanton Elementary School where he has been since Head Start. J████ has been suspended several times due to behavior problems including fighting with peers, angry outbursts, failure to follow instructions and, oppositional toward authority.

## Previous Evaluations

### Psychoeducational Evaluation

A Psychoeducational Evaluation dated September 16, 2003, by Richard J. Colon of DC Public Schools, revealed normal/average cognitive abilities with severe visual perception delays. Test data indicated a severe discrepancy between ability and achievement, thereby warranting a diagnosis of "learning disabled". Recommendations included a speech assessment and occupational assessment.

### Speech and Language Evaluation

A speech and language assessment, dated September 25, 2003, by Linda C. Brown of DC Public Schools, revealed normal range of expressive and receptive vocabulary skills and that speech services were not warranted at the time.

65


Pg. 3

Occupational Evaluation
An Occupational Therapy Evaluation, dated April 16, 2005, by Cynthia Lambert of DC Public Schools identified deficits in the areas for sequential processing and recall, fine motor/motor coordination, visual motor and handwriting. As a result, J▇▇▇ was recommended for occupational therapy services forty- five minutes a week.

Psychoeducational Evaluation
A Psychoeducational Assessment, dated March 27, 2006, by Carolyn B. Hoffman, Psy.D of Interdynamics Inc., concluded with a Full Scale IQ rating of 79, placing J▇▇▇ in the Borderline Range of cognitive functioning. Recommendations included a neuropsychological assessment, clinical evaluation, specialized instruction for reading and math and, anger management.

Clinical Evaluation
A Clinical Evaluation, dated April 13, 2006, by James Moses Ballard, II, Ph.D. of Interdynamics Inc. concluded with an Axis I diagnosis of Attention Deficit Hyperactivity Disorder, NOS, and Disruptive Behavior Disorder, NOS.

## HISTORY OF EMOTIONAL/SEXUAL/PHYSICAL ABUSE

There are no reports of emotional, sexual, or physical abuse.

## RISK FACTORS:

J▇▇▇ is at risk for school failure due to behavior problems.

## ALCOHOL/DRUG USE:

No alcohol or drug use reported.

## HOBBIES AND STRENGTHS:

J▇▇▇ likes to play football, basketball, roller skate and write rhymes.

66


Pg. 4

## FAMILY HISTORY:

J█████ lives at home with his mother and younger sibling, Gregory Pinkney. Ms. Simmons reports that J█████ and Gregory share a room and often fight each other. She also reports to having difficulty supervising them on outings in the community.

## MENTAL STATUS EVALUATION:

J█████ attended his assessment at Interdynamics, Inc., accompanied by his mother, Eloise Simmons. He demonstrated age appropriate grooming and dress. He was oriented to person, day, month, year and season. His affect was broad and mood was good. He was cooperative during the interview. He denied visual and auditory hallucinations and exhibited poor insight and impulse control. His rate of speech and expressive language skills were normal for his age. J█████ did not have difficulty completing an activity related to concentration when he was asked to repeat the numbers 16 and 61, as well as 264 and 462. He was unable to repeatedly subtract 3 from 10 and 3 from 20. J█████ memory was assessed by having him remember three unrelated words and having him state what they were after one and five minute intervals, which he was unable to do. J█████ was also unable to properly answer questions related to cognitive functioning under the category of *Fund of Knowledge* such as "Who is the current President?", he did not respond, "Who is Martin Luther King?", he responded " the man who gave the speech" and "What is your city best known for?", he responded "Indians". Under the *Fantasy Organization* category, J█████ was asked for three wishes which he responded "a game, footballs and some cars."

## DIAGNOSIS:

**Axis I:**     Attention Deficit Disorder, Combined Type

**Axis II:**   None

**Axis III:**  In Utero exposure to marijuana

**Axis IV:**   Ongoing difficulty in school and with peer group.

**Axis V:**    GAF 45

67

J████ S███████
Pg. 5

## SUMMARY:

J████ S███████ is a young male with ongoing difficulties with school leading to multiple suspensions. He demonstrates poor impulse control and likely affective lability. His mother is overwhelmed with him and his brother in terms of their repeated suspensions and behavioral concerns. Ms. Simmons described a history of her own mental health issues and admits to having a low frustration tolerance. J████ requires significant intervention to address his emotional and behavioral needs.

## RECOMMENDATIONS:

1) Therapeutic school placement is necessary to assist with optimal scholastic and emotional progress. This placement should consist of a small teacher/student ratio.

2) Individual and family therapy

3) Group counseling to assist with developing positive peer relations.

4) Continue psychiatric treatment. Review of side effects including enuresis

Certified By: __Spencer Johnson, M.D.__

Title:        **Psychiatrist**

Date:        **May 11, 2006**

68



# Children's
## National Medical Center®

111 Michigan Avenue, N.W.
Washington, DC 20010-2970
(202) 884-5000

November 4, 2005

To whom it may concern:

This letter is to confirm that J███████ S███████ and Gregory Pickney were seen in the emergency room at Children's Hospital on 11/1/05 for a mental health evaluation. The conclusion of the evaluation determined that both children required inpatient hospitalization.  However, at the time of the evaluation there were no available beds on the Children's Psychiatry Unit or at any other mental health facility in the Washington DC area.  The children were sent home and the parent (Ms. Simmons) was directed to contact Children's Hospital on the next day for bed availability updates.   At this time 11/3/05 there are still no available beds at Children's Hospital or at any other mental health facilities in the Washington DC area.

Ms. Simmons has been provided the ACCESS Helpline number (1-888-793-4357) to contact in the event crisis services are needed.  Please contact Ms. Elaine Barber at (202) 884-3858 for future bed availabilities.

If you have any additional questions, please contact the ED Psychiatry Department at (202) 884-2479.

Sincerely,

Children's National Medical Center
ED Psychiatry Department
111 Michigan Avenue, NW
Washington, DC 20010
(202) 884-2479



JS-10

70

Meeting Confirmation Date: 11/30/06    Meeting Held: 12/18/06

Student: J̶█████ S̶████    DOB ██/██/98 School: Stanton E. S.

| PARTICIPANTS: (Print Name) | PARTICIPANTS (Sign Name) | POSITION |
|---|---|---|
|  |  | Mother |
| Elouse Simmons | E. Listo | Administrator |
| Rodriquez H. Ross |  | Advocate |
| Oleksnma Ekekwe |  | General Teacher |
| Brian T. Hubbard | (signature) | Sp. Education Teacher /SST |
| Suruchi Lall | Suruchi Lall | School Psychologist member |
| Tara M. Benz, M.Ed. | T. B. |  |
|  |  |  |
|  |  |  |
|  |  |  |

See meeting notes (attached).

71

# Meeting Notes

**For J____ S____:**    **Dates:** 12/18/06

GENERAL EDUCATION TEACHER COMMENTS:

_____ _____ behavior is a major concern affecting his academic progress. He demonstrates the ability of becoming an excellent student from my observations of his oral reading and written assessments. His difficulty in the classroom is because he lacks motivation, responsibility, and desire for learning the traditional way of teaching. I often have to use technology integration and hand manipulatives to stimulate his enthusiasm.

Problem behaviors:
- out of uniform
- talking to self out loud
- bothering other students
- bringing games/cards to school
- excessive use of "I don't care," "So?"

- roaming room
- refusal to take tests
- physically attacking other students.
- coming to class unprepared.

72

J█████ academic skills are on grade-level. He reads on a third grade, six months level. When he stays on task in class, his work is satisfactory. He does, however, need certain accomodations to improve his behavior, especially during test-taking. The SST is currently in the process of conducting a functional behavioral assessment: Mr. Hubbard recorded anecdotal notes for a seven-day period, Ms. Lall will conduct formal classroom observations, administer a Motivational Assessment Scale, and regularly consult with Mr. Hubbard on differentiating instruction and implementing an appropriate incentive system.

Ms. Ekekwe and Ms. Simmons were under the impression that this meeting would be a resolution meeting. The student Services Team will prepare a formal report on J█████ FBA prior to January 17th, 2007.

Mr. Ross stated his concern that J█████ could become a detriment to himself/others.

Ms. Simmons mentioned that she frequently receives phonecalls from school regarding J█████ misbehavior. Additionally, teachers have visited her at home to report problems with J█████ behavior. She requested that a Behavior Intervention Plan be put into place to minimize the calls home.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES

1 of 2

MEETING TYPE: _____

STUDENT J___ S_____    SCHOOL Stanton E.S    DATE _____

• J___ behavior drastically changed during the past several months. He has became more communicable towards adults. During Mr. Hubbard's jury duty (absence) an incident occurred, however a change of his behavior was evident (for the positive). Mother clarify that J___ consistently consumes his medication daily.

• J___ was ecited from Sp.Ed program. Ms. Gomillion offer LC, RR, Spelling + Mathematic assessment. Tested 6'2.1 beginning SY last week scoring (PT) 4.0, Total reading 1.9 + (PT) 3.4 last week. Math 2.5 + PT 4.3. Sp 2.4 + PT 3.9. Request support Reading + Reading Comprehension, as a recommendation. Many support recumdation all subject matters.

• Does ED coorderlogy / IDEA? Students w/ ED can perform academically.

• "The support system has improvation behavior socially + academically." Stated by Hill-Btidi (S.C.) On the behalf of Parent
    • On J___ is a child w/ Disability. Impacting interaction w/ students, peers, teacher + Administrative Staff.
    The principal (who preside the 3/07) Ms. Kelly + Mr. Ross will further discuss the IEP reconstruction + the Placement of S___

...case, This placement issue was address by the principal.

I will submit parent's position on the note
AND the NOTE (position) will be <u>FAX</u> to the
Administrative party by the end of today.

Parent States that ████████ has not
been receiving social emotional counseling.
Parent receives calls everyday that J████████
absent from school but he is in school
everyday — everyone in school agrees that
J████ is in school except for when he is sent OF
suspended. The IEP appears to have been suspended.
J████ needs current IEP — Stanton
developed an IEP for 10 wks only.
                (clinical, academic, OT)
Parent requested a reevaluation, but
no evaluation has been done, if it is done
nobody has a copy of the evaluations
J████ continues to have emotional and
behavior difficulties in school
Goals on the IEP is not tailored to him
His social emotional goals should address
impulse, attentive issues, outburst, aggression

There is <u>not</u> placement for J████ on the
IEP. he should have placement in a
therapeutic setting. it appears that
team was not ready to go forward today. Nothing
...

- Choose 1 Automated system
  review of the

- Hosp. who test quality
  goals

- By IEP update Immediately
  + the !

Request for 3/26/07 cancelled
Report for Clinical. DCPS Does not do
Clinical report.

→ IEP Reconstruction
→ Available copy of ~~Report~~ Assessment
  Analysis.

[signature]

76

The representative disagree of the concept of reforming a REVISE IEP which expired. 8/24/07

- The ones that had not been mastered should be kept.

- Goals to be Develop today

- CP (clinical)

- Ms Gomillion is doing the Goals

- All Parties will convene once ASSESSMENTS are completed.

present an IEP (appropriate)

- ATTNY, NEED SOCIAL EMOTION

77



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM (MDT)

| | MDT |
|---|---|

Eligibility Meeting Notes
*Re - Evaluation*

MEETING DATE: ~~03/22/2007~~
03/26/2007

STUDENT: J_____ S_____        SCHOOL: Stanton Elementary

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| | | Parent/Guardian |
| Ms. Simmons | *Mrs. Gomillion* | Special Ed Teacher |
| Ms. Gomillion | *MD Cheriese Parker* | General Ed Teacher |
| Mr. Hubbard | *Ms. Kelly* | LEA Representative |
| Ms. Kelly | | Principal or Designee |
| Mr. Brooks | *Luatta Hill-Bidi* | ~~Student~~ Counselor |
| Ms. Hill-Blidi | | Advocate |
| OI EKEKWE | *Tara M Benn* | School Psychologist |
| Tara M. Benn, M.Ed. | | |

The meeting was convened and introductions were made. A copy of the Procedural Manual was given to the parent with a brief explanation and a receipt for the Manual was signed. The purpose of the meeting was stated: Pursuant to an HOD dated Febraury 21, 2007: Find student eligible as a student with OHI, develop a IEP as necessary including a Behavior Intervention Plan and discuss compensatory education.

Parent Reports: *_____ was in the hospital for 7 days for clinical care. He does have medication and have been diagnosed. Parent is concerned about J_____ behavior and being suspended.*

THE PARENT ☒ IS PRESENT ☒ IS NOT PRESENT AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT Joseph      Simmons

☒ IS ELIGIBLE FOR SPECIAL EDUCATION AND RELATED SERVICES
   ☒ TEAM WILL COMPLETE IEP
   ☒ TEAM WILL SCHEDULE IEP MEETING
   ☒ ADDITIONAL ASSESSMENT WILL BE ORDERED

☒ IS NOT ELIGIBLE FOR SPECIAL EDUCATION
   ☐ STUDENT IS REFERRED BACK TO THE TAT
   ☐ ADDITIONAL ASSESSMENT WILL BE ORDERED

12

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    MDT MEETING NOTES    APPENDIX - A

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: Re-Evaluation

____ of ____

MDT REFERRAL DATE _____

STUDENT _____    SCHOOL  Stanton Elementary School    DATE March 26, 2007

## School Psychologist's Summary

A Behavior Intervention Plan was drafted in conjunction with a Functional Behavioral Assessment conducted in December 2006. The target behavior was identified as oppositional behaviors, specifically not complying with directions. Social-Emotional goals were drafted for the current IEP. The goals came from information found in the Functional Behavioral Assessment.

After a review of the Functional Behavioral Assessment, listening to oral reports from team members and reading data collected regarding Joseph's current level of performance in the area of behavioral and social-emotional functioning within the school setting, 30 minutes of direct Psycho-social Counseling was recommended by the School Psychologist. Consultation with the general education and the special education teacher with the provider of psycho-social Counseling may be a more appropriate intervention than 90 minutes of psycho-social counseling with a provider (90 minutes of Psycho-social counseling was proposed by the other team members).

Lisa Y. Berry, M.Ed.
District of Columbia Public Schools
Certified School Psychologist

Special Education Teacher. Joseph was exited from special education on (11-13-06). I have not had direct contact with Joseph since that date. However, I reviewed goals that I had drafted for Joseph in reading and written expression for the MDT.

S. Gomillion, Special Ed Teacher

DT    3|26|07    J█████ S█████

Math goals should be part of the IEP.
Targeted goals should include the
aggression towards self and other
    The functional behaviour assessment should
be upgraded and intervention plan
    The social emotional section should
be include goals to address physical
    aggression
    Parent would like the Compensatory Education
tutor to come to her house on weekend to
provide service to J█████

Olekonma Etekwe    3|26|07
                    March 26, 2007

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
**(MDT)**
**MEETING NOTES (continuation)**

| MDT |

DATE: 03/22/2007

STUDENT: _____ J___ S_____ _____ SCHOOL: Stanton Elementary _____

Summary and Recommedations: Based upon the documentation reviewed by the MDT, the MDT determined that the student is eligible for special education services as a student who meets the criteria for Other Health Impaired. The student requires specialized instruction in the following areas:
Reading and Writing

The student requires related services in the following areas: psychological services for __3 X__ per week.
for 30 minutes for each session

The following accommodations will be made: extended time, extra breaks, repeated directions specific prase for appropriate behavior, preferential seating.

The level of standardized assesssments will be level III

☆ Compensatory Education: Student missed 17 weeks of service at 10 hours per week...

Placement Discussion: Based upon the information reviewed by the MDT

~~The~~ DCPS Agrees to provide:

➤ Compensatory Education: 17 weeks X 10 hrs.

(0. Student

17 hours of tutoring, before or after school), and or weekends

Further ~~Assessment~~: Educational Assessment will be completed the team will resume to discuss evaluation and develop IEP as necessary. Parent and Advocate also would like the Behavioral Plan updated.

Parent/Advocate would like goals in IEP for math

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
STUDENT EVALUATION PLAN
(SEP)

MDT
SEP

MDT REFERRAL DATE: _____    MEETING DATE: 3/26/2007

STUDENT: J_____ S_____    DOB: _____ AGE: 8 GRADE: 3 SCHOOL: Stanton

STUDENT IDENTIFICATION NUMBER: 90 91283    TEACHER / HOMEROOM: Mr. Hubbard

ADDRESS: 2734 Langston Pl. SE #101    Washington    DC    20019
Street #    Street Name    Quadrant    Apartment #    City,    State,    Zip Code

PARENT(S)/GUARDIAN: S_____    TELEPHONE (H): 2/889-1256 (W): WASH DC 20000

Summarize Area(s) of Concern:

MDT is Recommending
further testing

Team Recommendations:

Further testing

EVALUATION(S) IN AREA(S) OF LEARNING CONCERN(S)

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | TIMELINE ASSIGNED | DUE DATE |
|---|---|---|---|---|
| ☐ Psychological | | | | |
| ☐ Speech/Language | | | | |
| ☐ Social History | | | | |
| ☐ Audiological | | | | |
| ☐ Vision Screening | | | | |
| ☐ Medical | | | | |
| ☒ Educational | TBA | TBA | | |
| ☐ Hearing Screening | | | | |
| ☒ Other | Other: To be Determined | Other: To be Determined | | |

| TEAM MEMBERS: NAME | POSITION | TEAM MEMBERS: NAME | POSITION |
|---|---|---|---|
| S_____ | Mother | Tara M. Benn, M.Ed. | School Psychologist |
| Etefwl | advocate | Sharon M. Beverly-Gomillian | Special Ed. Teacher |
| Ms. Kelly | SEC | Lucalli Nell-Blair | Counselor |
| Ms. Hawkins | ET-15 | | |

The MDT meeting to discuss the evaluation results is scheduled on _____ at _____ in room _____

Place completed form in MDT folder.

## COMPENSATORY EDUCATION PLAN*

**Section I.**
Student Name: J___ S___   DOB ___/1998  Sex M  Grade 3
Age 8  Date of IEP 03/26/2007  Date of Proposal 03/26/2007  Home School Stanton
Attending School: Stanton   Disability: OHT
Language English   Address: 2734 (Ansston)  P.I. 8E 701
Parent Name: ELOISE SYMMONS   Phone (H): 2/887-12-56  (C) 2/258-8409
Instructional/Related Services Missed: Specialized Instruction

Time Period for Delay/Disruption: _____
Description of Compensatory Education due to ✓ HOD** ___ SA** ___ other: DCPS agrees to provide
_____
_____
_____

**Section II- Compensatory Education Services to be Provided:**

| Skill Areas | Provider | Beginning Date | Duration |
|---|---|---|---|
| Reading & Writing | | | |
| | | | |
| | | | |
| | | | |

Parent Signature: ___ 3/26/07   Principal Signature: _____
MDT Members:   Position: Special Education Teacher
___ Beverly Llewellin   SEC
___ Kelly   Classroom Teacher ET-15
(Note: for ___ Theresa Murphy   School Psychologist
Mr. Hobbins ___   Counselor

**Section III- Signatures for Services Rendered:**

| Provider | Service | Total Hrs. Recd | Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Date _____
Principal Signature: _____

**Section IV-** If the services on the plan are not completed by the end of the school year, or if the student transfers before the services are concluded, the IEP/MDT completes the bottom portion of this proposal, attaches the proposal, lesson objectives, and progress report to the new or current IEP, and files the IEP in the student's special education folder. For the transferring student, the special education records, inclusive of the IEP and compensatory education documents, are forwarded to the receiving school. Copies of documents must be forwarded to the Mediation and Compliance Unit.

| Services | Frequency Hr/Min Wk/Mo | Setting | Total Hrs. or Wks. Of Service Remaining |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

*Complete a MDT/IEP Meeting Note Page and attach meeting page and Compensatory Education Plan to IEP. Copy of the Plan must be forwarded to the Mediation and Compliance Unit, Division of Special Education within five (5) school days. **HOD/SA must be attached.

83



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

| MDT |

MULTIDISCIPLINARY TEAM (MDT)

~~Eligibility Meeting Notes~~
*Re - Evaluation*                    MEETING DATE: 03/~~22~~/2007
                                                    *03/26/2007*

SCHOOL: Stanton Elementary

STUDENT: J~~oseph~~        S~~immons~~

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Ms. Simmons | *Ms. Gomillion* | Parent/Guardian |
| Ms. Gomillion | *MD Theresa Harper* | Special Ed Teacher |
| Mr. Hubbard | *Ms. Kelly* | General Ed Teacher |
| Ms. Kelly | | LEA Representative |
| Mr. Brooks | *Swathi Hill-Bledi* | Principal or Designee |
| Ms. Nill-Blidi | | ~~Student~~ *Counselor* |
| OI EKEKWE | *Tara M. Benn* | *Advocate* |
| Tara M. Benn, M.Ed. | | *School Psychologist* |

The meeting was convened and introductions were made. A copy of the Procedural Manual was given to the parent with a brief explanation and a receipt for the Manual was signed. The purpose of the meeting was stated: Pursuant to an HOD dated Febraury 21, 2007: Find student eligible as a student with OHI, develop a IEP as necessary including a Behavior Intervention Plan and discuss compensatory education.

Parent Reports: *Joseph was in the hospital for 7 days for clinical care. He does have medication and have been diagnosed. Parent is concerned about Joseph behavior and being suspended.*

THE PARENT ☒ IS PRESENT ☒ IS NOT PRESENT  AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT Joseph        Simmons

☒ IS ELIGIBLE FOR SPECIAL EDUCATION AND RELATED SERVICES
  ☒ TEAM WILL COMPLETE IEP
  ☒ TEAM WILL SCHEDULE IEP MEETING
  ☒ ADDITIONAL ASSESSMENT WILL BE ORDERED

☒ IS NOT ELIGIBLE FOR SPECIAL EDUCATION
  ☐ STUDENT IS REFERRED BACK TO THE TAT
  ☐ ADDITIONAL ASSESSMENT WILL BE ORDERED

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    MDT MEETING NOTES    APPENDIX - A

84

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## WASHINGTON, D.C.
### INDIVIDUALIZED EDUCATIONAL PROGRAM

**DCPS - IEP  Page 1 of 4**

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

**II. CURRENT INFORMATION**

Date of IEP Meeting: 03/26/2007

Date of Last IEP Meeting:

Date of Most Recent Eligibility Decision:

Student Name: Last S_____ First J_____ MI

Student ID: 9091283   Soc. Sec. No. _____   Age: 8   Grade: 3

Gender: ☒ M ☐ F   Date of Birth: __-98   Ethnic Group: African-American

Purpose of IEP Conference:
☐ Initial IEP   ☐ Review of IEP
☐ Requested Eval.   ☐ 3yr ReEval.

Address: 2734 Langston Place  SE  #101
House No.   Street Name   Quadrant   Apartment #

Washington, DC   20020
City   State   Zip Code

☐ Non-attending

Attending School: Stanton ES   Home School: Stanton ES

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS/

Parent: _____

Indicate Level of Standardized Assessment: II

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

Address of (if different from student): ☒ Parent ☐ Guardian ☐ Surrogate

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

House No.   Street Name   Quad  Apt. No.  City   State  Zip Code
Telephone: Home 2/889-1252   Work

## III. LANGUAGE

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | NA | Oral |
| Parent | English | English | NA | English | Rdg./Written |
| Home | English | English | NA | English | Instrument: |
| | | | | | Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | | | FREQUENCY Hr./Min D/W/M. | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |  |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 10 | 10 | | Hr | W | Spec. Ed Teacher | | 10 | WKS |
| Psychological Service | 1.5 | 1.5 | | hr | W | Exclusion Social Worker | | 10 | WKS |
| | | | | | | | | 13 | |

TOTAL  11.5 11.5  Hours Per Week

## V. Disability(ies)  OHI

Percent of time in Specialized Instruction and Related Services
☐ 0-20%   ☐ 21-60%   ☒ 61-100%

☐ (Check if setting is general Ed.)
Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

ES J participated 6L__
I didn't agree with everything

O.E. Kekoe Advocate
Lucille Hill-Bladp

Lucille Hill-Bidi, counselor
for. M. Hubbard, Cheree Hawkins- ET-15
Sharon M Beverly Gamillon
Tara M. Benn, M.Ed., School Psychologist

M. _____
Sharon M Beverly Gamillon
Tara M. Benn

ES I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
Parent/Guardian Signature  6L A   Date 3/26-07

District of Columbia Public Schools  07-02-2001   Division of Special Education   Appendix - A   IEP Page 1 of 4

85

| Student Name | J____ S____ | Managing School | Stanton ES | DCPS - IEP |
| Student ID Number | 9 091283 | DOB __-98 | Attending School | Stanton ES | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: ☐

**Academic Areas: (Evaluator)** S. Beverly-Gomillion, Special Ed. Tchr

Score(s) When Available

**Math Strengths:**
J____ can add and subtract whole numbers with and without regrouping.

Math Cal. 2.5 GE

Math Rea. _____

Impact of disability on educational performance in general education curriculum:

See goal page: _____

Date: 9-11-06

**Reading Strengths:**
Can identify consonant and vowel sounds. Can identify sight words

Rdg. Com 1.8 GE

Rdg. Basic 2.1 GE

Written Ex. <1.0 GE

Impact of disability on educational performance in general education curriculum: Deficits in basic reading skills impact on J____ ability to develop skills on his grade level

See goal page: 1, 2.

Date: 9-11-06

**Communication (Speech & Language) (Evaluator)**

Score(s) When Available

Strengths:

Exp.Lang. _____

Rec- Lang. _____

Artic _____

Impact of disability on educational performance in general education curriculum:

Voice _____

Fluency _____

Exp. Voc. _____

Rec. Voc. _____

See goal page: _____

Date: _____

**Motor/Health (Evaluator)**

Score(s) /Results When Available

Strengths:

_____
_____
_____

Impact of disability on educational performance in general education curriculum:

See goal page: _____

Date: _____

**Social Emotional Behavioral Areas: (Evaluator)** Tara M. Benn, M.Ed. (Reviewer)

Score(s) When Available

Strengths:
His ability to ask for assistance and identify staff with whom he feels comfortable with.

_____
_____

Impact of disability on educational performance in general education curriculum:
Difficulty following directions, noncompliance and leaving class w/out permission.

See goal page: _____

Date: _____

**Cognitive/Adaptive Behavior: (Evaluator)**

Score(s) When Available

Strengths:

_____
_____
_____

Impact of disability on educational performance in general education curriculum:

See goal page: _____

Date: _____

**Prevocational Skills: (Evaluator)** _____

Score(s) When Available

Strengths:

_____
_____
_____

Impact of disability on educational performance in general education curriculum:

See goal page: _____

Date: _____

| Student Name | J███ S██████ | Managing School | Stanton ES | DCPS - IEP |
| Student ID Number | 909 1283 | DOB | ██ - 98 | Page 3 of 4 |
| | | Attending School | Stanton ES | |

Goal Number: ☐

**VIII. SPECIALIZED SERVICES**     Additional Comments:

Area addressed by goal: _Academics: Reading_

**ANNUAL GOAL : (including mastery criteria.)**

J████ will demonstrate 6 months to 1year's growth in his reading skills by demonstrating 80% mastery of the following short-term objectives

Provider(s): _Special Education Teacher_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1. Given daily practice and instruction, J███ will be able to identify the purpose and restate important facts from a text heard or read with 80% accuracy. | | Monthly |
| 2. Given daily teacher instruction, J███ will be able to identify the meaning of a favorite poem or story with 80% accuracy. | | Monthly |
| 3. Given daily instruction and practice, J███ will be able to decode phonetically regular multi-syllabic real and non-sense words fluently using letter-sound knowledge with 80% accuracy. | | Monthly |
| 4. Given daily instruction in reading, J███ will be able to distinguish cause from effect with 80% accuracy | | Monthly |
| 5. Given daily instruction and classwork J███ will be able to identify the main idea of a selection heard or read with 80% accuracy. | | Monthly |
| 6. Given daily instruction and practice, J███ will be able to identify personality traits of characters from a reading selection with 80% accuracy. | | Monthly |

**EVALUATION PROCEDURE(S)**

| Portfolio | Log | Chart | ~~Test~~ | Documented Observation | ~~Report~~ | Other |
|---|---|---|---|---|---|---|

| Student Name | J_____ S_____ | Managing School | Stanton ES | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9091283 | DOB | ___98 | Page 3 of 4 |
| | | Attending School | Stanton ES | |

**VIII. SPECIALIZED SERVICES**    Additional Comments:

Goal Number: 2

Area addressed by goal: __Academics: Written Expression__

**ANNUAL GOAL : (including mastery criteria.)**

J_____ will demonstrate 6 month to 1 year's growth in his written expression skills by demonstrating 80% mastery of the following short-term objectives

Provider(s): __Special Education Teacher__

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1. Given daily instruction in written expression, J_____ will be able to write legibly in cursive, leaving spaces between words in a sentence with 80% accuracy. | | Monthly |
| 2. Given instruction on letter writing, J_____ will be able to write a friendly letter complete with date, salutation, body closing and signature with 80% accuracy. | | Monthly |
| 3. Given daily instruction and practice in writing J_____ will be able to identify and use correct punctuation including end marks, commas for series, and punctuation for dates, city and state with 80% accuracy | | Monthly |
| 4. Given appropriate classroom instruction and practice, J_____ will be able to distinguish between complete and incomplete sentences and recognize and use correct word order in written sentences with 80% accuracy. | | Monthly |
| 5. Given instructions to write on a familiar topic (eg. personal experience, event), J_____ will be able to write 3 to 5 related sentences describing the topic with correct grammar and punctuation with 80% accuracy | | Monthly |
| 6. Given a list of weekly spelling words, J_____ will be able to spell the words, define the words and use the words appropriately in sentences with 80% accuracy. | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

ent Name ___ J_____ S_____

ent ID Number _____          DOB ____          Attending School  Stanton Elementary

Case 1:08-cv-00388-JR    Document 7-4    Filed 07/02/2008    Page 5 of 43

| SPECIALIZED SERVICES | Additional Comments: _____ |

Area addressed by goal:  Social-Emotional

UAL GOAL: (including mastery criteria.)

■ will improve social-emotional functioning by decreasing acts of verbal aggression and defiance by 80% in the academic
ng.

vider(s): _ Social Worker _____

sider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ■ will follow directions on the first request 80% of the time or in 4 out of 5 trials with mpting. | | Weekly |
| ■ will follow directions from authority figures without talking back or arguing 80% of the time in 4 out of 5 trials with redirection. | | Weekly |
| ■ will reduce acts of verbal aggression, i.e. verbal intimidation, threats, profanity 80% of the ne in 4 out of 5 trials with redirection. | | Weekly |
| | | |
| | | |
| | | |

EVALUATION PROCEDURE(S)

☐ Portfolio   ☐ Log   ☒ Chart   ☐ Test   ☒ Documented Observation   ☐ Report   Other _____

District of Columbia Public Schools          07-02-2001          Division of Special Education          Appendix - A          IEP Page 3 of 4

89

| | | | | DCPS - IEP |
|---|---|---|---|---|
| Student Name | J___ S'___ | Managing School | Stanton ES | Page 4 of 4 |
| Student ID Number | 9091783 | DOB ___ /24/98 Attending School | Stanton ES | |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in general education? ☐ Yes ☒ No

Explanation for removal out of regular education classroom.

Student requires specialized instruction and related services to access the general education curriculum

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./ Min | D/W/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None needed

- Timing/Scheduling: extended time
- Setting: preferential seating, concise direction
- Presentation: repeated review/drill,
- Response:
- Equipment:

## XI. STATE AND DISTRICT ASSESSMENTS:
☐ Level I   Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V Portfolio: ___

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☒ Reading
☐ Mathematics
☒ Written Expression
☐ Other:
☐ None

☐ Physical/Sensory
☐ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

**Modifications:**
☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Out of General Education | Reject | impact on student's esteem |
| In general education | Reject | continued school failure |
| Combination General Ed | Accept | time away from non-disabled peers |

Modification(s)/Accommodation(s) to address the harmful effects:

Specific scheduling to accommodate related services.

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 4 of 4

90

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

PRIOR NOTICE

**Check Purpose:**
- ☐ Initial Evaluation
- ☐ Initial Placement
- ☒ Reevaluation
  - ☐ Change in Category Exit
  - ☒ Related Service Add
  - ☐ Related Service
  - ☒ Change in Placement
  - ☐ Other     HOD

Date _____ March 26, 2007 _____

Student _____ J____ S_____ _____     DOB _____ 1998

School _____ Stanton ES _____

Current Disability Category _____ OHI _____

Setting _____ Combination General Education and Resource Classroom _____

Dear _____ Parent _____

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
- ☒ Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- ☐ Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- ☐ Other _____

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)

- ☐ Your child is not eligible for special education service(s).
- ☒ Your child is eligible or continues to be eligible to receive special education services as a student with _____ Other Health Impaired
- ☒ Your child will begin receiving _____ Specialized Instruction & psychological services _____ as a related service(s).
- ☐ Your child will no longer receive _____ as a related service(s).
- ☐ Your child's category of disability is being changed from _____ to _____
- ☐ Your child's alternative placement on continuum (next setting) is being changed,
     from _____ to _____
     Your child is no longer eligible and will be exited from the special education program.
- Other: _____

**Description and Explanation of agency action proposed or refused.**

> Based on the documentation reviewed by the team, it was determined that the student could not be educated in the general education setting, the student requires specialized instruction to access the curriculum.

**Description of Other Options Considered and reasons for rejection of each option**

> Based on the documentation reviewed by the team, it was determined that the student could not be educated in the general education setting, the student requires specialized instruction to access the curriculum.

Other relevant factors to the decision - _____

MDT Members:
- ☐ Principal or Designee
- ☒ Parent
- ☐ Student
- ☐ Social Worker
- ☒ General Education Teacher
- ☒ Special Education Teacher
- ☒ Speech and Language
- ☒ *LEA & Interpreter (*may be one)
- ☒ Psychologist
- ☒ Other: _____
  _____
  _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or if you have questions regarding the Procedural Safeguards,
please contact _____ Ms. Kelly _____ at _____ (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

District of Columbia Public Schools
Washington, D.C.

Intervention Behavior Plan

Date Developed: _____

## INTERVENTION BEHAVIOR PLAN

Student Name  Jo____ S_____     ID# _____     DOB _____     Grade  3rd

Address _____
        Street #        State Name,      Quadrant    Apartment#    City,    State,    Zip Code

Telephone (H) _____ (work) _____     Counselor  Ms. L. Hill-Blidi

Attending School  Stanton Elementary     Teacher  Mr. B. Hubbard/Ms. S. Gomillion     Room _____  Section _____

Additional Comments: ☐

**TARGETED BEHAVIOR(S):**

Oppositional Behaviors (Not complying with directions).

**POSITIVE INTERVENTION STRATEGIES: Student Objective -**

Positive Verbal Praise
Breaks
Behavior Chart
Token Economy

Implementation description -

The teacher will provide Jo____ with positive behavioral strategies within the classroom setting (reward Jo____ for compliance).
The teacher will provide instruction that is multi-modal, technology integrated that will assist with keeping Jo____ on task.
The teacher will use a behavior chart to assist with monitoring Jo____ compliant behaviors.
The teacher will use a token economy to assist with increasing Jo____ behaviors in the academic setting. The token economy will be linked to his progress per the behavior chart.

**POSITIVE INTERVENTION STRATEGIES: Teacher Strategies**

Keep Jo____ on task and engaged.
Allow Jo____ to take breaks when warranted i.e., Jo____ begins to fidget or shut down or indicate he needs a break he can walk around class or act as a "messenger" and bring a note to the office.

MONITORING SYSTEM: Responsible Teacher -  Mr. B. Hubbard and Ms. S. Gomillion

Describe System -

Behavior log, anecdotal notes and progress reports.

Data collection timeline -

Ongoing and weekly

FOLLOW-UP MEETING: Date - _____

DISTRICT OF COLUMBIA PUBLIC SCHOOLS 07-02-2001 DIVISION OF SPECIAL EDUCATION     IEPATTACHMENT A INTERVENTION BEHAVIOR PLAN

92

# LAW OFFICES OF OLEKANMA A. EKEKWE, P.C.
### 1001 Pennsylvania Avenue, NW
### Suite 600
### Washington, DC 20004

TELEPHONE: (202) 742-6694
FACSIMILE: (800) 524-2370

September 14, 2007

Mr. Mitchell Bronson
Special Education Coordinator
Stanton Elementary School
2701 Naylor Road
Washington, D.C. 20020
**BY FAX 202-645-3264**

Re: J█████ S██████ (DOB █████98)

Dear Mr. Bronson:

We received your fax dated 9/12/07. A meeting was held on September 4, 2007; you informed that the school is offering to place J█████ at MC Terrell. Ms. Simmons informed you that she does not believe that the MC Terrell is appropriate for her son J█████. She also informed that she would e placing her son at Sunrise Academy at DCPS expense.

You advised Ms. Simmons to go visit the school. On September 13, 2007, Ms. Simmons visited the school and found that there were no walls between the classes. The classroom is overcrowded with student and not enough teachers or adult in the classes.

With this letter parent again informs that she would be placing her son at Sunrise Academy at DCPS expense.

Sincerely,
Olekanma Ekekwe

attached acceptance letter

93



## SunRise Academy
*...your path to a brighter future*

September 13, 2007

Ms Eloise Simmons                              Re: J████ S████
2734 Langston Place, SE #101                   DOB: ██/██/1998
Washington, DC 20020

Dear Ms Simmons:

Based on a review of records, including J████'s IEP, we are certain that we can more than adequately meet his instructional and related service needs. We are prepared to accept him for the 2007-2008 school year, pending placement authorization from the District of Columbia Public School's Office of Special Education.

If J████ is placed here, we ask that a parent/guardian contact the main office at least one business day in advance to confirm the start date, as well as accompany him on the first day of attendance. Please plan to stay for at least thirty minutes to complete consent forms, and bring the following for submission:

- Health and immunization records
- **Residency verification form** - unless student is a Ward. (We need the original school copy, which is obtainable ONLY from the Residency Verification Office at 825 N. Capital St. NE.)
- Copies of birth certificate and social security card
- Health insurance carrier and group/member number
- Updated contact information

Thanks for considering SunRise Academy as a possible placement. If additional information is needed, please do not hesitate to contact me.

Sincerely,

*Makini Niliwaambieni /lh*

Makini Niliwaambieni
Principal

cc: Ms Olekanma Ekekwe, Esq.

1130 6th St N.W.
Washington DC 20001

Ph . 202.289.9255
Fax. 202.289.9257

94

# SunRise Academy

1130 6th Street, NW
Washington, DC 20001
Telephone 202-289-9255
Fax 202-289-9257

14

# facsimile transmittal

| To: | Ms Olekanma Ekekwe, Esq. | Fax: | 1.800.524.2370 |
|---|---|---|---|

| From: | SunRise Academy/Ms Lester | Date: | September 13, 2007 |
|---|---|---|---|

| Re: | J▆▆▆▆ S▆▆▆▆▆▆ Acceptance Letter | Pages: (including cover) | 2 |
|---|---|---|---|

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

If you have any questions or concerns I can be reached at 202.638.6075

ext.323. My fax number is 202.638.1663.

Thank you,

Ms Lester


CONFIDENTIAL

95



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of the Chancellor**
Office of the General Counsel
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000      Fax: 202-442-5098
www.k12.dc.us

November 14, 2007

Olekanma Ekekwe
1001 Pennsylvania Ave. NW Suite 600
Washington DC 20004

## DISCLOSURE STATEMENT

## VIA FACSIMILE

**Subject: Due Process Hearing for J█████ S█████ DOB ██/98**

Dear Ms. Ekekwe,

At the upcoming due process hearing in the above-referenced matter, and pursuant to the Individuals with Disabilities Education Improvement Act (IDEIA) of 2004, in addition to any documents and witnesses disclosed by the parent, DCPS may rely upon the witnesses and documents previously disclosed in this matter, and any of the following witnesses/documents[1]:

### Witnesses

1. Iris Pulliam, Special Education Coordinator, or designee 3301 Wheeler Rd. SE
   Washington DC 20032

   ~~principal~~

### Documents

1. 9/4/07 Prior Notice
2. 9/4/07 MDT Notes
3. 10/1/07 Letter of Invitation/Confirmation
4. 9/4/07 IEP

### Motion to Compel Attendance

Pursuant to 5 DCMR 3031.1(b), DCPS hereby moves the Student Hearing Office to compel the attendance of the below named individuals as necessary and material witnesses:

---

[1] Witnesses may testify by telephone.

96

DCPS Office of the General Counsel
Page 2

**Eloise Simmons 1001 Pennsylvania Ave. NW Suite 600 Washington DC 20004**

DCPS reserves the right to amend this disclosure as documents become available.
DCPS reserves the right to examine any witnesses called or identified as a potential
witness by the representative of the student, as if such witness was called by DCPS.
DCPS reserves the right to rely upon and/or use any documents/witnesses presented
and/or disclosed by the parent that DCPS deems relevant in this case.
DCPS reserves the right to introduce any and all witnesses and/or documents for the
purposes of impeachment and rebuttal

If you wish to discuss any aspect of this case further, or have questions, please contact
me at (202) 442-5189.

Sincerely,

Laura George
Attorney Advisor
Office of the General Counsel
DC Public Schools
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002
(202) 442-5189 - phone
(202) 442-5098 - fax

cc:    Student Hearing Office

97

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

| MDT |
|---|

MEETING DATE: 9-4-07

MDT REFERRAL DATE: _____

STUDENT: ~~Joseph Simmons~~        SCHOOL: Stanton ES

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Mitchell Branson | Mitchell Branson | Special Ed. Coordinator |
| Eloise Simmons | | Mother |
| Adroma Ekptwa | | Advocate |
| Anette Ahier | Anette Ahier | Social Worker |
| Lucille Hill-Blidi | Lucille Hill-Blidi | Counselor |
| Sharon M. Bayer-Gamillion | Sharon Bayer-Gamillion | Special Education Setting |
| Mabel Balls | Di Balls | School Psychologist |

The purpose of this meeting is to update an IEP
for ~~Joseph S.~~

Mrs. Hill-Blidi (School Counselor reports)
• ~~Joseph~~ was very active and often got in trouble with
adults.
• Has a low tolerance with peers.
• ~~Joseph~~ did however respond to one to two people
appropriately in the building but not in the learning
environment.

THE PARENT ☒ IS PRESENT ☐ IS NOT PRESENT AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT_____

☒ CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION

☐ IS TO BE EXITED FROM SPECIAL EDUCATION

98

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

2 of 5

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MDT REFERRAL DATE _____  MEETING TYPE: IEP/Placement

STUDENT S___ J___  SCHOOL Stanton Elementary School  DATE 9-4-07

Mrs. Bomillion (Special Educator)
- has worked with J_____ for 3 years
- hasn't had many difficulties with J_____ in the classroom has a good rapart with the mother.
- has trouble following school rules, disrespectful towards staff members and teachers
- Recommends that J_____ continue to receive instruction in special education in reading and written expression
- Mrs. Bomillion reports that Math is a Strength for J_____

Mrs. Doxey
- presented social emotional goals to the team
- the goals shared are from J_____ last IEP dated 3-26-07.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE _____          MULTIDISCIPLINARY TEAM (MDT)          **3** of **5**
                                       CONTINUATION MEETING NOTES
                                       MEETING TYPE: _IEP / Placemnt_

STUDENT _Simms, J_     SCHOOL _Stanton Elementary School_   DATE _9-4-07_

---

## Ms. Ekekwe (Advocate)

- feels J_____ still needs math goals. Although math is a strength the student could benefit from having math goals.

- reports that J_____ is in need of updated educational and psychological evaluation as recommended by the previous school ~~psychologist~~ psychologist

- based on the report of Ms. Ekekwe the settle agreement states J_____ is to receive independent evaluations.

The school psychologist is in agreement that J_____ is in need of educational testing. (Woodcock Johnson). Stanton takes the position that the academic testing can be administered at the neighborhood school.

The advocate and parent disagree with this testing being provided by the local school.

The MDT is in agreement that J_____ is in need of more hours in specialized instruction. As a result his hours in specialized instruction will be increased from 10 hours to 120 hours.

100

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: IEP / Placement

4 of 5

MDT REFERRAL DATE _____

STUDENT S_____, J   SCHOOL Stanton Elementary School   DATE 9/4/07

Ms. Simmons is in agreement with the recommendations of her advocate as noted on previous pages.

By increasing the numbers of hours in specialized instruction Joseph setting will be changed from a combination setting to an out of general education setting.

Location of Services

• Advocate reports that Joseph has been accepted at Sunrise Academy. Located at 6th St. N.W. This setting is a change setting.
• Sunrise is an all day Academy for males.
• Because of Joseph emotional and behavioral issues the advocate reports that Sunrise will appropriately address students current educational and emotional needs.

• DCPS proposes that we can appropriately address students current educational and emotional needs at M.C. Terrell. M.C. Terrell provides a small structured environment that can also provide the educational needs of the Student.

The parent and advocate are in disagreement with the proposed location of services. Ms. Simmons expresses that Joseph would not be successful at M.C. Terrell because of the interaction he would experience with family members that are in the

101

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE _____       MULTIDISCIPLINARY TEAM (MDT)
                                  CONTINUATION MEETING NOTES          S of S
                                  MEETING TYPE: IEP/Placement

STUDENT S_____, J    SCHOOL Stanton Elementary School    DATE 9/4/07

same program at M.C. Terrell, J____ currently has
relatives attending M.C. Terrell. This would lead
to him not being able to experience success as presented
by the parent and advocate. However DCPS continues
to propose M.C. Terrell as an appropriate placement
for J____ at this time. The advocate ____ requested
that an attempt was made to contact Sunrise Academy
via phone to verify that student was accepted and to
discuss their program.

DCPS has issued a prior action notice that
the location of services will be implemented
at the M.C. Terrell center.

102

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**SPECIAL EDUCATION**

MULTIDISCIPLINARY TEAM (MDT)

**Prior to Action Notice**

Check Purpose:
- [ ] Initial Evaluation
- [ ] Initial Placement
- [ ] Reevaluation
  - [ ] Change in Category Exit
  - [ ] Related Service Add
  - [ ] Related Service
  - [x] Change in Placement
  - [ ] Annual
  - [ ] Other _____

Date  9-4-07

Student  _____ S_____    DOB ___ 98

School _____

Current Disability Category  Other Health Impairment (OHI)

Setting  Out of general education

Dear  Ms. Simmons / Ms. Ekekwe

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.

Therefore, you are being notified of the following proposed changes:

- [x] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Other

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)

- [ ] Your child is not eligible for special education service(s).
- [ ] Your child is eligible or continues to be eligible to receive special education services as a student with  OHI
- [ ] Your child will begin receiving  psychological services  as a related service(s).
- [ ] Your child will no longer receive _____ as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed.
  - from  combination setting  to  out of general education serv
- [ ] Your child is no longer eligible and will be exited from the special education program.
- [ ] Other:

Location of Services  M.C. Terrell Center

**Description and Explanation of agency action proposed or refused.**

The MDT has determined that an out of general education setting will appropriately address student's current educational needs.

**Description of Other Options Considered and reasons for rejection of each action**

The MDT has determined that a combination setting will not appropriately address students current educational needs.

Other relevant factors to the decision _____

MDT Members:
- [x] Principal or Designee
- [ ] Parent
- [ ] Student
- [x] Social Worker
- [ ] General Education Teacher
- [x] Special Education Teacher
- [ ] Speech and Language
- [ ] *LEA & Interpreter (*may be one)
- [x] Psychologist
- [ ] Other: _____

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent: Ms. I. Ekekwe

Any questions you may have concerning your child's program may be directed to the principal.

You are protected under the Procedural Safeguards for parents, which are enclosed for your information.

If I can be of assistance to you, or have questions regarding the Procedural Safeguards, please contact  Mitchell Bronson  at (202) 44-585 (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior to Action Notice
07-02-2001

103

**DISTRICT OF COLUMBIA PUBLIC SCHOOL**
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM
(MDT)
Meeting Notice

MDT Referral Date: _____          Date **10/1/07**

Letter of Invitation          Re: ~~S_____, J_____~~

Dear **Ms. Simmons / O. Ekekwe**

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Other invited participants are listed under MDT members.

Place/Location:

**M.C. Terrell Elementary School**
**3301 Wheeler Road, S.E.**
**Washington, D.C. 20032**

| Please check one date for confirmation: | | |
|---|---|---|
| ☐ Date: **10/3/07** | Time: **10 AM** | ; or |
| ☐ Date: **10/3/07** | Time: **2 PM** | ; or |
| ☐ Date: **10/4/07** | Time: **10 AM** | |

If a suggested meeting time is inconvenient, please call the counselor and/or special education coordinator for a mutual time to address the concerns. Participation by teleconference may be requested if other arrangements prove to be unsuccessful.

**\*The purpose of this meeting is to:**

☒ \*\*develop/review IEP (including consideration of extended school year (ESY) services          ☐ \*\*discuss CompEd
☐ \*\*review evaluation or reevaluation information          ☒ discuss placement          ☐ \*consider transition services needs
☐ develop the student evaluation plan (SEP)          ☐ determine manifestation          ☐ discuss quarterly review
☐ discuss documented levels of service          ☐ discuss eligibility          ☐ behavior plan review
☐ \*\*review records to support the completion of services as follows:

☐ Graduated          ☐ Completed Services          ☐ Aged Out          ☐ Transferred Out of District          ☐ Dropped Out
☒ Other: **Resolution Meeting**

**\*\*Placement will be discussed.**

MDT Members:
☒ Principal or Designee          ☐ General Education Teacher          ☒ Psychologist
☒ Parent          ☒ Special Education Teacher          ☒ Other: **Educational Advocate**
☒ LEA Representative          ☐ Speech and Language
☐ Student          ☐ Social Worker

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents is enclosed for your information. If the school can be of assistance to you, please contact
**Iris D. Phillips-Pulliam** at **(202) 645-3740** (school telephone number).

If the purpose of the meeting includes consideration of a transition plan, your child is invited to attend and a representative of the following agency(ies) may be invited, if appropriate _____ • _____

See attachments, when appropriate, for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

\*After the third attempt to contact the parent, the meeting will be held without further notice.

Please sign below and return this page to the school.

Parent/Guardian/Surrogate Signature _____          Date: _____

I acknowledge receipt of the Procedural Safeguards for parents (due process procedures).          ☐ Yes          ☐ No

District of Columbia Public Schools          07-02-2001          Division of Special Education          MDT Letter of Invitation to the Parent - Page 1 of 3

104

# M. C. TERRELL ELEMENTARY SCHOOL
## MCT CENTER

---

### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: *O. Eketwe* | FROM: Iris D. Phillips-Pulliam, LICSW<br>Special Education Coordinator |
| COMPANY: *1-800-524-2370* | DATE: *10/1/07* |
| FAX NUMBER: *2) 783-1751* | TOTAL NO. OF PAGES INCLUDING COVER: *2* |
| PHONE NUMBER: *2) 584-5450* | TELEPHONE NUMBER: 202 645-3740 |
| RE: *J.S.* ████ | FAX NUMBER: 202 645-7322 |

☑ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☑ PLEASE REPLY   ☐ PLEASE RECYCLE

---

NOTES/COMMENTS:

105

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

## I. IDENTIFICATION INFORMATION

DCPS - IEP Page 1 of 4

Additional Comments: ☐

### II. CURRENT INFORMATION

Date of IEP Meeting: Sept 4, 2007

Date of Last IEP Meeting: 3-26-07

Date of Most Recent Eligibility Decision: 3-26-07

Student Name: Last Simmons  First Jeanette  MI

Student ID 9091283  Soc. Sec. No.  Age:  Grade 4

Gender ☒ M ☐ F  Date of Birth 98  Ethnic Group African-American

Address 2734 Langston Place, SE #101
Washington, DC 20020

☐ Non-attending

Attending School Stanton ES  Home School Stanton ES

☒ Elem. ☐ Incl/MS ☐ SHS ☐ CWS1

Parent Eloise Simmons

Address (if different from student): ☐ Parent ☐ Guardian ☐ Surrogate
2734 Langston Place, SE #101

Telephone: Home (202) 678-5913  Work  NA

Purpose of IEP Conference:
☐ Initial IEP  ☒ Review of IEP
☐ Requested Eval.  ☐ 3yr ReEval

Indicate Level of Standardized Assessment: II

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

☒ BEHAVIOR  ☒ TRANSPORTATION
☐ ESY  ☐ TRANSITION

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | NA |
| Parent | English | English | NA | English |
| Home | English | English | NA | NA |

To be completed by Office of Bilingual Education English and Math Proficiency Assessment
Oral:
Rdg/Writing:
Instrument:
Date:

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING Gen Ed / Sp Ed / Total | FREQUENCY Hrs / Mins | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # mths /mos |
|---|---|---|---|---|---|
| Specialized Instruction | 26 / 26 | Hr. | W | Spec. Ed. Teacher | 9-5-07 | 10 | mos |
| Psychological Services Counseling - 1:1 | 1.5 / 1.5 | Hr. | W | Social Worker/ Psychologist | 9-5-07 | 10 | mos |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| TOTAL | 27.5 / 27.5 | Hours Per Week | | | |

### V. Disability(ies)

OHI

☐ Check if setting is general Ed.

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☐ 21-60%  ☒ 61-100%

Percent of time NOT in a Regular Education Setting

### VI. IEP TEAM (Participants in the development of the IEP)  Print and sign your name below.

Eloise Simmons Mother
Oleksana Etekwe
Sharon K. Bays (comakor)
Mabel Bello
Annette Davis

E.S. I Disagree with DCPS

I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature  Date

District of Columbia Public Schools  07-02-2001  Division of Special Education  Appendix - A  IEP Page 1 of 4

Felder

| Student Name: Jenish Simmons | Managing School: Stanton ES | DCPS - IEP Page 2 of 4 |
|---|---|---|
| Student ID Number: 9091283    DOB: -98 | Attending School: Stanton ES | |

| VII. Present Educational Performance Levels in Areas Affected by the Disability | Additional Comments: ☐ |
|---|---|

**Academic Areas: (Evaluator)** S. Beverly - Gamillian, Special Ed, Tchr

Math Strengths:
~~Jenish~~ can add and subtract whole numbers with and without regrouping.

Impact of disability on educational performance in general education curriculum:

Reading Strengths:
Can identify consonant and vowel sounds. Can identify sight words.

Impact of disability on educational performance in general education curriculum:
Deficits in basic reading skills impact on Jenish's ability to develop skills on his grade level

**Score(s) When Available**
Math Cal. 2.5  GE
Math Rea. _____
See goal page: _____
Date: 9-11-06
Rdg. Com 1.8  GE
Rdg. Basic 2.1  GE
Written Ex. 1.0 GE
See goal page: 1, 2
Date: 9-11-06

**Communication (Speech & Language) (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
Exp. Lang. _____
Rec. Lang. _____
Artic _____
Voice _____
Fluency _____
Exp. Voc. _____
Rec. Voc. _____
See goal page: _____
Date: _____

**Motor/Health (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) /Results When Available**
_____
_____
See goal page: _____
Date: _____

**Social Emotional Behavioral Areas: (Evaluator)** Tara M. Benn, M.Ed. (Reviewer)
Strengths:
His ability to ask for assistance and identify staff with whom ~~he feels comfortable are skills~~

Impact of disability on educational performance in general education curriculum:
Difficulty following directions, noncompliance and leaving class w/out permission.

**Score(s) When Available**
_____
_____
See goal page: _____
Date: _____

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
_____
_____
See goal page: _____
Date: _____

**Prevocational Skills: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
_____
_____
See goal page: _____
Date: _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 2 of 4

107

| Student Name | [redacted] | Managing School | Stanton ES | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9091283 | DOB | [redacted] - 98 | Attending School | Stanton ES | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: [ ] |
|---|---|---|

Area addressed by goal: **Academics: Reading**

**ANNUAL GOAL :** (including mastery criteria)

J[redacted] will demonstrate 6 months to 1 year's growth in his reading skills by demonstrating 80% mastery of the following short-term objectives

Provider(s): **Special Education Teacher**

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1. Given daily practice and instruction, J[redacted] will be able to identify the purpose and restate important facts from a text heard or read with 80% accuracy. | | Monthly |
| 2. Given daily teacher instruction, J[redacted] will be able to identify the meaning of a favorite poem or story with 80% accuracy. | | Monthly |
| 3. Given daily instruction and practice, J[redacted] will be able to decode phonetically regular multi-syllabic real and non-sense words fluently using letter-sound knowledge with 80% accuracy. | | Monthly |
| 4. Given daily instruction in reading, J[redacted] will be able to distinguish cause from effect with 80% accuracy | | Monthly |
| 5. Given daily instruction and classwork, J[redacted] will be able to identify the facts from a selection heard or read with 80% accuracy. | | Monthly |
| 6. Given daily instruction and practice, J[redacted] will be able to identify personality traits of characters from a reading selection with 80% accuracy. | | Monthly |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

| Student Name | J_____ S_____ | Managing School | Stanton ES | DCPS - IEP |
| Student ID Number | 9091283 | DOB | ___ 98 | Attending School | Stanton ES | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: 2 |

Area addressed by goal: __Academics: Written Expression__

**ANNUAL GOAL : (including mastery criteria.)**

J____ will demonstrate 6 month to 1 year's growth in his written expression skills by demonstrating 80% mastery of the following short-term objectives

Provider(s): Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1. Given daily instruction in written expression, J____ will be able to write legibly in cursive, leaving spaces between words in a sentence with 80% accuracy. | | Monthly |
| 2. Given instruction on letter writing, J____ will be able to write a friendly letter complete with date, salutation, body closing and signature with 80% accuracy. | | Monthly |
| 3. Given daily instruction and practice in writing J____ will be able to identify and use correct punctuation including end marks, commas for series, and punctuation for dates, city and state with 80% accuracy | | Monthly |
| 4. Given appropriate classroom instruction and practice, J____ will be able to write distinguish between complete and incomplete sentences and recognize and use correct word order in written sentences with 80% accuracy. | | Monthly |
| 5. Given instructions to write on a familiar topic (eg. personal experience, event), J____ will be able to write 3 to 5 related sentences describing the topic with correct grammar and punctuation with 80% accuracy | | Monthly |
| 6. Given a list of weekly spelling words, J____ will be able to spell the words, define the words and use the words appropriately in sentences with 80% accuracy. | | |

| EVALUATION PROCEDURE(S) | | | | | | |
|---|---|---|---|---|---|---|
| Portfolio | Log | Chart | Test | Documented Observation | Report | Other _____ |

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

| Student Name | | Managing School | Stanton ES | | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 909 1283  008  98 | Attending School | Stanton ES | | Page 3 of 4 |

| VII. SPECIALIZED SERVICES | Additional Comments: ☐ | | Goal Number: 3 |
|---|---|---|---|

**Area addressed by goal:** _Academic - Mathematics_

**ANNUAL GOAL: (including mastery criteria.)**

J____ will demonstrate 6 months to 1 year's growth in his mathematics skills by demonstrating 80% mastery of the following short-term objectives.

**Provider(s):** _Special Education Teacher_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Measured | Evaluation Schedule |
|---|---|---|
| 1. Given daily practice and instruction, J____ will be able to multiply 2-digit and 3-digit numbers with 80% accuracy | | Monthly |
| 2. Given daily teacher instruction and practice, J____ will be able to solve word problems requiring addition, subtraction, multiplication and division with 80% accuracy | | Monthly |
| 3. Given teacher instruction and modeling J____ will be able to solve problems involving division of 2 and 3-digit numbers with 80% accuracy | | Monthly |
| 4. Given teacher instruction and practice J____ will be able to identify the place value of each digit in 3-4 digit numbers with 80% accuracy | | Monthly |
| 5. Given daily teacher instruction, modeling and practice J____ will be able to add and subtraction like fraction with 80% accuracy | | Monthly |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☑ Portfolio ☐ Log ☐ Chart ☑ Test ☐ Documented Observation ☑ Report ☐ Other _____

District of Columbia Public Schools      07-02-2001      Division of Special Education      Appendix - A      IEP Page 3 of 4

110

| Student Name | _____ | Managing School | Stanton E S | DCPS - IEP |
| Student ID Number | 9091283 | DOB | ___-98 | Attending School | Stanton E.S. | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: ☐ |

Area addressed by goal: _Social - Emotional_

**ANNUAL GOAL** (including mastery criteria.)

_J_____ will improve his social emotional development through increasing attending skills and remaining on task. 80% of the time_

Provider(s): _____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| J_____ will display on task behavior with cues 4 out of 5 trials | | |
| J_____ will identify triggers that causes him anger towards others 4 out of 5 times | | |
| J_____ will display on task behavior with cues 4 out of 5 trials | | |
| J_____ will be able to complete 80% of assigned task in 4 out of 5 trials | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

| | | | |
|---|---|---|---|
| Student Name | [redacted] | Managing School | Stanton |
| Student ID Number | 9091283 | DOB [redacted]98 | Attending School: Stanton |

DCPS - IEP
Page 4 of 4

Additional Comments: ☐

**IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION**
**SERVICE ALTERNATIVES**

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in general education? ☐ Yes ☒ No

Explanation for removal out of regular education classroom.

Student requires a full-time (out of general education) setting to address his academic and social-emotional needs

**X. Supplementary Aids and Services**
**Classroom Needs**

| (Do not name products or companies.) | SETTING Gen Ed | SETTING Spl Ed | Total | FREQUENCY Hr./Min | FREQUENCY D/W/M | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None needed

Timing/Scheduling: Extended time
Setting: Preferential seating
Presentation: Repeated review/drill, concise directions
Response:
Equipment:

**XI. STATE AND DISTRICT ASSESSMENTS:**

☐ Level I Tested with non-disabled peers under standard conditions without accommodations.
☐ Level II (Describe accommodations for level II) Tested under standard conditions with special accommodations.
☒ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations
☐ Level IV (Describe the alternative assessment)
☐ Level V Portfolio:

**XII. Areas Requiring Specialized Instruction and Related Services:**

☒ Reading
☒ Mathematics
☒ Written Expression
☐ Other:
☐ None
☐ Physical/Sensory
☒ Social Emotional
☐ Physical Development
☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

Modifications:
☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

**XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| In general education | Rejected | Continued school failure |
| Combination Setting | Rejected | Time away from non-disabled peers |
| Out of general education | Accepted | Impact on student's self-esteem. |

Modification(s)/Accommodation(s) to address the harmful effects:

Full-time placement out of general education setting to address his deficits in academics and social emotional skills.

District of Columbia Public Schools
Washington, D.C.

**INTERVENTION BEHAVIOR PLAN**

I.E.P. Attachment A
Intervention Behavior Plan

Date Developed: _____

Student Name: ~~_____~~ ID#: _____ DOB: __/__/__ Grade 3

Address: _____

Telephone (H) _____ (W) _____ Counselor: _Lucille Hill-Blight_

Attending School: _Stanton Elementary_ Teacher: _M Hubbard_ Room: ___ Section: ___

**TARGETED BEHAVIOR(S):** Additional Comments: ☐

- Does not follow directions and rules; walks away from class & supervised areas
- Fights with peers & uses profanity towards adults and peers
-

**POSITIVE INTERVENTION STRATEGIES: Student Objective -**

- The student will be able to remain in supervised areas at all times
- The student will able to identify acceptable ways to communicate
- The student will be able to demonstrate techniques to maintain self control

**Implementation description -**

- Student will show respect for adults and peers
- Student will earn points towards free computer time
- Student and teacher will create a daily check list to monitor behavior. A copy will be sent home.

**POSITIVE INTERVENTION STRATEGIES: Teacher Strategies**

- employ token economy system
- model socially acceptable behavior for student
- Set boundaries and behavioral expectations for student
- One-on-one counseling

**MONITORING SYSTEM: Responsible Teacher** _____

**Describe System -**

Daily Log
Child will receive/lose incentives based on behavior

**Data collection timeline -**

Daily, Weekly, Monthly, Quarterly Assessment

**FOLLOW-UP MEETING:** Date - _____

113

DRAFT

## DOCUMENTED LEVEL OF SERVICE
Consider and attach to MDT/IEP meeting notes

School Stephen & Lean  Principal Mr. Norman Banks  Special Education Coordinator Mitchell Burns
Date 9-5-07  Case Manager  Assistant Director
Student Joseph Simmons  DOB 7-98  Age  Grade 4  ID# 9091273  SSN#
Parent Elaine Simmons  Telephone (H)  (W)
Address 2214 Langston Place  SE, #101  Washington  DC 20020
Street Apt #  City  State  Zip Code

REFERRAL SOURCE: (Check) ☐ 120 Day ☐ Reeval. ☐ 30 Day ☐ IA ☐ MA ☑ Annual
☐ Nonpublic ☐ Residential ☐ Citywide ☐ Court ☑ Local School ☐ Other:
Previous least restrictive environment (LRE Setting) Combination of general education, special education and related service providers

### JUSTIFICATION FOR SETTING CONSIDERATION
(Submit TAT/MDT Documentation)
SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | | |
|---|---|---|---|---|
| • extended time | Current IEP | Yes ☑ | No ☐ | |
| • preferential seating | Signatures of required participants (MDT notes) | Yes ☑ | | |
| • repeated review/drill | Intervention Behavior Plan | Yes ☑ | | |
| • concise directions | Copies of current class work and homework assignments: | Yes ☐ | | |
| | Medical Reports: | Yes ☐ | No ☐ | |
| | Clinical Reports: | Yes ☐ | No ☐ | |
| | Psychiatric Reports: | Yes ☐ | No ☐ | |
| | Medications: | Yes ☐ | No ☐ | |
| | Attendance Record | Yes ☐ | | |
| | Copies of most recent evaluation(s) | Yes ☑ | | |
| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation | | | |

### 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented needs) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general educators with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☐ combination general educator and resource classroom | ☐ combination of general educators, special educators and related service providers | ☐ between 21% and 80% of service time |
| 3 | ☑ out of general education classroom | ☑ special educators and related service providers | ☑ between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular services and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in these services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings)

### Check the level of need as indicated:
DIRECTIONS:

| If two or three boxes are checked in the Row 1, check LOW. | If one box is checked in each row, |
| If two or three boxes are checked in the Row 2, check MODERATE. | check either MODERATE or HIGH. |
| If two or three boxes are checked in the Row 3, check HIGH. | depending on the need of the student. |

### 7. LEVEL OF NEED
☐ LOW ☐ MODERATE ☑ HIGH

07-02-2001  Attention: Technical Support Supervisor, Compliance Team

114

```
****************************
***   ERROR TX REPORT   ***
****************************


TX FUNCTION WAS NOT COMPLETED


TX/RX NO              0414
RECIPIENT ADDRESS     912027831751
DESTINATION ID
ST. TIME              11/14 06:02
TIME USE              00'00
PAGES SENT            0
RESULT                NG        #0018 BUSY/NO SIGNAL
```



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of the Chancellor**
Office of the General Counsel
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000      Fax: 202-442-5098
www.k12.dc.us

November 14, 2007


Olekanma Ekekwe
1001 Pennsylvania Ave. NW Suite 600
Washington DC 20004

## DISCLOSURE STATEMENT

## VIA FACSIMILE


**Subject: Due Process Hearing for J███ S█████, DOB ██98**

Dear Ms. Ekekwe,

At the upcoming due process hearing in the above-referenced matter, and pursuant to the
Individuals with Disabilities Education Improvement Act (IDEIA) of 2004, in addition to any
documents and witnesses disclosed by the parent, DCPS may rely upon the witnesses and
documents previously disclosed in this matter, and any of the following witnesses/documents[1]:

### Witnesses

1. Iris Pulliam, Special Education Coordinator, or designee 3301 Wheeler Rd. SE
   Washington DC 20032

### Documents

1. 9/4/07 Prior Notice
2. 9/4/07 MDT Notes
3. 10/1/07 Letter of Invitation/Confirmation
4. 9/4/07 IEP

115

```
                    ***********************
                    ***   TX REPORT   ***
                    ***********************


         TRANSMISSION OK

         TX/RX NO              0432
         RECIPIENT ADDRESS     918005242370
         DESTINATION ID
         ST. TIME             11/14 21:57
         TIME USE             07'29
         PAGES SENT            20
         RESULT               OK
```



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of the Chancellor**
Office of the General Counsel
825 North Capitol Street, N.E., 9ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-5000       Fax: 202-442-5098
www.k12.dc.us

November 14, 2007

Olekanma Ekekwe
1001 Pennsylvania Ave. NW Suite 600
Washington DC 20004

**DISCLOSURE STATEMENT**

**VIA FACSIMILE**

**Subject: Due Process Hearing for J████ S██████ DOB ███/98**

Dear Ms. Ekekwe,

At the upcoming due process hearing in the above-referenced matter, and pursuant to the
Individuals with Disabilities Education Improvement Act (IDEIA) of 2004, in addition to any
documents and witnesses disclosed by the parent, DCPS may rely upon the witnesses and
documents previously disclosed in this matter, and any of the following witnesses/documents[1]:

<div align="center">Witnesses</div>

1.  Iris Pulliam, Special Education Coordinator, or designee 3301 Wheeler Rd. SE
    Washington DC 20032

<div align="center">Documents</div>

1.  9/4/07 Prior Notice
2.  9/4/07 MDT Notes
3.  10/1/07 Letter of Invitation/Confirmation

116



# OSSE
### DC Office of the State Superintendent of Education

## Office of Compliance & Review
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
1150 5th Street, S. E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825

### HEARING NOTICE

---

MEMORANDUM VIA: [ √ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

---

TO:  Parent (or Representative): **O. Ekekwe**          Fax No.:  **(800)  524-2370**

LEA Legal Counsel:   **OGC**                      **(202)  442-5098**

RE:   S▓▓▓▓, J▓▓▓          and (LEA)  DOB: ▓▓▓/98
Student's Name

FROM:   SHARON NEWSOME
Special Education Student Hearing Office Coordinator

DATE SENT:     **11/7/07**

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on 10/20/07. Please be advised that the hearing has been scheduled for:

DATE:     **11/21/07**

TIME:     **1:00 PM**

AT:   1150 5th Street, S. E. , Washington, D.C. 20003
1st Floor

ASSIGNED HEARING OFFICER: _____

[ ] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or at the above fax number. All decisions regarding continuances are made *__exclusively__* by the Hearing Officer, and cannot be made by **SHO** administrative staff.  Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[√ ] THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates.  If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer.  If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you.  Disclosure of evidence and witnesses to the opposing party is required at least **__five business days__** prior to the hearing with copies to the Special Education Student Hearing Office.

117

TRANSMISSION VERIFICATION REPORT

```
TIME  : 11/07/2007 17:02
NAME  : STUDENT HEARING
FAX   : 2026983825
TEL   : 2026983819
SER.# : BROE6J471574
```

| | |
|---|---|
| DATE,TIME | 11/07  17:02 |
| FAX NO./NAME | 918005242370 |
| DURATION | 00:00:28 |
| PAGE(S) | 01 |
| RESULT | OK |
| MODE | STANDARD |



**OSSE**

DC Office of the
State Superintendent
of Education ▨▨▨

# Office of Compliance & Review
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE

1150 5th Street, S. E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825

### HEARING NOTICE

MEMORANDUM VIA: [ √ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): **O. Ekekwe**        Fax No.: **(800)  524-2370**

LEA Legal Counsel:    **OGC**            **(202)  442-5098**

RE:    S▬▬▬, J▬▬▬        and (LEA) DOB: ▬▬98
Student's Name

FROM:    SHARON NEWSOME
Special Education Student Hearing Office Coordinator

DATE SENT:    **11/7/07**

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

..ne Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on 10/20/07.
Please be advised that the hearing has been scheduled for:

DATE:    **11/21/07**

TIME:    **1:00 PM**

118

```
                    TRANSMISSION VERIFICATION REPORT

                                        TIME  : 11/07/2007 17:03
                                        NAME  : STUDENT HEARING
                                        FAX   : 2026983825
                                        TEL   : 2026983819
                                        SER.# : BROE6J471574


      DATE,TIME              11/07  17:03
      FAX NO./NAME           94425098
      DURATION               00:00:18
      PAGE(S)                01
      RESULT                 OK
      MODE                   STANDARD
                             ECM
```



## OSSE
### DC Office of the State Superintendent of Education

## Office of Compliance & Review
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
1150 5th Street, S.E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825

### HEARING NOTICE

MEMORANDUM VIA: [ √ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): O. Ekekwe          Fax No.: (800) 524-2370

       LEA Legal Counsel:   OGC                        (202) 442-5098

RE:    S▮▮▮▮▮, J▮▮▮▮▮                        and (LEA) DOB: ▮▮▮98
       Student's Name

FROM:  SHARON NEWSOME
       Special Education Student Hearing Office Coordinator

DATE SENT:    11/7/07

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on 10/20/07.
Please be advised that the hearing has been scheduled for:

       DATE:    11/21/07

       TIME:    1·00 PM

119

STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| Si_____, J.    Petitioner | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | |
| **PUBLIC** | ) | |
| **MC Terrell School** | | |
| | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

## SCHEDULING MEMORANDUM

1.  A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **<u>The Student Hearing Office does not schedule or participate in resolution meetings</u>**.

2.  The complaint notice was filed on **September 20, 2007**

3.  The deadline for the resolution meeting is   **October 5, 2007** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.  ***<u>Prior Written Notice Not Issued by the Local Educational Agency</u>***.  If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

1.  An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;

2.  A description of other options that the IEP Team considered and the reasons why those options were rejected;

3.  A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

4.    A description of the factors that is relevant to the agency's proposal or refusal.

B.    Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **September 30, 2007**.

C.    ***Deficiency Notice***.   A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice is **October 5, 2007**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

From Fax Service    Thu 20 Sep 2007 04:54:23 PM EDT    Page 2 of 5

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

9/21/07



*Does not meet standard for expedited hrg.*

*C. Ruff*

## EXPIDITED Due Process Complaint Notice

- This form is used to give notice of a complaint to the District of Columbia Public Schools, District of Columbia Public Charter School (DCPS or LEA) and/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a Free appropriate public education to that child. A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEA).

- The complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, D.C. 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. The Student Hearing Office does NOT schedule resolution meetings.

- Mediation is also available to all parties as an alternative to a resolution meeting of a Due Process Hearing.

A.    **INFORMATION ABOUT THE STUDENT:**

Student Name: J▒▒▒h S▒▒▒▒▒▒        Birth Date: ▒▒▒98

Address: 2734 Langston Place, S.E. Washington DC 20020

Home School: Stanton Elementary School

Present School of Attendance: MC Terrell School

1

Is this a charter school?  ___No___    (If yes, you must provide a copy of this notice to the charter school principal or director):

Parent/Guardian of the Student: Eloise Simmons

Address (if different from the student's above): Same

Phone/Contact Number: 202-742-6694    Fax Number (if applicable): 1-800-524-2370

**B.**    **Individual Making the Complaint/Request for Due Process Hearing:**

Name:    Olekanma Ekekwe on behalf of Eloise Simmons

Address:    1001 Pennsylvania NW Suite 600, Washington, DC 20004

Phone: (w)    202-742-6694    (fax)    1-800-524-2370    (e-mail)    academy@olekanmalaw.com

Relationship to Student:

| ☐ | Parent | ☐ | Legal Guardian | ☐ | Parent Surrogate |
| ☐ | Self/Student | ☐ | Local Education Agency (LEA) | ☐ | Parent Advocate |

**C.**    **Legal Representative:**

Name:    Law Offices of Olekanma A. Ekekwe, PC

Address:    1001 Pennsylvania NW Suite 600, Washington, DC 20004

Phone: (w)    202-742-6694    (fax)    1-800-524-2370    (e-mail)    academy@olekanmalaw.com

Will attorney / legal representative attend the resolution session?  ☐ Yes    ☐ No

**D.**    **Complaint Made Against (check all that apply):**

| ☐ X | DCPS school (name of school if different from page one) | |
| ☐ | Charter school (name of school if different from page one) | |
| ☐ | Non-public school or residential treatment facility (name) | |
| ☐ | Parent | |

**E.**    **Resolution Session Meeting Between Parent and LEA:**

I understand that it is my right to have a resolution meeting to receive this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: all Parties must agree to waive the resolution meeting to avoid having this meeting).

☐ X    I wish to waive the Resolution Session Meeting

**F.**    **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

2

123

☐   I am requesting mediation as an alternative to the resolution session meeting.

☐   I am requesting mediation _only_ at this time.

☒   I am requesting a due process hearing. (Suggested dates 9/30/07; 10/2/07; 10/8/07)

☐   I am requesting mediation only at this time.

C.    Facts and Reasons for the Complaint:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

1.   What is the nature of the problem, including the facts related to the problem that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

   Joseph S_____ is a 9 year-old, special education student currently attending the 4th grade at Stanton Elementary School in the District of Columbia. He was placed at MC Terrell because it his neighborhood school with full time special education program. Ms. Simmons informed that she did not believe that MC Terrell would provide appropriate services for her son. Ms. Simmons also wanted to visit the school before her son was sent to the school. Stanton informed that they were authorized to only present MC Terrell to the parent as a placement option. The following day, Ms. Simmons visited MC Terrell and found it to be an unstructured school without walls. Joseph went back to Stanton elementary, but he was told that he could not come to the school. Parent was sent a letter informing her not to allow Joseph to attend Stanton. Two days later bus services went into effect and Joseph began attending MC Terrell. Since attending MC Terrell, Joseph has twice been assaulted by a teacher. Police officer palmer took report on the latest incident of assault. Moreover parent has received numerous calls informing her that the school is not able to address Joseph behavioral needs.

   Parent had informed DCPS that she intends to place her son at Sunrise academy at public expense. Parent believes that Sunrise Academy has structure program and academic and related services that would meet Joseph need. DCPS has denied Joseph a Free Appropriate Public Education (FAPE) by failing provide appropriate placement for Joseph.

Based upon the above, Parent contends:

1.   DCPS denied Joseph a Free Appropriate Public Education (FAPE) as follows:

   a.   DCPS denied Joseph FAPE by failing to properly convene and conduct the IEP/placement meeting.

   b.   DCPS denied Joseph FAPE by failing to properly provide an appropriate placement.

2.   DCPS denied Joseph FAPE by failing to properly convene and conduct an MDR.

To the extent known to you at this time, how can this problem be resolved?

We are seeking:

1.   Declaratory relief for denial of FAPE, denial of due process and for discrimination based solely on client's disability by DCPS.

3

2.   A determination that DCPS denied J_____ FAPE by failing to properly provide an appropriate placement.

3.   A determination that DCPS shall fund J_____ placement at Sunrise Academy.

4.   A determination that the Hearing Officer award J_____ two (2) months of compensatory education.

II.  Estimated amount of time needed for the hearing:   __two hours_____

Note:  In the absence of a specified amount of time SHO schedules hearing in two hour blocks of time and will allocate two hours to conduct the hearing.  Please indicate if you believe more than two hours will be needed

I.   **Accommodations and Assistance Needed:**

Please list any special accommodations you may require for a Resolution Session Meeting / Mediation Conference / Due Process Hearing:  NONE

| | |
|---|---|
| ☐ Interpreter (please specify the type) | |
| ☐ Special Communication (please describe the type) | |
| ☐ Special Accommodation for Disability (please be specific) | |
| ☐ Other | |

J.   **Waiver of Procedural Safeguards:**

☐ I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

K.   **Signature and Affirmation:**

I affirm that the information provided on this form is true and correct.

_____
Signature of Parent or Guardian                    Date

L.   Signature of Attorney/Legal Representative:

_W J Stewart Esher_____    9/20/07_____

Legal Representative/Advocate                    Date

M.   Signature of LEA Representative (if hearing requested by LEA):

_____
Representative of LEA                    Date

Mail, fax or deliver this complaint notices to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
1150 5ᵗʰ Street, S.E, 1st Floor
Washington, DC 20003
Fax number 202/698-3825

4.

125

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 442-5693



# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Principal/Administrator**
**Special Education Coordinator**

Telephone Number: **(202) 645-3740**          Pages: **8**
        Fax Number: **(202) 645-7322**          Date: **September 20, 2007**

_____

**Please find attached a copy of a Scheduling Memorandum and a copy of the Due Process Complaint Notice regarding:**

Student: **J. Si**████████

School:  **MC Terrell School**

**The complaint Intake Unit is responsible for only providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office.  If you have questions about the attached Notice, regarding any fax errors or discrepancies, please contact the Complaint Intake Unit @ (202) 548-2590.**

                                        **Thank You,**
                                        **Pamela Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged.  The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUCLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney:Olekanma Ekekwe, Esq.**
**Parent: Eloise Simmons**

Telephone Number: **(202) 742-6694**
Fax Number: **(800) 524-2370**

Pages: **3**
Date: **September 20, 2007**

---

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: **J. S**████████
School:  **MC Terrell**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office.  If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 548-2590.  Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

**Thank You**
**Pamela Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally
privileged.  The information is intended only for use of the individual or entity named Above, if you are not the
intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in
reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please
immediately notify us by telephone For return of the original document to us.

127

OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION
STUDENT HEARING OFFICE

```
--------------------------x
J██████ S████████         :
                          :
              Petitioner, :
                          :
         v.               :
                          :
DISTRICT OF COLUMBIA      :
PUBLIC SCHOOLS,           :
                          :
              Defendant.  :
--------------------------x
```

Van Ness Elementary
1150 5th Street, S.E.
Washington, D.C. 20003

Wednesday, November 21, 2007

The HEARING in this matter began at 1:25 p.m.,
pursuant to notice.

BEFORE:

HERBERT ST. CLAIR
Hearing Officer

APPEARANCES:

    On behalf of Petitioner:

        LAURA GEORGE, ESQUIRE
        Attorney Advisor,
        D.C. Public Schools

    On behalf of Defendant:

        OLEKANMA EKEKWE
        Attorney Advocate


    Also present:

        HELOISE SIMMONS
        Mother of J████ S██████.

        DAVID JOHNSON
        Cousin of J████ S█████

        TAMEKA JOHNSON
        Cousin of J████ S██████

                \*   \*   \*   \*   \*

C O N T E N T S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Eloise Simmons | 36 | 51 | | |
| Makini Niliwaambieni | 68 | 71 | | |
| Iris Pulliam | 75 | 79 | 93 | 88 |
| Felicia Norman | 100 | | | |

\*   \*   \*   \*   \*

## P R O C E E D I N G S

(1:25 p.m.)

MR. ST. CLAIR:  Good afternoon.  This is the matter of J█████ S█████ who was born on ███████, 1998. This confidential administrative hearing concerns the special education services being provided to J█████ by the District of Columbia Public Schools.  Today is Wednesday, November 21, 2007.  It's about 20-25 minutes after 1:00 in the afternoon.  This hearing is authorized by Public Law 108-446, the Individuals with Disabilities Education Improvement Act of 2004.

This hearing is conducted under the auspices of the District of Columbia Public Schools, hereinafter referred to as "DCPS."  We are in hearing room 7A.  This hearing is confidential and will be closed to the public unless you, Ms. Simmons, expressly state that it should be an open hearing, a public hearing.  This hearing is being recorded and either party may request a copy of the recording or a transcript by making a written request for both or either to the Student Hearing Office, DCPS.  My name is Herbert St. Clair, I'm the hearing officer.  I'm going to ask everyone here to please state her name.  Let's begin with the attorney advisor.

MS. GEORGE:  Good afternoon.  Laura George for D.C. Public Schools.

MS. EKEKWE:  Olekanma Ekekwe, attorney advocate for Ms. Simmons and J████ S██████.

MS. SIMMONS:  Heloise Simmons, J████ S██████' mother.

MS. EKEKWE:  Say your name.

MR. JOHNSON:  David Johnson, J████ S██████ cousin.

MS. JOHNSON:  Tameka Johnson, J███████ cousin.

MR. ST. CLAIR:  All right.  Ms. Simmons, I'm going to ask you to dedicate that microphone to yourself.

MS. SIMMONS:  Okay.

MR. ST. CLAIR:  All right.  Now, Ms. Ekekwe, does Ms. Simmons waive the review of her right?

MS. EKEKWE:  Yes, she waives the reading, yes.

MR. ST. CLAIR:  All right.  Now, I have a disclosure from Ms. Simmons dated November 13th, and one from the District of Columbia Public Schools dated November 14th.  Those disclosures are -- or those disclosures are in the record unless I hear an objection.  All right.  The disclosure's into the record.  Any preliminary matters, counsel?

MS. EKEKWE:  Not that I know of.

MS. GEORGE:  I have a motion to dismiss for failure to attend a resolution session.

MR. ST. CLAIR:  Now, where is the proof that your client timely tried to convene one?

MS. GEORGE:  Okay.  Well, the complaint was filed on September 20th, and that's -- if you want that, that's in the Petitioner's disclosure.

MR. ST. CLAIR:  Uh-huh.

MS. GEORGE:  So that's -- and our -- DCPS' disclosure number 3 has a letter of invitation which is dated October 1st.

MR. ST. CLAIR:  Is that the -- how many days does the --

MS. GEORGE:  September has 30 days.  So from September 20th to October 1st is 10 days.

MR. ST. CLAIR:  Oh, wait a minute now, this came up before I think, didn't it Ms. George?  And believe it or not --

(Tape interruption)

MR. ST. CLAIR:  -- the consent decree this time.

MS. GEORGE:  Okay.

MR. ST. CLAIR:  And I think it's -- here it is, let me see.  Resolution sessions, B, under IV, page 19.  Do you have your copy of the consent decree, Ms. Ekekwe?

MS. EKEKWE:  I didn't bring my consent --

MR. ST. CLAIR:  You didn't bring your copy.  Did you bring your copy, Ms. George?

MS. GEORGE:  I did not.  I --

MS. EKEKWE:  Mr. Hearing Officer, could I just talk to a potential witness to ask her to wait, she's calling in on my cell?

MR. ST. CLAIR:  You want to declare a brief recess --

MS. EKEKWE:  Yeah, just a second to ask her to wait.

MR. ST. CLAIR:  Okay.

MS. EKEKWE:  Okay.

(Recess)

MR. ST. CLAIR:  All right.  We're back on the record now.  Okay.  The complaint was filed when?

MS. GEORGE:  September 20th.

MR. ST. CLAIR:  When was your first time to schedule the resolution session?

MS. GEORGE:  The first letter that was sent?

MR. ST. CLAIR:  When did you first try to --

MS. GEORGE:  Okay --

MR. ST. CLAIR:  -- schedule the resolution session?

MS. GEORGE:  We sent a letter of invitation on October 1st.

MR. ST. CLAIR:  And how many days is that?

MS. GEORGE:  That's 10 days.  If you start counting the day after as one day, the complaint was filed about --

MR. ST. CLAIR:  To whom did you send the letter of invitation?

MS. GEORGE:  It's sent to Ms. Simmons/Ms. Ekekwe and there's a fax transmittal to Ms. Ekekwe and her fax number is here.  It's the --

MR. ST. CLAIR:  Did you schedule the resolution session within the statutory mandated 15 school days?

MS. GEORGE:  The dates offered were --

MR. ST. CLAIR:  No, no, when did you schedule it?

MS. GEORGE:  Well, we didn't -- typically they sent three proposed dates and times.

MR. ST. CLAIR:  The law requires the LEA to schedule it within 15 days regardless of what the parent says.

MS. GEORGE:  Okay.  Well, in this --

MR. ST. CLAIR:  Here's what I'm going to do --

MS. GEORGE:  -- in this letter of invitation, we gave three dates and those were all within the 15 days.

MR. ST. CLAIR:  All right.

MS. GEORGE:  And we didn't hear any response.

MR. ST. CLAIR:  Fine.

MS. GEORGE:  Okay.

MR. ST. CLAIR:  But you have to schedule it.

MS. GEORGE:  After not hearing anything you schedule it?

MR. ST. CLAIR:  That's correct, you have to schedule it.  And what I'm going to do --

MS. GEORGE:  Okay.

MR. ST. CLAIR:  Ms. Ekekwe, what -- did you get the notice?

MS. EKEKWE:  No, I did not.

MR. ST. CLAIR:  Fax confirmation is unreliable?

MS. EKEKWE:  I can't say that fax confirmation is unreliable, but I did not get the notice.

MR. ST. CLAIR:  Well, how can you say both?  How can you say the fax confirmation is reliable and you didn't get it?

MS. EKEKWE:  Mr. Hearing Officer --

MR. ST. CLAIR:  Fine, I don't want to go through it.  Let me read this, you don't -- all right, the -- I'm reading from page 19.  This is the consent decree. Paragraph 33.  "The resolution session for a parent's

administrative dues process complaint, hereinafter called
due process complaint shall be governed by 20 U.S.C. 1415
and is implementing regulations.

In so far as district rules, regulations and
rules and policies and procedures are consistent with the
federal law in this consent decree, they will also govern
resolution sessions.  The Defendant shall conduct
resolution sessions in a way that is consistent with the
objectives of IDEA 4 -- 2004.  The Defendants shall use
good faith to reach mutually acceptable settlement
consistent with IDEA and its implementing regulations."

"The resolution session is not to be used simply
as a means to delay dues process hearing.  Thirty-four.
"The Defendants will exercise due diligence in scheduling
resolution sessions when the parent is represented by
counsel.  Defendants will make good efforts to contact
parents' counsel to arrange a resolution session at a time
when the parent and parents' counsel can attend if the
parents' counsel plans to attend."

"Nothing in this paragraph shall exempt a parent
from being required to attend and participate in a
resolution session.  Defendants have exercised due
diligence when they -- when the following steps are taken.
A, within 3 days of a parent filing a due process

complaint, the Defendants telephone the office of parents'
counsel to schedule a resolution session unless the
parents' counsel agrees to allow the Defendants to -- to
contact the parent directly."

For a shortfall, right?

MS. GEORGE:  Well, we can ask our SEC if she made
the phone call.

MR. ST. CLAIR:  All right.  Fine with me.  If the
parent -- parents' counsel is not available on -- upon
initiation of the phone contact, a message shall be left
for the counsel with respect to the Defendant's attempt to
schedule a resolution session identifying the individual to
whom counsel should respond.  If the parent is not
represented, the Defendants will attempt to make telephone
contact directly with the parent within 3 days of the
parent filing a due process complaint.  And in the event
the parent is unavailable, shall leave a message, if
feasible, with respect to the school's attempt to schedule
a RS, resolution session, identifying the individuals to
whom the parent should respond.

The Defendant's failure to initiate contact
within the first 3 days does not absolve a parent from
participating in an RS when the RS is scheduled within the
statutory 15 days and the parent and parents' counsel have

received at least 4 full calendar days' notice of the scheduled RS meeting.

MS. GEORGE:  All right.  Well, I would argue that we scheduled it at these three times and asked them to choose one and there were 5 days left.  This was within 10 days, that was 5 days before the 15 days were up.  I guess, the only remaining elements --

MR. ST. CLAIR:  Let me see that.

MS. GEORGE:  -- that's number 3.

MR. ST. CLAIR:  All right.  Let me see if I can find another shortfall.  All right.  Okay, you did say resolution session.  All right.  The problem here is you never notified them that the resolution session is going to be convened on the 4th or the 3rd.

MS. GEORGE:  The 3rd or the 4th, it's listed right there.  One of these three times.

MR. ST. CLAIR:  No, no, no, no.  I mean, it's going to be scheduled on the 4th.

MS. GEORGE:  These were our efforts to cooperate with them in choosing a day and time that was amenable to her.

MR. ST. CLAIR:  See, there was no need to cooperate.  See after you didn't hear from them, you must

schedule it within the 15 days.  All right, you look as if

you have something you want me to read.

       MS. GEORGE:  Well, no, it just says that we need

to obtain the participation of the parent --

       MR. ST. CLAIR:  Listen very carefully.

       MS. GEORGE:  Okay.

       MR. ST. CLAIR:  Let me read this again.  Let me

read this again.

       MS. GEORGE:  I don't know if we need to do that.

       MR. ST. CLAIR:  This is Paragraph 8.  The -- when

the -- this -- the Defendants have exercised due diligence

when the following steps are taken.

       MS. GEORGE:  Uh-huh.

       MR. ST. CLAIR:  A) that's not there -- I'm not

reading from the --

       MS. GEORGE:  I know you're not.

       MR. ST. CLAIR:  Yeah.  Within 3 days of the

parent filing a due process complaint, the Defendants

telephone the office of parent counsel to schedule the

resolution session unless the parent counsel agrees to

allow the Defendants to contact the parent directly.  If

the parent counsel is not available upon the initiation of

the phone contact, a message shall be left for counsel with

respect to the Defendants' attempt to schedule a resolution

session identifying the individual and to whom counsel should respond.

If a parent is not represented, the Defendant will attempt to make telephone contact directly with the parent within 3 days of the parent filing a due process complaint, and in the event the parent is unavailable, shall leave a message if feasible with respect to the school's attempt to schedule a resolution session identifying the individual to whom the parents should respond. Defendant's failure to contact within the first 3 days does not absolve a parent from participating in a resolution session when the resolution session is scheduled --

MS. GEORGE:  (Off mike).

MR. ST. CLAIR:  -- within the 15 school days. You never scheduled it.

MS. GEORGE:  I -- my argument will --

MR. ST. CLAIR:  Go ahead.

MS. GEORGE:  -- it's going to remain that we've provided these three dates -- in essence, scheduled these three times.  You can come at one of these times.  And according to the CFR we're supposed to do it at a time that's mutually agreeable.

MR. ST. CLAIR:  No --

MS. GEORGE:  No, it does, and I'll read it to you.

MR. ST. CLAIR:  Listen, are you sure you're reading the resolution session or the --

MS. GEORGE:  Yes, I am --

MR. ST. CLAIR:  -- IEP meeting?

MS. GEORGE:  No.  This says -- it says, "If the LEA is unable to obtain the participation of the parent in the resolution meeting after reasonable efforts have been made pursuant to 300.322(d)."  So 300.322(d) says -- okay, let me make sure I have this right, (d).  "A meeting may be conducted without the parent in attendance if the public agency is unable to convince the parents that they should attend.  In this case the public agency must keep a record of its attempts to arrange a mutually agreed on time and place."

MR. ST. CLAIR:  That's for an IEP meeting --

MS. GEORGE:  No, no, right from here, it talks about --

MR. ST. CLAIR:  Let me see that.

MS. GEORGE:  I'll just point it out.  You can look at it --

MR. ST. CLAIR:  No, no --

MS. GEORGE:  -- I just want to point it out.

MR. ST. CLAIR:  I think I have the regulations over here.  The regulations or the statute.

MS. GEORGE:  This is the CFR, the regs.

MR. ST. CLAIR:  Okay.

MS. GEORGE:  300.510 is entitled resolution process.

MR. ST. CLAIR:  300.510.

MS. GEORGE:  300.510.  It's entitled "Resolution Process."

MR. ST. CLAIR:  All right.

MS. GEORGE:  Now, go down to (a)(4) down at the bottom, at the very bottom of the middle column there.  It says, "If the LEA is unable to obtain the participation of the parent in a resolution meeting after reasonable efforts have been made and documented using the procedures in 300.322(d)" -- so then we go back --

MR. ST. CLAIR:  Wait, wait, wait, wait. Something tells me you left off a part of the sentence.

MS. GEORGE:  Okay.

MR. ST. CLAIR:  All right.  Now, I'm looking at paragraph (a), what paragraph are you talking about?

MS. GEORGE:  300.510.

MR. ST. CLAIR:  I know what -- what paragraph?

MS. GEORGE:  (a)(4).

MR. ST. CLAIR:  (a), the --

MS. GEORGE:  Oh, the -- (b)(4), it's (b)(4), I'm sorry.

MR. ST. CLAIR:  -- paragraph (b)?

MS. GEORGE:  (b)(4).

MR. ST. CLAIR:  All right.  Let me see.  I'm going to read the whole paragraph, (b).  This is a 300.510 paragraph b, *Resolution*.1.  "If the LEA has not resolved the due process complaint to the satisfaction of the parent within 30 days of the receipt of the due process complaint, the due process hearing may occur."  Now, to me --

MS. GEORGE:  No, we're talking about (b)(4).

MR. ST. CLAIR:  I understand.

MS. GEORGE:  Oh, okay.

MR. ST. CLAIR:  But that's a sentence in the paragraph.

MS. GEORGE:  Sure.  Well, it's a sentence within that subsection.

MR. ST. CLAIR:  Yes, yes.  No.  Well --

MS. GEORGE:  That would apply -- what you're reading would apply if the parent did partake and didn't agree, then we can move forward.

MR. ST. CLAIR:  That's correct.  Now, that's what you have -- okay.  So it's nice to read the whole paragraph.

MS. GEORGE:  Well, I'm reading the full paragraph under --

MR. ST. CLAIR:  I don't think it's applicable.

MS. GEORGE:  I'm not reading that paragraph.  I am citing 300.510(b)(4), because I'm arguing that we tried -- DCPS tried to obtain the parents' participation and they failed to participate.  So (b)(4) says if we were unable and we documented our attempts pursuant to 300.322(d), then we can ask you to dismiss the case after 30 days.

MR. ST. CLAIR:  All right.  Here's the problem. First of all, a consent decree takes precedent over these minor differences in the regulation.

MS. GEORGE:  Okay.

MR. ST. CLAIR:  The regulations require the -- see, here's what -- here's how I understand your understanding of this.

MS. GEORGE:  Uh-huh.

MR. ST. CLAIR:  My understanding of your position is that you're saying that, because they didn't agree --

MS. GEORGE:  No, because they didn't attend the resolution meeting that we scheduled.

MR. ST. CLAIR:  All right.  When did the resolution -- what -- where is it -- show me where you sent them a notice telling them that the resolution session is scheduled for a specific date and time.

MS. GEORGE:  It's my disclosure number 3 where it's sent on December 1st and it says the meeting will take place.

MR. ST. CLAIR:  Miss --

MS. GEORGE:  They're saying they didn't get it despite the fax transmittal --

MR. ST. CLAIR:  Thank you for your help, Ms. Simmons, but I want you not to participate by shaking your head and then agreeing or disagreeing, don't do that.

MS. SIMMONS:  Oh, okay.

MS. GEORGE:  We had to try to find a time that was mutually agreeable --

MR. ST. CLAIR:  No, you don't.

MS. GEORGE:  Yeah, we do, because you didn't -- look right here, it says "procedures in 300.322(d)."  If you go back and read 322(d), it says we should attempt to find a time that's mutually agreeable.

MR. ST. CLAIR:  All right.  But --

MS. GEORGE:  So we give them three scheduled dates, which are all within the 15-day period, October 3rd,

2 day -- two times and October 4th, one time, we heard no response at all; they failed to participate.

     MR. ST. CLAIR:  No, you did not have --

     MS. GEORGE:  Okay, well, that's my motion.

     MR. ST. CLAIR:  All right.  Okay.  I want you to understand why I'm going to deny it.

     MS. GEORGE:  I will --

     MR. ST. CLAIR:  I'm denying it, because first of all, you didn't -- there's no proof that you initiated a contact within 3 days.

     MS. GEORGE:  Well, we could -- but that's phone contact, I wouldn't have documentary proof that --

     MR. ST. CLAIR:  All right.  But that's not --

     MS. GEORGE:  If you let me call the SEC, I'll ask her if she called.

     MR. ST. CLAIR:  All right.  Let me just say this, that's not the dispositive.

     MS. GEORGE:  Oh, okay.

     MR. ST. CLAIR:  The dispositive point is that you never scheduled the meeting.  So you saying the 3rd or the 4th, is scheduling.

     MS. GEORGE:  This is a standard form that we use in order to provide three times that are mutually agreeable.

MR. ST. CLAIR:  Well, let me just say this.

MS. GEORGE:  And if they don't respond at all, what more can DCPS do?

MR. ST. CLAIR:  Ms. Ekekwe, what is your response to that?

MS. EKEKWE:  My response is, first of all, we did not -- I did not receive the notice, the request for a meeting.  And second of all, there wasn't -- I did not receive a call to indicate that they're trying to schedule a meeting and my office did not.  And parent -- usually, when she receives a call from the school for a meeting, she will call me and she did not receive a call from the school, from them -- because she did not call me about the meeting.  If there was a meeting schedule, we would have attended.

MS. GEORGE:  If you need me to make a record, I will call the SEC and ask if she attempted to place a phone call within the 3 days.

MR. ST. CLAIR:  Well, I'm really not concerned about that --

MS. GEORGE:  Okay.

MR. ST. CLAIR:  -- because it says that that's not, you know --

MS. GEORGE:  Okay.

MR. ST. CLAIR:  It says right here, it says "Defendant's failure to initiate contact within the first 3 days does not absolve the parent" --

MS. GEORGE:  Right.

MR. ST. CLAIR:  -- "from participating in a resolution session when the resolution session is scheduled."

MS. GEORGE:  Okay.

MR. ST. CLAIR:  So the question is, is this -- when was this sent Ms. George?

MS. GEORGE:  October 1st.

MR. ST. CLAIR:  When a RS is scheduled within the statutory 15 days and the parent and counsel have received at least 4 full calendar days' prior notice of the scheduled RS meeting.  So the first --

MS. GEORGE:  They had 5 days, because it was sent on October 1st.  So they had notice of all these 3 days, and all these 3 days are within the 15-day period.

MR. ST. CLAIR:  No, listen to me.

MS. GEORGE:  I'm listening.

MR. ST. CLAIR:  At least full -- 4 full calendar days.

MS. GEORGE:  Before what --

MR. ST. CLAIR:  Prior notice of the scheduled RS meeting.  So I'm thinking that the meetings on the 3rd are out.

MS. GEORGE:  Fair enough.  But they didn't respond anyway.

MR. ST. CLAIR:  Well, see what you're trying to say is that absolves you from scheduling the meeting.  See, the DCPS is overemphasizing the parents' cooperation with the resolution session.  What you got to do is try and if you don't hear, you got to send out a notice telling them that the resolution session meeting is going to take place at a specific date and time.

MS. GEORGE:  Okay.  So after we send out this notice with three dates in order to obtain a mutually agreeable date --

MR. ST. CLAIR:  No, two of them don't comport with the --

MS. GEORGE:  Okay.  Then we should've just scheduled it for October 4th even though we didn't hear anything? and --

MR. ST. CLAIR:  That's right, yes, that's exactly how you have to do it.

MS. GEORGE:  Okay.

MR. ST. CLAIR:  You have to schedule it.  You got to tell them that.

MS. GEORGE:  I -- my argument is just that these dates were the scheduled dates and they just had to pick one.

MR. ST. CLAIR:  What I'm trying to say is -- see that's the problem, you're saying they had to pick one. The way I understand this, they don't.  What you have to do is schedule it at least 4 full days.

MS. GEORGE:  Okay.  I hear you and the record hears me, so thank you.

MR. ST. CLAIR:  All right.  Do you have records sufficient for your --

MS. GEORGE:  I do, thank you.

MR. ST. CLAIR:   -- review purposes?

MS. GEORGE:  Yes, thank you.

MR. ST. CLAIR:  All right.  I'm going to deny the motion.

MS. GEORGE:  Okay.

MR. ST. CLAIR:  Ms. Ekekwe, why are we here?

MS. EKEKWE:  We're here, because J███████ was placed at -- J██████ is a child with disability.  And he was experiencing behavioral difficulties at the school.  DCPS --

MR. ST. CLAIR:  At what school?

MS. EKEKWE:  At Stanton School.

MR. ST. CLAIR:  And which school are you saying is inappropriate?

MS. EKEKWE:  M.C. Terrell.

MR. ST. CLAIR:  All right.  Okay.

MS. EKEKWE:  Okay.  He was experiencing behavioral difficulties at Stanton School.  DCPS placed him at M.C. Terrell over the objection of the mom.

MR. ST. CLAIR:  Uh-huh.

MS. EKEKWE:  At M.C. Terrell, mom noticed that -- first of all, J▇▇▇ has behavioral issues.  He has attention deficit disorder as well as childhood depression, and conduct disorder.  And M.C. Terrell, when mom went to visit the school after J▇▇▇ was placed at the school, mom noticed that the school was an open school environment, and not like Stanton where they had classrooms. And mom came back and indicated to Stanton that the school would not be appropriate for J▇▇▇ --

MR. ST. CLAIR:  M.C. Terrell.

MS. EKEKWE:  M.C. Terrell would not be appropriate for J▇▇▇ even though they already scheduled him to go to that school.  So mom --

MR. ST. CLAIR:  How long did J▇▇▇ attend M.C.

Terrell?

MS. EKEKWE:  J██████ attended M.C. Terrell for about a month.

MR. ST. CLAIR:  Okay.

MS. EKEKWE:  Mom -- the first two days.  The first -- actually the first five days mom returned J██████ back to Stanton indicating that he cannot make progress at M.C. Terrell because of the open classroom, and because of the individuals that would be in the same class that he would be in, whom J██████ also have problems with prior, when J██████ --

MR. ST. CLAIR:  Whom J██████ has -- what?

MS. EKEKWE:  J██████ have fights with the students that are currently at M.C. Terrell.  They used to be at Stanton.

MR. ST. CLAIR:  So he went over to M.C. Terrell with other students?

MS. EKEKWE:  No, Stanton transferred other students to M.C. Terrell when they are not able to meet their needs.

MR. ST. CLAIR:  Okay.  I understand you --

MS. EKEKWE:  And during that meeting where mom was informed that J██████ would be going to M.C. Terrell, in that meeting mom indicated J██████ will have difficulty

there because certain students are already there, and also because she is familiar with the school, and that is a open school environment, that J██████ will continue to have difficulty.

At that meeting which is still -- is part of our disclosure DCPS stated that they were only given -- DCPS, I mean, Mr. Bronson's team indicated that they were only given the M.C. Terrell as a placement option for the parent to take J██████ to.

J██████ started attending M.C. Terrell.  J██████ continued to have behavioral difficulties.  On two different occasions Police Officer Palmer was involved, because of the behavioral difficulties that J██████ was experiencing.  Parent gave notice to DCPS saying that, "I'm going to move my child.  I've already given you a notice prior that I will be moving my child to a different school. I would like to have a IEP meeting to discuss a placement for my child."

MR. ST. CLAIR:  Where is that?

MS. EKEKWE:  Well, it should be here, if you will give me a minute.

MR. ST. CLAIR:  It should be here?

MS. EKEKWE:  Yes.  Starting from JS2, which is the IEP meeting notes will be the statements that was --

parent made about a placement, and that would be starting

from page 4.

      MS. GEORGE:  What documents are you looking at?

      MS. EKEKWE:  Parents 2.

      MS. GEORGE:  Here it is not numbered here, so

could you tell me the document you're looking at.

      MS. EKEKWE:  its IEP meeting notes.

      MS. GEORGE:  From September 4, '07?

      MS. EKEKWE:  Yes, September 4, '07.

      MS. GEORGE:  Okay.

      MS. EKEKWE:  And -- after the document that says,

"Sunrise Academy," which would be under JS14.

      MR. ST. CLAIR:  Wait a minute.  Have we finished

with document number two?

      MS. EKEKWE:  Oh, document number two, yes, on

page 4.

      MR. ST. CLAIR:  Is that where it says, "Ms.

Simmons is in agreement with the recommendation of her

advocate as noted on the previous page."

      MS. EKEKWE:  Starting -- yes, starting from

there.  It -- on the bottom page you would see, "The parent

and advocate are in disagreement with the proposed location

of service.  Ms. Simmons expressed that J██████ would not be

successful at M.C. Terrell, because of the interaction he

would have with" -- "experience with family members that
are in the same program at M.C. Terrell.

      "J████ currently has relative attendant M.C.
Terrell, this will lead him to not being able to experience
success in a present -- as presented by the parent and the
advocate.  However, DCPS continued to propose M.C. Terrell
as the appropriate placement for J████ at this time."

      MR. ST. CLAIR:  All right, so you're saying that
this is --

      MS. EKEKWE:  That's part of the statement that I
made, that parents indicated that he would not make
progress because of the prior students that were -- and
then I'm going to go to -- she says her pages are not
numbered, so I'm looking at the next document -- to
indicate the notice after the incident where she returned
the kid to school, and the kid was sad to go back to M.C.
Terrell.  And on your -- it would be closer to the back of
your disclosure, and --

      MS. GEORGE:  Yes, okay.

      MR. ST. CLAIR:  What number?

      MS. EKEKWE:  I have it as J -- it's under JS14,
but the front page has "Sunrise facsimile" on it.

      MR. ST. CLAIR:  That's what mine is.

      MS. EKEKWE:  Okay.  And then go to the second

page.  That will be Sunrise acceptance letter.  And the
third page will be a letter to Mr. Bronson dated September
19th.  The fourth page will be a fax confirmation --

      MR. ST. CLAIR:  Wait a minute.  Wait a minute.
All right, go ahead.

      MS. EKEKWE:  On the back of it would be the fax
confirmation sheet.  And I just want to make sure you have
the --

      MS. GEORGE:  I don't have -- I don't think I do
have that.  It's a letter to Mr. Bronson?

      MS. EKEKWE:  Yes.

      MS. GEORGE:  Who --

      MS. EKEKWE:  It's on the back of -- you say yours
is not numbered.

      MS. GEORGE:  Yeah.

      MS. EKEKWE:  It should be -- oh, you don't have
any number at all on yours?

      MS. GEORGE:  No.

      MS. EKEKWE:  Okay.  It should be on the back of
the documents that says, "Sunrise Academy facsimile
transmittal."

      MS. GEORGE:  The one of September 13, '07?

      MS. EKEKWE:  Yes.

      MS. GEORGE:  Okay.

MS. EKEKWE:  And after that there will be a
letter that says, "Sunrise Academy acceptance letter."

MS. GEORGE:  I have that.  I have that.

MS. EKEKWE:  And then after that there will be a
letter that says, "To Mr. Bronson."

MS. GEORGE:  Oh, I don't have that.  It starts
with -- it looks like an evaluation of some kind.

MS. EKEKWE:  Okay.  But that's after those -- the
rest of the evaluation is after that.  You don't have that
on --

MS. GEORGE:  Oh, the letter is not in here.  Who
is Mr. Bronson?

MS. EKEKWE:  Mr. Bronson is the special ed
coordinator at Stanton Elementary.

MS. GEORGE:  Okay --

MS. EKEKWE:  Okay.

MS. GEORGE:  All right.

MS. EKEKWE:  You want to -- it was faxed.  I
didn't prepare this.  I can call the person who prepared it
to --

MS. GEORGE:  I must look at it.  Thank you.
Okay.  Let me just look at it.  Okay.  I understand it.
Thank you --

MR. ST. CLAIR:  Go ahead.

MS. EKEKWE:  And after the letter, Mr. Bronson told the parent that J██████ cannot come to the school at all, that J██████ has to return to M.C. Terrell.  J██████ went back to M.C. Terrell, and I'm not --

MR. ST. CLAIR:  Wait a minute.  Mr. Bronson said that J██████ can't come to this school at all?

MS. EKEKWE:  Right.

MR. ST. CLAIR:  What school is he talking about?

MS. EKEKWE:  Stanton.  Because after the incident at M.C. Terrell, mom --

MR. ST. CLAIR:  So you sent the letter to the school that the child was no longer attending.

MS. EKEKWE:  Mom took him back to M C -- to Stanton on --

MR. ST. CLAIR:  But you didn't send a letter to M.C. Terrell.

MS. EKEKWE:  No, we did not send a letter to M.C. Terrell.

MR. ST. CLAIR:  You sent it to the school where DCPS removed the child from.

MS. EKEKWE:  Right.  Because that's where mom re-placed him back.

MR. ST. CLAIR:  Okay.  Go ahead.

MS. EKEKWE:  Mom, placed him back there.  And he

went to that school for another week.

     MR. ST. CLAIR:  No.  But you sent the letter, right?

     MS. EKEKWE:  Right.  I sent the letter.

     MR. ST. CLAIR:  All right.  Go ahead.

     MS. EKEKWE:  And mom put him back, and -- at that -- at Stanton, and after we -- they told him he cannot come and then transportation kept them to go to M.C. Terrell. And mom then removed him from M.C. Terrell and placed him at Sunrise Academy.  And -- so we are here seeking funding for Sunrise Academy, and basically that's what we're here for, funding, and transportation, and services.

     MR. ST. CLAIR:  Opening statement now, Ms. George, or later?

     MS. GEORGE:  Now please.  All right the complaint has three allegations.  It seems like possibly petitioner's counsel is waiving two of them, but I'll just read them. The first one was that DCPS failed to properly convene and conduct an IEP placement meeting.  We already discussed this, and counsel talked about it in her statement, that there was an IEP placement meeting on September 4, 07, and the whole team was there, and the parent was there, and the counsel was there.  So I'm not sure how that could be --

     MR. ST. CLAIR:  Okay.  Well, she is going to have

a chance to put on her proof.

      MS. GEORGE:  -- improperly convened or conducted which is the sole -- that's the claim, that it was not properly convened or conducted.

      MR. ST. CLAIR:  All right.

      MS. GEORGE:  The second issue is the placement issue.  They disagree that placement is appropriate.  DCPS stands by its placement --

      MR. ST. CLAIR:  M.C. Terrell.

      MS. GEORGE:  -- at M.C. Terrell.

      MR. ST. CLAIR:  Okay.

      MS. GEORGE:  Yes.  And -- yes, we believe that M.C. Terrell can provide a FAPE to the student, which means that it can implement through the IEP, and that it is an appropriate education for him.  That doesn't -- it doesn't mean a place where he would get along with everybody, or the place where he wouldn't have any family member.  It just means it has been appropriate education.  They have to be able to implement his IEP.

      And the final claim here is that DCPS didn't properly convene and conduct a manifestation determination review.  That also wasn't discussed in the opening statement.  But in any event there -- it was no requirement based on the regulations to conduct a manifestation

determination review, because the child was never

suspended, not even for a day, and as I stated.  Thank you.

        MR. ST. CLAIR:  All right.  First thing I want

you to do is address the manifestation determination.  Do

you have a notice of suspension?

        MS. EKEKWE:  No, there is no notice of

suspension.  And I'm not going to address it, and I can

also have the parent testify what --

        MR. ST. CLAIR:  I'll tell you -- okay, it's going

to be a -- it's going to be by testimony, right?

        MS. EKEKWE:  And -- it's by testimony.

        MR. ST. CLAIR:  All right, fine, call you first

witness.

        MS. EKEKWE:  I would like to call Ms. Eloise

Simmons.

Whereupon,

                    ELOISE SIMMONS

was called as a witness and, having been first duly sworn,

was examined and testified as follows:

        MR. ST. CLAIR:  I want you to put the microphone

in-between yourself and me.  Right there, that's right.

And -- there you go.  But move it closer to yourself.  I

want to make sure that -- there you go.  Please begin Ms.

Ekekwe.

DIRECT EXAMINATION

BY MS. EKEKWE:

Q    Could you please state your name, and spell in your name for the record?

A    Eloise Simmons, E-l-o-i-s-e S-i-m-m-o-n-s.

Q    Okay.  Do you know the student J_____ S_____?

A    Yes.

Q    How do you know J_____ S_____?

A    He is my son.

Q    Okay.  Which school does -- how old is J____.

A    He is nine.

Q    Okay.  Which school does J____ currently attend?

A    Sunrise Academy.

Q    Okay.  When did J____ start attending Sunrise Academy?

A    About -- I'm not -- about a week or something ago.

Q    Okay.

MR. ST. CLAIR:  Well, this is rather important.  He just started in November?

THE WITNESS:  Yeah.

MR. ST. CLAIR:  When in November?

THE WITNESS:  What's today's date --

MR. ST. CLAIR:  Today is 21st.

THE WITNESS:  (Off mike) I'm not sure exactly which date.

MR. ST. CLAIR:  But it's not more than 2 weeks. It's not more than 2 weeks.

Go ahead, Ms. Ekekwe.

MS. EKEKWE:  Okay.

BY MS. EKEKWE:

Q    Why did you -- before going to Sunrise Academy where was J████ attending?

A    He was at M.C. Terrell.

Q    And before he went to M.C. Terrell where was he attending?

A    Stanton Elementary School.

Q    Okay.  What led J████ to be placed at M.C. Terrell?

A    They said he needed to be on a different type of setting with -- because he had -- he couldn't -- you know, he used to get in too many fights.  And he just -- they just say he needed to be in the out of general -- population with four people or something like that, because Stanton School cannot give him what he need.

MR. ST. CLAIR:  They said they -- he needed to be with a -- how many?

THE WITNESS:  Four people to a room or something.

They said a smaller setting where he can be -- he get
individual or something, therapist something --

       BY MS. EKEKWE:

Q    And when they said that what happened?

A    They -- we had a -- we wanted to meet, and it was
like, you know, we're putting them in M.C. Terrell, and I
told them, well, no, I don't want him going to that school
because actually I had a conversation with a officer that
was called in for him named Officer Palmer.  He was like,
you know, I recommend you don't let him going to M.C.
Terrell because that's a open school.

       MR. ST. CLAIR:  The police officer told you this?

       THE WITNESS:  Yes, Officer Palmer.  He works with
D.C. Public Schools.

       MR. ST. CLAIR:  All right.  Now, where did this
conversation take place?

       THE WITNESS:  In the office.

       MR. ST. CLAIR:  What school?

       THE WITNESS:  Oh, Stanton Elementary School and
at M.C. Terrell.  He --

       MR. ST. CLAIR:  Wait.  At Stan and M.C. Terrell?

       THE WITNESS:  Yeah, this was recently.  This is
the third incident with the police at M.C. Terrell with
J██████.  So he said he didn't think that was a good idea --

MR. ST. CLAIR:  The police officer told you that.

THE WITNESS:  Yes -- we talked.  And he was like, I don't think this is a good idea for your kid to come here any (inaudible) because this is an open school, and all the kids, you know, for him -- the reason why he was taken out of Stanton is because of the fighting and running through, you know, and not being able to sit down.

So he was like, well, I'm -- we -- all of us came together at M.C. Terrell, the principal and all of us, and she was -- they called me everyday since he's been -- I've been asked to come up there everyday.  And she was like, because -- one of the psychiatrist was -- it was a major problem with the police, and I had to come in, because somebody got hurt or something, or he got hurt or whatever.  And they -- I had to make two police claims for abuse.  J████ kept coming home saying that the teachers was beating on him, so I made two abuse claims with Officer Palmer.

And he was like, well, maybe you need to talk about getting him out this school.  And as I talked to the principal, the principal -- her been talking lately, you know, about trying to get J████ where he need to be, you know, so --

MR. ST. CLAIR:  Let me ask you this.  When did

J███████ start at M.C. Terrell?

THE WITNESS:  He's been there for like a month or two.

MR. ST. CLAIR:  All right.  You remember when the school started, at the end of August or the beginning of September this year?

THE WITNESS:  -- I'm not sure which day, but that was like right after the papers they sent them to M.C. Terrell, he went -- the transportation for the -- because we had a problem with transportation.  So when the transportation finally came he started.

MR. ST. CLAIR:  At Terrell.

THE WITNESS:  At M.C. Terrell.

MR. ST. CLAIR:  And then there came a time when you took him our, right?

THE WITNESS:  Yeah.

MR. ST. CLAIR:  When did you take him out?

THE WITNESS:  Well, that was like for 2 days, because they said -- Stanton sent me a letter saying that, no, you can't -- he is not allowed to come in any more.  I don't know exactly which date it is, but Stanton Elementary sent me a letter saying that you cannot bring you son here no more.  He is --

MR. ST. CLAIR:  Well, wait, wait.  Ms. Simmons,

you're saying that, first, J▇▇▇▇ -- you took J▇▇▇▇ -- he was at Stanton.

THE WITNESS:  He was at Stanton.

MR. ST. CLAIR:  Then the MDT, in September 4th, wrote an IEP and placed him at M.C. Terrell.  That was at September 4.  When did you take J▇▇▇▇ to M.C. Terrell?

THE WITNESS:  It was -- about a week later he was at M.C. Terrell, not even a week later --

MR. ST. CLAIR:  All right.  Did you want to take him there?

THE WITNESS:  No, actually I didn't, but I --

MR. ST. CLAIR:  All right, fine, wait, wait.  All right, now, there came a time when you took him out of M.C. Terrell and took him back to Stanton when did that happen?

THE WITNESS:  That was recently, about -- I'm not sure, it's about a month ago, month or so ago.

MR. ST. CLAIR:  You don't have the right date.

THE WITNESS:  I don't know exactly which date, but I know -- he sent me a letter --

MR. ST. CLAIR:  Who is he?

THE WITNESS:  The special ed coordinator -- what's his name, miss -- the principal, Mr. Brooks, and the special ed coordinator sent me a letter saying that he is not to return back here at all.

MR. ST. CLAIR:  This is Stanton

THE WITNESS:  Yeah, that's at Stanton.

MR. ST. CLAIR:  All right.  And so what did you do with J███ after you got the letter from Stanton saying that J███ couldn't come there?

THE WITNESS:  I had to take him back to M.C. Terrell because I couldn't have him out of school.

MR. ST. CLAIR:  So he was only at Stanton for a couple of days?

THE WITNESS:  Yeah, because before they sent the letter -- they sent me a letter.

MR. ST. CLAIR:  When you say "they" you're talking about Stanton?

THE WITNESS:  There was two of them, yeah, the principal Mr. Brooks, Norman Brooks and the special ed coordinator.

MR. ST. CLAIR:  Sent you a letter saying that J███ could not attend Stanton.  So you took him back to --

THE WITNESS:  Stanton anymore -- to M.C. Terrell.

MR. ST. CLAIR:  All right.  And he stayed there until about a week ago until -- this is the 21st, what is that?  The 14th or so of this month, November 2007 when you took him out and put him in Sunrise.

THE WITNESS:  Yeah, he was already -- well, they accepted him at Sunrise, but I --

MR. ST. CLAIR:  What I mean, you just took him there --

THE WITNESS:  Yeah, I took --

MR. ST. CLAIR:  -- about the 14th, which is about a week prior to today, and today is November 21st.  About a week ago you'd put him in Sunrise.

THE WITNESS:  Yeah, I think about a week or two ago.  I'm not sure, my dates is not that good.

MR. ST. CLAIR:  All right, Ms. Ekekwe, go ahead.

BY MS. EKEKWE:

Q    What led to you moving him from M.C. Terrell?

A    They -- I've been having a lot of -- well, actually the principal who had been calling just -- with the police because there has been a lot of incidents as far as abuse, like I said, abuse, the teacher abusing J█████, and I have -- I had to make reports, because she -- the principal is like she'd made that -- she'd take that as a -- when a kid is saying that they are being hit by on occasions by the teacher she has to make a report with the police saying that -- for abuse case, so --

MR. ST. CLAIR:  When you say "they have to make a report," who are they?

THE WITNESS:  The principal said she has to make a report about the teacher.

MR. ST. CLAIR:  All right.  So this is the principal at what school?

THE WITNESS:  M.C. Terrell.

MR. ST. CLAIR:  Do you know her name?

THE WITNESS:  What's her name?  You know, I know her name, but I forgot it.

MR. ST. CLAIR:  All right.  Do you know J██████ teacher's name?

THE WITNESS:  Yeah, Mr. Felder (phonetic).

MR. ST. CLAIR:  All right.  Mr. Felder.

THE WITNESS:  Mr. Felder.

MR. ST. CLAIR:  So there were allegations that Mr. Felder had struck J█████?

THE WITNESS:  On several occasions.

MR. ST. CLAIR:  On several occasions.

THE WITNESS:  Uh-huh.

MR. ST. CLAIR:  And what happened as a -- whatever came of that?

THE WITNESS:  The police said he was going to do -- he was doing a investigation.

MR. ST. CLAIR:  Have you heard back from --

THE WITNESS:  No, actually I haven't, but another

incident came up and -- about the psychiatrist and J██████.
She said she got hurt, and J██████ had all these marks all
over his face, but --

      MR. ST. CLAIR:  The psychiatrist and J██████ had a
tussle?

      THE WITNESS:  That's what they say.  I wasn't
there.  I don't know.  But they said that she -- I don't
know if she was restraining him, because that's something
strange, so I didn't know that.  And I asked them if you
restrain school, don't just anybody notify me if there was
a restrain.  And that's the only reason I really called the
police, because he had all these marks on.  And when you --
I thought maybe if you're at a school then --

      MR. ST. CLAIR:  Let me ask you something.  These
matters with the police, did you call the police?

      THE WITNESS:  Actually I called the police the
first time when they said that -- when he said that the man
was hitting him on in his back I called the police the
first time.  The second time the principal called him
because the psychiatrist there said that she was scared for
her life and all that stuff.

      MR. ST. CLAIR:  All right, okay.  Go ahead, Ms.
Ekekwe.

      BY MS. EKEKWE:

Q    Each time there was J████ ever suspended?

A    Well, at this school?

Q    At M.C. Terrell.

A    No, J████ was never suspended.  She will just call me on the phone and ask me, you know, talk to him, or if not she got to send him home.  But she never actually suspended, because we've been talking, you know, about -- you know, situations.

Q    Who calls you and say talk to him or I will send him home?

A    The principal is who I'd be talking to.

Q    Okay.  And I just want to move a step back.  When he was at Stanton was he ever suspended?

A    Every other week.

Q    Did you receive a suspension letter?

A    Yes.

Q    Okay.

     MR. ST. CLAIR:  Is that in the record.

     MS. EKEKWE:  I don't have it.

     MR. ST. CLAIR:  That means no?

     MS. EKEKWE:  No.

     MR. ST. CLAIR:  Go ahead.

     MS. EKEKWE:  Okay.

     BY MS. EKEKWE:

Q    Since he -- when he was at -- let me just go back, since -- when he was at M.C. Terrell could you please describe their program that -- at M.C. Terrell that you've seen?

A    The program that I've seen?

Q    Yeah.  M.C. Terrell, when I went in there -- when I went in M.C. Terrell I noticed that M.C. Terrell was a school that was actually something just like Stanton School.  It's a open environment which -- I think kids running everywhere, running -- and I asked the -- well, I've seen kids running everywhere.  And I said, well, I thought this was a school that sort of claimed to something, you know, where the kids don't go with the teacher everywhere or something.  And they was like, no, this is just like a school, you know, because I see all the kids and I'm not (inaudible) I thought maybe, you know, the way that the school was told to me was totally different when I got there.

You know, they said it was going to be four kids to a class which is nine -- well, actually there is nine kids in his class, and they eat by their self in a room.

MS. GEORGE:  I just want to object to the extent that she is talking about what they told her.  I'm not sure who.  And its hearsay isn't it?

MR. ST. CLAIR:  Neither am I, but I've tried to address that.

THE WITNESS:  Okay.  When they --

BY MS. EKEKWE:

Q    When you say "they," who do you mean?  Who told you about the school?

A    D.C. Public School presented a school, and they presented their school as what their school is.  M.C. Terrell when we were talking, we -- and they presented M.C. Terrell, and they had somebody to -- on the phone talking about what they -- you know, what they give the kids.  You know, and it was like -- it was four something.  I don't really know what he was trying to tell me, so I -- when I went there it wasn't --

MS. GEORGE:  One more objection, this is hearsay when she is talking about what someone else said to her, and we don't even know who that person is at this point for the record.

MR. ST. CLAIR:  I have your objections.  Your objection is noted.

MS. GEORGE:  Thank you.  Will you rule on it?

MR. ST. CLAIR:  Yes, it's overruled.

MS. GEORGE:  Okay.  Thank you.

MR. ST. CLAIR:  It's noted and overruled.

MS. GEORGE:  Thank you.

MR. ST. CLAIR:  But I'm aware of hearsay.

MS. GEORGE:  I know you are.

MR. ST. CLAIR:  Go ahead.

BY MS. EKEKWE:

Q    You said that the psychiatrist or psychologist had a problem with J█████ at M.C. Terrell, is that a new psychiatrist, or is that a psychiatrist that J█████ is familiar with?

A    Well, actually, I don't even -- I asked the lady did she even know J█████.  She said she don't even work with J█████.  So I don't even know how they even came in, you know.  She was actually restraining or something.  She said, trying to stop a fight and restrain amidst of getting hurt and he getting hurt.  So they -- I don't really know.  He didn't even know her, I don't think.

MR. ST. CLAIR:  Oh, so let me see if I understand what you're saying, J█████ and some schoolmate are having a tussle.  This person, who happens to be a psychiatrist, as far as you know, happened upon the fight and tried to break it up and in the process got struck.

THE WITNESS:  Well, that's what my understanding is.

MR. ST. CLAIR:  Okay, go ahead, Ms. Ekekwe --

BY MS. EKEKWE:

Q     Since you removed J████ from M.C. Terrell have you received any calls from the school to come and talk to J████, to restrain, to keep him in line?

A     No, actually they said he was doing a little better.  They -- I haven't had no calls or nothing like that, only to see, you know, far as him being a little late sometimes.  But she said she understand me because (inaudible) we live over on the other side of the town. And other than that they said he is doing okay, he has his low moments, but he is doing okay.

        MR. ST. CLAIR:  Who are they?

        THE WITNESS:  Sunrise.

        MR. ST. CLAIR:  Okay.

        BY MS. EKEKWE:

Q     Do you believe that Sunrise Academy will provide appropriate services for your child?

A     Actually I think it's a good school.  Only because it's like a one-on-one -- something that he needs. It's like a one-on-one, you know, four kids, like I thought it was going to be at the other school.  But this is like four kids, and they don't eat with nobody but their selves. You know, it's a good school --

Q     So you would like your child to remain at that

school and DCPS to pay for it?

    A    Yes.

    Q    I don't have any more question right now, but Ms.
George is going to ask you some questions.

        CROSS-EXAMINATION

        BY MS. GEORGE:

    Q    Okay.  Ms. Simmons, right --

    A    Yes.

    Q    If I got this right, you said that there were two
contacts with the police about altercations at Terrell, is
that right?

    A    Uh-huh.

    Q    Okay.  And you said, the first time you called
the police.

    A    Uh-huh.  Let me then back that up.

    Q    Sure.

    A    The principal called for me, because I was at the
school.  I didn't directly call her, she called for me, so
I can -- you know, it was -- I had her to call, you know.

    Q    Okay.  So can you explain how that happened?  You
went to the school in order to make this complaint to the
police, or you went to the -- explain how that happened.

    A    No, what happened was I just happened to stop
(inaudible).  And I noticed that I was able to come in the

school without anyone noticing that I was in there.  I go all -- I went all the way up to the third floor, walked through the whole third floor, came back down.

Now, I -- this is how the -- how -- the situation.  I didn't even know that the incident had happened at the school.  They never -- there was no incident report, so nothing, that's why I called -- had the principal to call the police because there was no incident report, so nothing done.  So what I did was I talked to the principal, I called the principal, and the principal told me.  I said, well, I was able to come in the school and walk through this whole school for a hour and you do not know I'm here.

And I asked the -- I said, well, the door is open where anybody can come in and take a kid and walk out which was a major problem to me.  So I went to the principal's office, and actually had -- well, she said that -- well, we -- she said, we've been trying to contact you.  See, I don't have a phone.  She said, we've been trying to contact you because an incident had happened, you understand?

Q    Uh-huh.

A    And it so happened that I was up there for an incident because J_____ had said that the man was hitting on him.  So that's the reason why I was coming up there to

find out what happened (inaudible) Mr. Felder and J██████.

Q    Okay.  All right.  Let me kind of get this
straightened out.  So you -- before you went to the school
that day you had heard that there was incident where J██████
was struck by a teacher.

A    My son came home and told me that the teacher was
hitting on him.  So I was there the next morning.

Q    So the next morning you went, and you were
walking around the building to determine whether it was too
open for people to walk around or you were just walking
around for another reason?

A    No, what happened was I had came -- well, I've
been up there like every other day.  It was an incident
that came -- the doors was open on the side where people,
anybody can walk through and there is no security guard
there.

Q    Okay.  So you went there in order to talk about
the -- what J██████ had told you about the day before?

A    Yes.  And --

Q    And when you did that you went to talk to the
principal.

A    Uh-huh.

Q    And you made known to her that there was this
incident.

A    I talked to the security guard first.  And I wanted to ask security guard what happened, was that incident report done.

Q    Okay.  So you asked the security guards some questions, then you proceeded to talk to the principal.

A    And she said --

Q    Don't tell me what she said.  Just you went -- then you went to see the principal, and you told her about your concerns.  And at that point the principal called the police.

A    Yes.  No, the security guard called the police.

Q    And you were -- security guard called the police.

A    The security guard called the police.  She -- the principal told the security guard to call the police.

Q    Okay.  Thank you.  Thank you for clarifying that. And then what did the police do?

A    Officer Palmer came.

Q    He came to the building right then?

A    He came, he talked to me, he talked to J██████, but -- I don't know, I've never seen him talk to the teacher, but he did talk to the principal.  And he told me -- he said, well, I'm going to go and look at this, you know, investigate this situation.  But in amidst of him investigating another issue came up as far as the

psychiatrist.

Q    Okay.  Let's stop at -- let's just do this one first of all.

A    Okay.

Q    So how did that first -- your complaint to the police, do you know how that was resolved?  Have you heard anything?

A    Actually, I haven't heard anything.  She's been waiting on the police to get back with her.

Q    Who is she?

A    The principal.  I think her name is Ms. Patricia. I'm not sure.

Q    Okay.  Then I'll move on to the second alleged incident where you say that, if I can have this quoted, your -- "the psychiatrist said she was scared for her life," okay.  She wasn't hitting J██████.

A    J██████, okay, this is what happened.  When J██████ came home he had all these marks all over face.

Q    This is the next day?

A    This -- no, this was like a couple of days later, that's what I'm saying.

Q    Couple of days later.

A    This happened before I was notified, this situation had already happened.  I didn't know that this

situation happened.  So one day I walked in there, and the lady was like dang, we wanted you to talk to the police, the police was supposed to call you for the incident with the psychiatrist.

Q    Okay.  So you had your phone call with the police.  Then a couple of days later something came up with regard to the psychiatrist, or a couple of days later you heard about the incident with the psychiatrist.

A    We -- no, this -- you said, did I have a phone call?  No, I talked to him personally face to face.

Q    You -- oh, I'm sorry, you called the police and the police came and you talked to him.

A    He came to M.C. Terrell and talked to me.  We were -- all of us was talking together.

Q    Okay.  And then in relation to that when after that did it occur that you found out about the psychiatrist and the -- was is at that meeting?

A    The incident had already happened.

Q    But when did you hear about it?

A    See, that's what I'm telling you.  The incident had already happened.  I didn't hear about the incident until I -- a couple of days later.  And I asked them where was the incident report.  So I don't know if there was a incident report done on there, but it had to be a serious

matter, because they said the police was supposed to get
back with me.

Q    Okay.  Thank you.  But with regard to that
incident, is it your understanding that it was a teacher or
somebody employed by the school that hit J▮▮▮ or that he
was involved --

A    Which incident are you talking about?

Q    This -- what we're calling the second incident
with the psychiatrist.

A    The psychiatrist?  The psychiatrist was -- okay,
I called my lawyer and then another incident that happened
because he had --

Q    Which was told to you.

A    He had scratches all over his face.

Q    Okay.

A    But I --

Q    Did you allege to the police that someone at the
-- that an employee of the school struck J▮▮▮ with regard
to that incident?

A    Did you hear what I said?  The police was already
involved --

Q    I ask you a question and you answer my questions.

A    I was --

Q    The police were already involved.  My question is

did you make a call to the police or did you contact the
police or was there a complaint made against an employee of
the school with regard to that second incident, which we're
calling the psychiatrist incident, that someone at the
school struck J██████, that an employee of the school struck
J██████?

    A    Okay.

    Q    It was a bad question.

    A    The only incident I made was when I went up there
to talk to the psychiatrist to find out what happened.

    Q    Okay.

    A    Because I didn't know what happened.  I didn't
even know that there was -- the incident that happened.
But J██████ was telling me a couple of days later, "Mom, did
you look at my face?"

    Q    Okay, thank you.  One last question about that.
Do you think -- how many times has somebody at the school
according to you hit J██████?

    A    No, how many times did he say they put his hand -
- their hands on him, at lest three times.

    Q    He says three times?

    A    At least three times.

    Q    Okay.  And who did this, who put their hands on
him?

A    Okay, like I said, his teacher name is Mr.
Felder.

Q    Mr. Felder.  Who else?

A    I talked to Mr. Felder twice about him putting
his hands on J██████.

Q    Okay.

A    With the police.  And the third time, like I
said, it was with the psychiatrist.  And I don't know what
happened, so I can't say what happened.

Q    Okay, so you --

A    Both of them was hurt.

Q    So you think it was -- Mr. Felder put his hands
on your son and the psychiatrist put her hands on your son.

A    I'm just telling you what J██████ say happened.
But Mr. Felder said it was lack of restraint.  But you
don't hit people -- but -- excuse me.

Q    Sure.

A    From my understanding of restraint, it's not
hitting on people.

Q    Okay.  Yeah, how many times have you been to
Terrell for the purpose of observing the education, not for
the purposes of --

A    Probably every other day.

Q    Every other day?

A    And I walk through Terrell even when they don't even know I'm there.

Q    You go around the halls?

A    I waltz through there just to -- the reason why I do this is because when I first got there, I told you I noticed that anybody can walk through the school and just do anything at ease because the door does open as (inaudible).

Q    Can you tell me what percentage of the time you spend when you're at the school observing the education?

A    Sometimes I go in the class, sit down, and I talk to the -- Mr. Felder.  This was before all this even happened.

Q    Okay.  How many times have you been to visit Sunrise?

A    Sunrise?

Q    Yes.

A    Actually, I've been to Sunrise twice.

Q    Okay.

A    I've been at Sunrise twice.

Q    Okay.  And how much time each of those times did you spend there?  How many minutes?

A    Well, actually, I was there for a couple of hours.

Q    A couple of hours?

A    Yeah, taking a tour.

Q    Took a tour.

A    And you know, same order they, you know, provide for the children.

Q    Did you observe the classroom setting?

A    Actually, I did.

Q    Okay.

A    And I really thought it was a good idea, that actually, the classroom center is -- did you want me to tell you --

Q    No, I just wanted to know that whether you saw it.

A    Yes, I did.

Q    And you already told us what you saw.

A    Okay.

Q    All right, thank you.

MS. GEORGE:  I don't have any further questions.

MR. ST. CLAIR:  Redirect, Ms. Ekekwe.

MS. EKEKWE:  No redirect.

MR. ST. CLAIR:  Ms. Simmons, thank you very much.

(Witness excused)

MR. ST. CLAIR:  Next witness.

MS. EKEKWE:  Yeah, I'd like to call Ms. Felicia

(phonetic).  She's a designee for William Taylor from

Scruples Corporation, number 4.

       MS. GEORGE:  From Scruples Corporation?

       MS. EKEKWE:  Yes, is -- Scruples Corporation is a

part of the Department of Mental Health that provide

community counseling to J██████.

       MS. GEORGE:  Okay.

       MS. EKEKWE:  May I use the phone, sir?

       MR. ST. CLAIR:  Yes.

       MS. EKEKWE:  It is 202 --

       MR. ST. CLAIR:  How do you do this?

       MS. GEORGE:  Nine.

       MS. EKEKWE:  I think you dial --

       MS. GEORGE:  -- 901, right?

       MS. EKEKWE:  Yeah.  729-1472.  Thank you.

       MS. GEORGE:  Pick it up.

       MR. ST. CLAIR:  Yeah, this is --

       SPEAKER:  Scruples, good afternoon.  This is

Norma (phonetic).  How may I help you?

       MS. EKEKWE:  Good afternoon.  Is this Scruples

Corporation?

       SPEAKER:  Yes, ma'am.

       MS. EKEKWE:  Yeah, may I speak with Ms. Felicia

please?

SPEAKER:  I'm sorry.

MS. EKEKWE:  Ms. Felicia?

SPEAKER:  Ms. Felicia.  Okay, hold on please.

MS. EKEKWE:  Thank you.

SPEAKER:  You're welcome.

SPEAKER:  Hold please.

MR. ST. CLAIR:  Hello.

SPEAKER:  She has a call on the other.  Can you hold on please?  Hold on.

MS. EKEKWE:  I'm sorry.  I'm sorry about that.

MS. GEORGE:  It's okay.  Can I ask a question while we're waiting?

MR. ST. CLAIR:  We're on the record.  (Off mike) question.

MS. GEORGE:  Scruples provides J▅▅▅▅ with --

SPEAKER:  Hello, ma'am.

MS. EKEKWE:  Yes.

SPEAKER:  She's just out of the office.

MS. EKEKWE:  She is?

SPEAKER:  Yes.

MS. EKEKWE:  Do you have her cell number?  She knows we have a hearing for one of her clients, J▅▅▅▅ S▅▅▅▅.

SPEAKER:  Yeah, can you hold?  Let me double-

check.  I'm so sorry.

      MS. EKEKWE:  Okay.

      SPEAKER:  Hold on please.

      MS. EKEKWE:  Okay.  Sorry about that.  I called

her, but we have to wait.  Okay.

      SPEAKER:  Hello, ma'am?

      MS. EKEKWE:  Yes.

      SPEAKER:  She's still doing the follow-up.  Can

we call you back?

      MS. EKEKWE:  Could I give you the number where

she can call in on?

      SPEAKER:  Yes, ma'am.

      MS. EKEKWE:  Okay.  That would be (202)548 --

      SPEAKER:  Yes.

      MR. ST. CLAIR:  3822.

      MS. EKEKWE:  3822, I'm sorry.

      SPEAKER:  I got that.  Thank you so much.  I will

have Ms. Felicia call you back.

      MS. EKEKWE:  Thank you.

      SPEAKER:  Thank you, bye-bye.

      MS. EKEKWE:  Bye-bye.  Could I go out of order

and call Ms. Waambieni, who is --

      MR. ST. CLAIR:  Niliwaambieni?

      MS. EKEKWE:  Yes.

MR. ST. CLAIR:  All right.  What's the number?

MS. EKEKWE:  It's 289 --

MR. ST. CLAIR:  What's the zip?

MS. EKEKWE:  202, I'm sorry.  It's 9 -- 202-9255.

MR. ST. CLAIR:  That's not all of it.  202 --

MS. EKEKWE:  289-9255.

MR. ST. CLAIR:  Start all over again.  1 -- I mean 92 --

MS. EKEKWE:  9-202 --

MR. ST. CLAIR:  All right.

MS. EKEKWE:  -- 289-9255.  Thank you.

SPEAKER:  Good afternoon.  (Inaudible) I help you?

MS. EKEKWE:  Good afternoon.  May I speak with Mamakini (sic) Niliwaambieni please?

SPEAKER:  Can I ask who's calling?

MS. EKEKWE:  This is Olekanma Ekekwe.  We are in a hearing for a J██████ S███████.

SPEAKER:  Ms. Ekekwe?

MS. EKEKWE:  Yes, sir.

SPEAKER:  Hold on please.

MS. EKEKWE:  Thank you.

MS. NILIWAAMBIENI:  This is Makini.

MS. EKEKWE:  Yes, good afternoon.  Mamakini, this

is Ms. Ekekwe.  I'm -- we're in a hearing for J██████

S███████.  Do you have a few minutes where you can

participate in this hearing?

      MS. NILIWAAMBIENI:  Yes, I do.  Can you let me

run to my office so that I'll be by myself?

      MS. EKEKWE:  Okay, sure.  Is that okay with you,

Mr. --

      MR. ST. CLAIR:  Yes.  Ms. --

      MS. NILIWAAMBIENI:  It will just take me a few

minutes, a few seconds.

      MR. ST. CLAIR:  Ms. Niliwaambieni, this is

Herbert St. Clair.  How are you?

      MS. NILIWAAMBIENI:  Thank you, Mr. St. Clair.

I'm doing fine.  How are you?

      MR. ST. CLAIR:  Let me give you this telephone

number.

      MS. NILIWAAMBIENI:  Okay.

      MR. ST. CLAIR:  It's (202)548-3822.

      MS. NILIWAAMBIENI:  3822.

      MR. ST. CLAIR:  Yes.

      MS. NILIWAAMBIENI:  I'll call you right back.

      MR. ST. CLAIR:  All right.

      MS. EKEKWE:  Thank you, sir.  I could answer that

question.  The Department of Mental Health --

MR. ST. CLAIR:  Brief recess.

MS. EKEKWE:  Okay, I'm sorry.

(Recess)

MR. ST. CLAIR:  Ms. Niliwaambieni.

MS. NILIWAAMBIENI:  Yes.

MR. ST. CLAIR:  In the room with me and Ms. Ekekwe are Ms. Laura George, who is the attorney advisor/assistant general counsel representing DCPS.  Also here with us are Ms. Louise Simmons, who, as you probably know, is J███████ S███████ mother.  And Ms. Simmons is accompanied by two nieces?

SPEAKER:  Cousins.

MR. ST. CLAIR:  Cousins, Jada Jackson (phonetic) and Ms. Tamika Jackson (phonetic).

Whereupon,

MAKINI NILIWAAMBIENI

was called as a witness and, having been first duly sworn, was examined and testified as follows:

MR. ST. CLAIR:  Please begin, Ms. Ekekwe.

DIRECT EXAMINATION

BY MS. EKEKWE:

Q    Good afternoon.  Ms. Niliwaambieni, could you please spell your name for the record?

MR. ST. CLAIR:  You need to write this down

because you misspelt it.  Go ahead, Ms. Niliwaambieni.

      THE WITNESS:  Yes, Makini is M-a-k-i-n-i,

Niliwaambieni, N-i-l-i-w-a-a-m-b-i-e-n-i.

      BY MS. EKEKWE:

Q    Thank you.  Where do you currently work?

A    At Sunrise Academy.

Q    And what is your position there?

A    I'm the principal.

Q    Okay.  Could you please tell us a little bit
about Sunrise Academy?

A    Yeah, Sunrise Academy is a private special
education school for boys between the ages of 7 and 22.
Students who attend Sunrise have a variety of disabilities,
including ED, ED/LD, or multiply disabled OHI/LD, and ADHD,
and other combinations of disabilities.  Most of our
students have a full-time IEP where they are in need of a
full-time IEP.

Q    What type of services do you provide?

A    We provide psychological counseling at both -- at
the individual and group level for our students.  We also
provide speech-language and occupational therapy.  And we
have a physical therapist that does consultations as needed
with us.

Q    Okay.  What -- how would -- are your classes

grouped?

A    Our classes are grouped by student ages or
disabilities and ability, educational level and ability.
And so we have a class that provides services to 7 to 9-
year-olds since most of our 7-year-olds are almost 8 and
many of our 9-year-olds are somewhat immature.  We do 7 to
9-year-olds.  There are about -- we have six seats for 7 to
9-year-olds.

We have a teacher.  We have an instructional
assistant as well as a behavior staff to work with the
classes and the students.  We're in a building that doesn't
allow for students to run out of the class or out of the
building.  So there are no hallways, no stairwells to speak
of that allow students to get lost in school.

So primarily, we're pretty clear about where
students are.  And of course, we allow students to ask for
a timeout, if they learn to do that, if they need to get
out of class if they're frustrated.  So we -- our classes
are set up to allow for all of those things.

Q    Okay.  Are you familiar with the student, J████
S██████?

A    Yes, I am.

Q    Okay.  How did you become familiar with J████
S██████?

A    Well, initially, I became familiar with J▓▓▓▓ through a review of his file that was sent to us.  And then J▓▓▓▓ came in for a tour and an interview.  I did not sit and meet with him during that tour and interview.  However, I did see him while he was here and then met him later on. And I did get a chance to review his -- the documentation that we received along with our IEP coordinator and our clinical services manager.

Q    Okay.  Is -- J▓▓▓▓ is currently attending your school.  Is that correct?

A    That's correct.

Q    Okay.  And when did he start attending your school?

A    J▓▓▓▓ started last week.  He began attending -- I'm sorry.  He actually began attending in -- he just began attending in October.

Q    Okay.  And in reviewing J▓▓▓▓ record and meeting with J▓▓▓▓, do you believe that you or your school is able to meet J▓▓▓▓ academic and related services needs?

A    Yes, we did feel that way after reviewing his records.  We thought that all of us those who spoke with him during the interview and his parents and took him on the tour as well as reviewing his records and observing him

since he's been here, (inaudible) yes, he is in the right

place.

Q    Okay.  Has there been -- okay.

MS. EKEKWE:  I don't have anymore questions.

MR. ST. CLAIR:  Ms. George.

MS. GEORGE:  Yes, I have a couple more questions.

CROSS-EXAMINATION

BY MS. GEORGE:

Q    Can you hear me okay?

A    Yes, I can hear you.

Q    Okay.

MS. GEORGE:  She removed this?

MR. ST. CLAIR:  No, that's from the --

MS. GEORGE:  All right.

BY MS. GEORGE:

Q    You say that you reviewed some records in

deciding whether you could meet J█████ needs.  Can you

tell me what records you reviewed?

A    We reviewed an IEP from Stanton Elementary School

dated September 4, 2007.  We reviewed -- well, the prior

notice -- prior to action notice form that also came with

those records.  In addition to that, there were several

other documents that came, a letter from Children's and --

tell you specifically.

Q    A letter from Children's?

A    Yes, there was a letter in there from Children's
Hospital that he was staying in an emergency room.

Q    Okay.

A    And then a clinical psychological evaluation done
by Interdynamics and that was dated April 2006.

Q    April of 2006, a clinical psychological
evaluation.  Is that right?

A    Yes, clinical psychological, a psycho-educational
evaluation.  Hang on, let me just (off mike) -- something
else.  And a psychiatric eval, comprehensive psychiatric
eval, and a psychiatric eval.  Okay, one, the comprehensive
was done by Scruples Corporation and the other was done by
Interdynamics.

Q    Okay.  So who made the decision that you can meet
J█████████ needs?

A    The -- our clinical services manager and our IEP
coordinator.

Q    All right.  Did they meet J████████?

A    The -- they did not meet J███████.  They made the
decision based on the admissions coordinator's presentation
of J██████ and his parent.  And then they made the -- and
along with that as well as a review of the records.  And I
also participated in the review.

Q    All right, so -- all right.  Thank you.

A    You're welcome.

MR. ST. CLAIR:  Ms. Niliwaambieni, this is Herbert St. Clair.

THE WITNESS:  Yes, sir.

MR. ST. CLAIR:  Neither you nor anyone on your staff personally interviewed J████?

THE WITNESS:  Yes, our admissions coordinator did definitely interview J████.

MR. ST. CLAIR:  Okay.  I'm going to let her go unless you have redirect.

MS. EKEKWE:  No, I don't have anymore questions.

MR. ST. CLAIR:  All right.  Ms. Niliwaambieni, thank you very much.

THE WITNESS:  Yes, you're welcome.

(Witness excused)

MR. ST. CLAIR:  I'll tell you what we're going to do.

MS. GEORGE:  I have Iris Pulliam, SEC.  She's getting ready to go.

MR. ST. CLAIR:  All right.  Why don't you get her on the phone then.

MS. GEORGE:  Okay.  Thanks, Daniel.

MR. ST. CLAIR:  We're going to go out of order

unless -- your witness hasn't called.

      MS. EKEKWE:  Okay.

      MS. PULLIAM:  This is Pulliam.  How may I help you?

      MS. GEORGE:  Hi, Ms. Pulliam.  This is Laura George.  I'm at the hearing.

      MS. PULLIAM:  Yes, hi.

      MS. GEORGE:  Just a minute.  The hearing officer will talk to you.

      MR. ST. CLAIR:  Ms. Pulliam, this is Herbert St. Clair, the hearing officer.

      MS. PULLIAM:  Yes, Mr. St. Clair.

      MR. ST. CLAIR:  In the room with myself and Ms. George are Ms. Olekanma Ekekwe.  She represents J███ S██████ and his mother, Ms. Louise Simmons.  Ms. Simmons is here.

      MS. PULLIAM:  Okay.

      MR. ST. CLAIR:  And cousins of Ms. Simmons are here with her, Ms. Jada Jackson and Ms. Tamika Jackson.

      MS. PULLIAM:  Okay.

      MR. ST. CLAIR:  Ms. Pulliam, first I want to make sure I'm spelling your name correctly.  Iris, I-r-i-s, Pulliam, P-u-l-l-i-a-m.

      MS. PULLIAM:  That's correct.  You said P as in

Paul, right?

        MR. ST. CLAIR:  Yes.

        MS. PULLIAM:  Okay.

        MR. ST. CLAIR:  All right.

Whereupon,

                    IRIS PULLIAM

was called as a witness and, having been first duly sworn,

was examined and testified as follows:

        MR. ST. CLAIR:  Please begin, Ms. George.

        MS. GEORGE:  Thank you.

        DIRECT EXAMINATION

        BY MS. GEORGE:

Q    Ms. Pulliam, can you tell me your occupation?

A    I'm special education coordinator at M.C. Terrell

Elementary School as well as clinical social worker.

Q    All right.  And are you familiar with the

student, J█████ S███████?

A    Yes, I am.

Q    Can you tell me how you're familiar with him?

A    He is a student in our special education program

for emotionally disturbed students here at M.C. Terrell.

Q    Okay.  And when -- he was placed at M.C. Terrell

September 4, 2007.  When did he begin attending?

A    I'm not exactly certain of the exact date that he

began attending.  I can check with our attendance office

(inaudible) if you'd like.

      Q    You -- no, don't bother right now.

      A    Okay.

      Q    Thank you.  Can you -- you're familiar with

J████████ IEP, right?

      A    Yes.  Can you hold on one second?

      Q    Sure.

      A    All right.

      Q    All right.  Can M.C. Terrell implement J████████

IEP?

      A    Yes, we can.

      Q    Can you talk about that a little bit?

      A    J████████ IEP states that he requires 26 hours of

specialized instruction and also requires that he received

1-1/2 hours of psychological services.  We can provide both

of those services as we have the special education teachers

here full time as well as we have a school social worker

and school psychologist here on staff full time.  They are

aware of the IEP and they are able to implement it to its

full capacity.

      Q    All right, thank you.  Now, J████████ mother is

here and she describes a couple of incidents at the school.

She asserts that the police were involved.  Do you know

about these incidents?

A    I have heard of them, but that is only through
hearsay.  So I can't testify to actually what occurred with
those incidents.

Q    Were any teachers at your school charged with
anything by the police as far as --

A    As far as I know, no.

Q    Okay.  When J█████ arrived at the school,
initially, were there some behavior problems?

A    Yes.

Q    Okay.  Did -- after he was there for a while, did
those resolve?

A    I'm not going to say they resolved because --

Q    Okay.

A    -- that remained as -- all of them had
disappeared.

Q    Okay.

A    But they -- he'd made progress.

Q    He did.

A    Some of those behaviors weren't displayed as
frequently as they were initially.

Q    All right.  So he was making progress.  And then
at some point, did his mother stop bringing him to Terrell?

A    Now, my -- I have realized that recently and was

informed by the bus attendant that he was no longer going to be attending M.C. Terrell. And the bus attendant further informed me that he was going to be attending another school because he was trying to get information from us. And I think the mother or no one else has informed us that J█████ has been enrolled in another school.

(Inaudible), our attendance officer who's, you know, in charge of all the enrollment procedures and withdrawal procedures, nothing officially had been done through our attendance office here at the school. But we were told through the bus driver that he would be attending another school.

Q    All right. Is there anything else that you think is important that we hear about this case?

A    I think that we are fully capable of implementing his IEP to the fullest. We were seeing some progress with J█████ here. He had started, you know, improving and mastering -- you know, working on some of the goals that were on his IEP. And I guess our concern for J█████ would be, you know, the transition again. You know, he was in one school at the beginning of the school year, then he tried -- left Stanton and came to us, and now going to another school again. This is a lot of transition for the

student.  Here we work for the best interest of the

student.  So we know -- that would be our concern that he

had a smooth transition from Stanton to here.  And if the

side that he goes over, that he has a smooth transition

from here to there.

      Q    All right, thank you.  I think now Ms. Ekekwe

will have some questions for you.

      A    Okay.

      MR. ST. CLAIR:  Ms. Ekekwe.

      CROSS-EXAMINATION

      BY MS. EKEKWE:

      Q    Good afternoon, Ms. Pulliam.

      A    Good afternoon, Ms. Ekekwe.

      Q    Have you -- did you ever meet Ms. Eloise Simmons?

      A    Did I ever meet her?

      Q    Yes.

      A    I saw her but I don't think I ever officially met

her.

      Q    Okay.

      MR. ST. CLAIR:  Did you ever have a conversation

with her?

      THE WITNESS:  I don't recall.

      MR. ST. CLAIR:  Excuse me, Ms. Ekekwe.  Go ahead.

      MS. EKEKWE:  Okay.

BY MS. EKEKWE:

Q    How often are you at M.C. Terrell?

A    Everyday.

Q    Okay.

A    Unless I'm on leave.

Q    Okay.  And your sole job is to do IEP and MDT meeting?

A    Is that my sole job, no.

Q    Okay.  What are your duties?

A    I am the special education coordinator as well as a clinical social worker.  I manage the special education records and also provide (inaudible) counseling to the students.  I do schedule IEP and MDT meetings, various other (inaudible) that are required of me here at the school.

Q    Okay.  Did you ever schedule a crisis intervention for J█████?

A    Did I schedule one?

Q    Yes.

A    You don't schedule crisis intervention.

Q    Well, did you ever hold a crisis intervention for J█████?

A    Okay, I don't -- your terminology says that I hold a crisis intervention.  I have worked -- I worked with

J█████ during the time when he may have been in crisis if
that's what you're asking me.

Q    How --

A    -- deescalate some of his behaviors.  But I don't
understand when you say, "schedule a crisis intervention."

Q    Okay.  How often did you have to do that?

A    I don't recall how often I had to do that because
I am not his primary counselor or his provider.

Q    Okay.  Just for the purpose of crisis
intervention, how often were you involved in a crisis
intervention with J██████?

A    I don't recall how often I was involved.

Q    Okay.  Do you know if J█████ had seen a counselor
at M.C. Terrell, a social worker?

A    J█████ would have seen -- he was in this -- he
would have seen the social worker here at the school, yes.

Q    But did he --

A    Ms. Burns (phonetic) would have been his primary
therapist here at M.C. Terrell.

Q    You're saying Ms. Burns?

A    Yes.

Q    Is Ms. Burns full time at M.C. Terrell?

A    Yes, she is.

Q    Okay.  Do you know where she was before she came

to M.C. Terrell?

A    She was at another program for emotionally
disturbed students.  But I -- and you can check with Human
Resources at 825 North Capitol to find her exact location
or her exact assignment.

Q    Okay.  But you don't have any knowledge whether
Ms. Burns have given counseling to J██████.

A    Pardon me?

Q    You don't have any knowledge as to whether or not
Ms. Burns gave services to J█████.

A    The knowledge that I would have is that she has
him scheduled to see her according to his IEP.  And with
her being here everyday, that she would have provided the
counseling intervention to him according to his IEP.

Q    So -- but you don't know for sure whether she did
or not.

A    I would not testify as to whether or not she did
or not.  No, I'm not going to testify that she did or she
did not.  I know she's scheduled to see him for an hour and
a half per week.

Q    Okay.  Do you know who Ms. -- who J███████
teacher is?

A    His teacher would have been Mr. Felder and Ms.
Davidson.

Q    Okay.  Was there ever any report made to you as the crisis intervention person of a incident between J███████ and Mr. Felder?

A    No report was made to me, no.

Q    Okay.  And I understand your prior answer to me that you have not had any meeting with Ms. Simmons concerning her son.

A    I don't recall having a meeting with Ms. Simmons, no.

Q    Okay.

A    I may have spoken with her in passing in the hallway or something like that.  But as far as a formal or official meeting, no, I don't remember ever having one with Ms. Simmons.

Q    Okay.  Have you seen J███████ in his classroom?

A    Yes, I have seen him in his classroom.

Q    And how was he performing in his classroom?

A    When I observed him in the classroom, I wasn't there just specifically to observe him.  He was sitting at the desk and he was on task.

            MS. EKEKWE:  Okay.  No more questions.

            MR. ST. CLAIR:  Ms. Pulliam.

            THE WITNESS:  Yes.

            MR. ST. CLAIR:  This is Herbert St. Clair.  The

IEP that you were implementing for J██████ is dated March 26, 2007.

THE WITNESS:  No, the IEP that I am implementing is dated September 4, 2007.

MR. ST. CLAIR:  Oh, okay.  What is the disability coding on that?

THE WITNESS:  The disability coding on that is OHI of the health impaired.

MR. ST. CLAIR:  Okay.  Now, if you can implement an IEP for a student whose disability code is OHI?

THE WITNESS:  Yes.

MR. ST. CLAIR:  All right.  Now, you can deliver the --

Do I have an IEP?

THE WITNESS:  Pardon me?

MS. EKEKWE:  Well, that will be JS2.

MS. GEORGE:  It's right after the complaint in her disclosures.

MR. ST. CLAIR:  Oh, I got it, okay, all right.

You can deliver 26 hours in a specialized instruction?

THE WITNESS:  Yes.

MR. ST. CLAIR:  And you can deliver 1-1/2 hours to a social worker counseling?

THE WITNESS:  Yes.

MR. ST. CLAIR:  Now, it says academics, reading.
Are you familiar with that?  Can you implement that?

THE WITNESS:  Yes, but not me personally, but
I'll forward them, yes.

MR. ST. CLAIR:  Yes, okay.  When I say, "you," I
mean the program --

THE WITNESS:  Okay.  I just wanted to make sure.

MR. ST. CLAIR:  You all at M.C. Terrell --

THE WITNESS:  Okay.  That's fine.

MR. ST. CLAIR:  All right.  What about academics,
written expression, can you do that?

THE WITNESS:  Yes, we can.

MR. ST. CLAIR:  Academics, mathematics?

THE WITNESS:  Yes.

MR. ST. CLAIR:  Social and emotional.

THE WITNESS:  Yes.

MR. ST. CLAIR:  Okay.  Now, let me ask you this.

THE WITNESS:  Okay.

MR. ST. CLAIR:  There is some concern with this
setting, Ms. Simmons described the school as "open-space,"
is that accurate?

THE WITNESS:  No, it's not.

MR. ST. CLAIR:  How would you describe the
setting?

THE WITNESS:  The setting that J▮▮▮▮ was placed is a self-contained classroom.  The program that he is entered the MCT Center which is a full-time program for emotionally disturbed students.  It is located on our third floor.

But all the classrooms here, except the art area, is self-contained.  You have to go through a steel door to get through the MCT Center, as well as the other three classrooms that are up here are self-contained.  The school was an open-space school prior to our merging with another school.  Walls have been built, but he is not even on the floor that, that would even have anything to do with him.  So he was in a self-contained classroom setting not an open-space setting.

MR. ST. CLAIR:  Now, you say he is in a classroom with -- I mean, he's coded OHI.

THE WITNESS:  Yes.

MR. ST. CLAIR:  Is he the only student coded OHI in his class?

THE WITNESS:  I am not certain right now, but most likely not.

MR. ST. CLAIR:  And you are saying that the program at this class can implement an IEP for a student who is OHI coded?

THE WITNESS:  Yes.

MR. ST. CLAIR:  And he is in a self-contained room, with how many other students?

THE WITNESS:  There are eight students in the classroom exclusive of him, with a teacher and a fulltime paraprofessional.

MR. ST. CLAIR:  All right, so it's roughly two to four?

THE WITNESS:  Two to four, yes.

MR. ST. CLAIR:  Two teachers, two professionals to four students?

THE WITNESS:  Yes.

MR. ST. CLAIR:  Ms. Ekekwe.

MS. EKEKWE:  Yes.  I have a follow-up.

RECROSS EXAMINATION

BY MS. EKEKWE:

Q    Does J██████ eat lunch with general population?

A    No, he does not.

Q    Does he take out with the general population?

A    No, he does not.

Q    The two incidents that you said that you heard about, do you know where it occurred?

A    I am sorry, I don't know what evidence you are referring to?

Q    The incident involving J██████?

MS. GEORGE:  I am going to object.  She didn't say she had heard of two incidents.  So maybe you just need to rephrase the question.  You should tell her.

MR. ST. CLAIR:  Ms. George, what is your objection to --

MS. GEORGE:  Ms. Ekekwe has stated that Ms. Pulliam said that she is aware of two incidents.  She didn't testify that she is aware of two incidents.

MR. ST. CLAIR:  Well, I don't know if that's an objection.  What you have to do is clear that up with the --

MS. GEORGE:  It's a foundation objection, of it --

MR. ST. CLAIR:  All right.  Okay.  Foundation objection, all right.  Would you lay a foundation please Ms. Ekekwe.

BY MS. EKEKWE:

Q    Ms. Pulliam, on cross-examination you stated that you were involved with J██████ during that crisis period, is that correct?

A    I said that I had seen him through that crisis, yes.

Q    Oh, you had seen him, but not provide services?

A    I couldn't hear you -- you kind of bleeped out

Q    Did you say you provided services during that crisis period?

A    Yes, I have probably seen him doing a -- doing a (inaudible) with the crisis.  Yes I have seen him.

Q    Okay.  Where did that crisis occur?

A    In the small cafeteria.

Q    In the small cafeteria, and where is that located?

A    It is located on the first floor.

Q    And his program, you testified is on the third floor.

A    That is correct.  The cafeteria is located on the first floor where he has lunch.

Q    Okay.  How does one get to the -- how would the student get to the first floor from the third --

A    They will walk down the steps.

Q    Does that past the general educational setting?

A    No, the steps are in -- you know, they -- just like regular steps they are in the hall, no they don't go either of the classrooms no.  Is that what you are asking me?  He does not come in to contact with the general ed population going down the steps to the cafeteria.

Q    But then you said the general ed is on the second

and the first floor.

    A    Okay.  On our first floor the upper ground level there is early childhood up above the main office, on the first floor, and the second floor, are the general ed population.

    Q    Okay.

    A    On the third floor is the special education population.

    Q    So from third floor, to second floor, to first floor he has to pass the second floor.

    A    He goes down the steps, yes, but there is a door, he has to go to out by the steps to get to the second floor.

    Q    Okay.  And who else had access to the cafeteria where the incident occurred?

    A    The staff of the MCT Center, the custodial staff, the administrative staff, the students in his classroom.

    Q    And this was the only classes that you were part of this one time?

    A    That's the only one, that I can recall working with J█████ on, yes.

    Q    You mentioned there was a paraprofessional, do you know what the qualifications of the paraprofessional in the class?

A    No, I do not, you can check with human resource in records for that.

Q    You mentioned there was a general education teacher in the class, is the general education teacher certified?

A    I didn't say there was a general education teacher in the classroom.

Q    Is he in a classroom without a general education -- with out a special -- I am sorry.  You mentioned, okay. I'll rephrase that.  Does the special education teacher in the classroom that you mentioned that J▆▆▆ was in, is that correct?

A    That is correct.  There is a special education teacher in his classroom.

Q    Do you know the qualification of that special ed teacher?

A    You have to check with human resources for that information.

Q    Do you whether or not the teacher is certified?

A    You would have to check with human resources for that information.

Q    You testified that J▆▆▆ was making progress, how did you account for the progress, what was the --

A    My informal observations of J▆▆▆ is how I

account for the progress.  The improvement of his

interaction with his peers, in the cafeteria during

transition, and in the classroom setting, where I had

observed him, when I go into the classroom when I have duty

in the cafeteria in the mornings, and then in the

afternoons, and at recess.  Those were the informal

observations that I had made of J██████ improvement.

    Q    So am I to take it that you changing your

testimony that you observed him -- you had interaction with

him in this one-time crisis center and you observed him

one-time in the classroom.  Is that a change of your prior

testimony?

    A    What that I observed him one time in the

classroom?

    Q    Yes.

    A    I am in and out of the classrooms all the time,

and when I go into the classroom I observe all the students

there.  I don't go in to do a formal observation.  But in

going in the classroom and observing all the children

having duty with the children at recess, and at lunch, and

at breakfast, I can make informal observations to see how

they interact with their peers, how, you know, they are

having friendly conversation -- if they are withdrawn, if

they are aggressive, if they are impulsive, I can see those

things with children when I do see them.  Now, I am not

going to say that I just saw him one time or I saw him 20

times or I saw him 15 times.

Q    So how would you --

A    -- because it was informally -- I have been doing

an informally observation of him.

Q    I don't have any more question -- for this

witness.

MR. ST. CLAIR:  Any redirect, Ms. George.

REDIRECT EXAMINATION

BY MS. GEORGE:

Q    I just have one or two more questions on

redirect.  You -- if a student is having a behavioral issue

you will hear about it, correct?

A    Yes, I should hear about it.

Q    Special education student?

A    I am going to say the majority of the time, yes,

I will be informed of the behavioral problem.

Q    Okay.  So early on when J████ was there, you

were aware of some behavioral problems, is that correct?

A    Yes.

Q    And then overtime you heard less about --

A    Yes.

Q    Okay.  That is my question.  Thank you.

A      You're welcome.

MS. GEORGE:  I think we are all said here.

MR. ST. CLAIR:  Ms. Pulliam.

THE WITNESS:  Yes, Mr. St. Clair.

MR. ST. CLAIR:  I am going to have to tell you
that I am concerned about J███████ OHI classification in
Terrell being a -- Terrell is coded program for emotional
disturbed children, right?

THE WITNESS:  Yes.

MR. ST. CLAIR:  What I am going to ask you to do,
and I am going to ask you to provide this to Ms. George, I
want this submitted post-hearing, and I want to know
exactly how many students are there and how many students
are coding OHI only?

THE WITNESS:  You mean in his classroom?

MR. ST. CLAIR:  Well, in his classroom, and in
the Terrell Center.

THE WITNESS:  Okay.

MR. ST. CLAIR:  Because I am thinking.  I mean,
have heard of children being OHIED.

THE WITNESS:  Uh-huh.

MR. ST. CLAIR:  You know, or EDOHI, but he is in
a emotionally disturbed program and he is only coded OHI,
right?

          THE WITNESS:  According to his IEP that is

correct.

          MR. ST. CLAIR:  Right, I want to know a

definitive answer to that question.  All right?

          THE WITNESS:  Yes.

          MR. ST. CLAIR:  I am going to let Ms. Pulliam go.

          MS. GEORGE:  What's the question again you want

to know, how many students are coded OHI at Terrell?

          MR. ST. CLAIR:  yes.

          MS. GEORGE:  That's the question.

          MR. ST. CLAIR:  Yes.

          MS. GEORGE:  Okay.

          MR. ST. CLAIR:  Because the program is a program

for emotionally disturbed children.  And if this has ED on

it either as primary disability coding on the secondary

disability coding I wouldn't have any problems.

          MS. GEORGE:  Okay.

          MR. ST. CLAIR:  But I want to know how many

children are there, who are OHI coding only.

          MS. GEORGE:  Okay.

          MR. ST. CLAIR:  You understand the question

right, Ms. Pulliam?

          THE WITNESS:  Oh I understand the question.

          MR. ST. CLAIR:  All right.  I am going to let Ms.

Pulliam go ladies.

        Ms. Pulliam.

        THE WITNESS:  Yes.

        MR. ST. CLAIR:  Thank you very much.

        THE WITNESS:  Thank you.

        MS. GEORGE:  Thank you.  Bye-bye.

        THE WITNESS:  Okay.  Bye-bye.

        MR. ST. CLAIR:  Enjoy your Thanksgiving.

        THE WITNESS:  Same to you.

        MR. ST. CLAIR:  All right.

        THE WITNESS:  Okay.  Bye-bye.

        MR. ST. CLAIR:  Bye-bye.  Is that it, Ms. George?

        MS. GEORGE:  Yes.

        MR. ST. CLAIR:  All right, and you want to try to

get your --

        MS. EKEKWE:  Yeah, I could try one more time if

that's okay.

        MS. GEORGE:  I can dial.

        MS. EKEKWE:  Okay.  729.

        MS. GEORGE:  9 202?

        MS. EKEKWE:  Uh-huh.

        MS. GEORGE:  729.

        MS. EKEKWE:  729 1472

        MS. GEORGE:  1472.

MS. EKEKWE:  Yes.

MR. ST. CLAIR:  Well, how did you do that you dial --

MS. GEORGE:  You don't dial a one.  You dial 9 --

SPEAKER:  This is operator, how can I help you --

MS. EKEKWE:  Yes.  May I speak with Ms. Felicia please?

SPEAKER:  Ms. Felicia is not here.

MS. EKEKWE:  Okay.  Do you have her cell number?

SPEAKER:  I did.  Hold on please.

MS. EKEKWE:  Okay.

MS. GEORGE:  So you dial 9 and the area code.

MR. ST. CLAIR:  Yes.

MS. GEORGE:  You don't dial a one first.

MR. ST. CLAIR:  Well, you don't dial one.

MS. GEORGE:  And then oh you actually you put the number and then you hit dial it shows up down here and you hit one of the buttons

MR. ST. CLAIR:  Oh.  Well, how did you start because when I press speaker the (inaudible) came right up.

MS. GEORGE:  Oh, I don't know what I did.

SPEAKER:  Hello ma'am.

MS. EKEKWE:  Yes.

SPEAKER:  Can I take your name and telephone

number and have her call you?

        MS. EKEKWE:  Oh well, that's okay.

        MR. ST. CLAIR:  Well, wait a minute.  Maybe you can.  Listen the telephone number is (202)548 3822.

        SPEAKER:  Okay. And your name, sir?

        MS. EKEKWE:  My name is Herbert St. Clair.  I am the hearing officer.  Ms. Ekekwe is trying to arrange a private placement, and she needs the testimony of Ms. --

        MS. EKEKWE:  Felicia.

        MR. ST. CLAIR:  -- Felicia.  So it's relatively important.

        SPEAKER:  I don't think --

        MS. EKEKWE:  Well, I am certain to the parent and his child it is very important.

        SPEAKER:  Very important testimony.  Okay.

        MR. ST. CLAIR:  All right.

        SPEAKER:  Thank you.

        MR. ST. CLAIR:  How many minutes was --

        MS. EKEKWE:  Can we give her 3 to 5 minutes and --

        MR. ST. CLAIR:  Then we should briefly recess.  No, before I go off, let me just say -- you asked for what -- four hours?

        MS. EKEKWE:  I am sorry?

MR. ST. CLAIR:  How many hours did you ask for?

MS. EKEKWE:  I asked for two.

MR. ST. CLAIR:  Two hours.  It's after 3:00 now.

MS. EKEKWE:  Okay.

MR. ST. CLAIR:  I go back on the record at --

let's give her 10 minutes -- that's reasonable, Ms. George?

MS. GEORGE:  She only asked for 5.

MS. EKEKWE:  Yes.

MR. ST. CLAIR:  I guess I am more than

reasonable.

MS. GEORGE:  I guess you are.

MR. ST. CLAIR:  Five -- 10 minutes ladies.

MS. GEORGE:  All right, thank you.

MS. EKEKWE:  Okay.

(Recess)

Whereupon,

FELICIA NORMAN

was called as a witness and, having been first duly sworn,

was examined and testified as follows:

MR. ST. CLAIR:  Please begin, Ms. Felicia Norman.

DIRECT EXAMINATION

BY MS. EKEKWE:

Q    Ms. Norman.

A    Yes.

Q     Can you -- okay, if you can't hear me just say --
let me know so I can speak up.  Where do you work?

A     At Scruples Corporation.

Q     What is that?

A     It is a behavioral management facility.

Q     Okay.  What type of services do you provide?

A     Provide case management, community support.  The
company also provides medication monitoring as well.

Q     Okay.  Which agency funds Scruples Corporation?

A     I'm sorry can you repeat that?

Q     When you provide a service to the customers, who
pays you?

A     Scruples pays me.

Q     Okay.  And then who pays Scruples for the
services?

A     At this time I cannot answer that question.

Q     Okay.  All right.  Are you familiar with the
student J██████ S███████?

A     I have not met that young man.  I've only met his
mother.

Q     Okay.  And how -- when did you meet the mom?

A     I met the mother inside Scruples, I believe,
Thursday -- Wednesday -- probably Tuesday.  Tuesday, I
believe.

MR. ST. CLAIR:  Ms. Ekekwe, if she hasn't met the child -- if she -- no, if she hasn't met the child, she hasn't evaluated the child, what -- how can she say anything?

MS. EKEKWE:  Well, I'm going to ask if she has institutional knowledge, because the child has been going (inaudible).

MR. ST. CLAIR:  But she says she's never met (inaudible).

MS. EKEKWE:  Okay.

BY MS. EKEKWE:

Q     I'm -- maybe this will make the decision whether we can ask you any more questions.  How long have you been on J███████ case file?

A     I just started with it probably this Monday -- no, no, excuse me, Friday of last week, and not Monday of this week.

Q     Okay.  And who did you takeover from?

A     Mr. William Taylor.

Q     Okay.  And Mr. William Taylor was the prior service provider?

A     I want to say, but I cannot say at this time.  I believe so.

Q     Okay.  Well, all right.  No more question.

A    No more?

Q    Yeah, no more.

A    Okay.  Thank you.

    MR. ST. CLAIR:  Thank you, Ms. Norman.

    THE WITNESS:  Bye, bye.

    MS. GEORGE:  I don't have any questions either.

    (Witness excused)

    MR. ST. CLAIR:  Okay.  I'm surprised.

    MS. EKEKWE:  I'm surprised, she told me she reviewed the file and she met the family.

    MR. ST. CLAIR:  Yeah.  Well, she said that she met Ms. Simmons.  I'm not going to place Ms. Simmons at Sunrise.

    MS. EKEKWE:  Yeah, I know.

    MR. ST. CLAIR:  All right.  Okay.  That -- next witness, Ms. Ekekwe.

    MS. EKEKWE:  I don't know if I can reach Mr. Young (phonetic) who was the social worker of BHS (phonetic).  So I don't have any more witnesses right now.

    MR. ST. CLAIR:  That brings us to argument, ladies.  First and last word, Ms. Ekekwe.

    MS. EKEKWE:  We request that the hearing officer order DCPS to fund us a placement at Sunrise Academy. Joseph is a student that requires a fulltime setting in an

LD program receiving 26 hours of specialized instructions. We have as part of our submission documents 1 through 14. The IEP calls for fulltime special ed services as well as 1-1/2 hour of social emotional counseling.

J████ -- we also as part of our disclosure we have J██████ evaluation, the psycho educational -- the psychiatric evaluation as well as the clinical evaluation which indicates J██████ disability and the need for a therapeutic setting.  Parents have testified that J█████ was experiencing academic difficulties at prior school, which was Stanton and also at M.C. Terrell, the school that he was placed by DCPS.  And after trying to get assistance from the school she placed her child at Sunrise Academy School that she believe will provide the appropriate services for her.

Prior to placing her child at Sunrise Academy she informed D.C. Public School that she will be doing -- placing her child at Sunrise Academy at their expense because they have not provided the services that J██████ need.

Also as part of our disclosure there is a hearing order which require that -- that was issued on February 21, 2007, which require DCPS to provide services, appropriate services, convene an IEP meeting, provide appropriate

intervention planning and counseling services to J██████ and also to develop and implement compensatory education.

Parent believes that DCPS has not provided appropriate services to her child. By her testimony she indicated that her child was experiencing behavioral problem and that the school principal and the teacher were aware of the problem that the child was experiencing at the school and yet appropriate services were not provided.

There is a testimony from -- of Iris Pulliam who is the special ed coordinator who testified to be in one incident, and hearing about other incident, but she did not have any knowledge about the incident that occurred.

Based on the testimony of the witnesses that have testified it's apparent that at M.C. Terrell appropriate services were not being provided because the service providers were even not aware of the events that were taking place in J██████ life while he is at the school, or they choose to ignore.

While at Sunrise Academy, parent testified that J█████ has started making progress, and she has not received any calls. The director or the principal of Sunrise Academy has planned a program that they have -- program that are based on both on age and as well as both based on the disability and ability of the child, and that

they don't have more than six student in -- they have seat

for six students for the class that J█████ will be in.  The

parent having been to the school and observed that there

were only four students in that class, four student with

two adults and a behavioral specialist.

We ask that the hearing officer find that Terrell

cannot meet J████████ academic and related services needs.

And order that DCPS fund placement at Sunrise Academy.

MR. ST. CLAIR:  Ms. George.

MS. GEORGE:  Initially, in the closing argument

Ms. Ekekwe has talked about a prior hearing officer's

decision, and there is no allegation in the complaint that

DCPS is in violation of the prior HOD.  So I would argue

that that's not a matter before us today.  Turning to the

matters that are before us today and going back to the

complaint, there was an allegation that the IEP placement

meeting was not properly convened or conducted.  There is

no evidence of that whatsoever.  Another allegation was

that DCPS was required to conduct a manifestation

determination review.

According to CFR 300.530(e) such a manifestation

determination and review must occur within 10 days of

change of placement.  And a change of placement is defined

by CFR 500.536 as a suspension for 10 days or more.  There

has been no evidence of any suspension of 10 days or more.
Getting to the real crux of the matter here I think is the
-- is this third claim which is that DCPS provided
inappropriate placement for J█████ at M.C. Terrell. We
issued a notice of placement, a written notice of
placement. The parent objected at the time that was
provided initially without the student having ever been
there, without any attendance whatsoever.

The student began attending M.C. Terrell, and
almost simultaneously the mom was at the school and
according her own testimony was going through the halls,
was walking to classrooms, as she said, on a regular basis,
and perhaps daily. The student nonetheless, while he was
at M.C. Terrell, did make some progress, as Iris Pulliam
the SEC at Terrell testified. Nonetheless, although he was
making progress the mom removed him from M.C. Terrell and
put him in Sunrise.

Iris Pulliam also testified that she is familiar
with J█████ IEP and that the staff at M.C. Terrell can
implement that IEP. There has also been an allegation that
at M.C. Terrell a teacher or more than one teacher has
abused J█████. The mom testified that she has heard of
some incidents, and she testified that there was some
police involvement, and I find it very curious that there

is no police report, that there is no evidence of any kind
that the police found these teachers guilty of abusing a
student, that's a very serious matter.  And if they did any
investigation which Ms. Simmons pointed out that they were
going to do I'm sure if there was any documentation that
there was any abuse, or any inappropriate touching, that
there would be some documentation, and there is not any.

There is also an allegation that the student,
that J█████ S█████████ cannot obtain an appropriate education
at Terrell because there are other family members at the
school.  There has been no testimony whatsoever -- no
evidence whatsoever that there even are any family members
at the school.  And I would also argue that -- well, there
is no evidence in regard to that allegation at all.

So finally, I would argue that pursuant to that
IDEA DCPS is required to provide a free appropriate public
education, and that petitioner has failed to demonstrate
that they cannot do that at M.C. Terrell.

MR. ST. CLAIR:  Last word, Ms. Ekekwe.

MS. EKEKWE:  Yes.  Based on the IDEA DCPS is --
has the position to, is required to provide appropriate
public free appropriate education that is tailored to the
child.  In this instance DCPS placed J█████ at M.C. Terrell
which is an ED setting, J█████ is an LD student --

classified as an LD student.  Parent has testified, and

DCPS through the -- one witness acknowledged that there

have been crisis period with J█████ at the school.  Clearly

indicated that they're not providing the right services,

and -- for this child, that the program that they have in

place for J█████ is -- at this school is not favorable to

J█████ -- to meet J█████ need.

Secondly, as to the NDR (phonetic) 10 days prior,

parents indicated that she received calls every day about

incident at the school, but they refused to suspend this

child, and this is just another way to overcome having to -

- to hide from having to do a manifestation meeting to deal

with the issue of change in placement.

As to having a placement meeting, since the

initial IEP was developed on September 4th there has not

been a team meeting to discuss the parent's concern about

the placement, and to issue placement for this child.  As

(inaudible) for the placement prior notice that was issued

as part of the NDT meeting with -- if you will note in our

disclosure, it indicated this is what DCPS will provide

without any indication as to why this setting was chosen

except to say this is the neighborhood school, and it has

an ED setting, and it would provide fulltime special

education services for the child.

I urge the hearing officer to find that the special education coordinator should not be found credible in her testimony to say that she is aware that J████ is making progress when -- on direct.  And on cross examination she testified that she did not have any knowledge of the incident, but she heard of it.  And she did not know that the student was no longer attending the program except for when the bus driver indicated that the student will no longer be attending the program.

And her review recently just indicated there has not been any withdrawal, and she could not testify whether or not social emotional services were being provided to J████ while he is at M.C. Terrell.  And she could not indicate whether or not the special ed teacher that was part of that program is certified or not certified.  And she could not testify as to what services J████ has been receiving, or what services J████ has not been receiving. I urge that the hearing officer will find that testimony not credible.

Under the IDEA the child is supposed to receive individualized education plan that is tailored to meet his specific needs.  From testimony, and from the record, it is obvious that DCPS has not provided the services that are tailored to meet the specific needs or the placement that

are tailored to meet the specific need of J███ S███████.

        The reason why the HOD was mentioned, and was also disclosed as part of this is to indicate that DCPS has been in continual violation of providing free and appropriate public education to this child.  And we are asking that the hearing officer find that DCPS is in violation, and order DCPS to fund placement at Sunrise, a school that is providing the services, and a school that the parent said since the child was placed at the school there has not been an incident that involved his academic or his behavior.

        There was a call that he was late for school, and the principal --

        MS. GEORGE:  That's not in evidence, is that?

        MS. EKEKWE:  Yes, that is in evidence.  That was --

        MR. ST. CLAIR:  Just a minute.  Counsel are not to talk to each other.  There has to be no objection during argument.

        MS. GEORGE:  During closing argument?

        MR. ST. CLAIR:  No objection.

        MS. GEORGE:  Okay.

        MR. ST. CLAIR:  Go ahead.

        MS. EKEKWE:  Parent testified that they -- she

received one call that he was late to school, one time.
And Makini Waambieni testified that J██████ has been at this
school since October and has not had any incident at this
school, and he is making progress.  We request that the
hearing officer order DCPS to fund J██████ placement at
Sunrise Academy.  Thank you.

      MR. ST. CLAIR:  Ladies, thank you very much for
your patience.  Enjoy the holiday.  I'm going to close the
record.  Give the hearing officer 10 days.  Thank you.
Thank you.

      MS. GEORGE:  Okay.  With regard to the record, do
you want an answer to a question though?

      MR. ST. CLAIR:  Yes.

      MS. GEORGE:  To be provided in what form --

      MR. ST. CLAIR:  Just to my attention just tell me
how many children at the M.C. program that are OHI coded
only.

      MS. GEORGE:  Only -- to the student hearing
office and to -- or just the student hearing office
directed to you.

      MR. ST. CLAIR:  Right.  Thank you, Ms. Ekekwe.

      MS. GEORGE:  Okay.

      MR. ST. CLAIR:  Thank you.

      MS. GEORGE:  Thank you.

MR. ST. CLAIR:  Record is closed.  Oh, wait a
minute.  You should be able to give that to me by how long?

MS. GEORGE:  Monday.

MR. ST. CLAIR:  Let's give you Wednesday.

MS. GEORGE:  Oh, okay, good.

MR. ST. CLAIR:  Wednesday.

MS. GEORGE:  You are generous.

MR. ST. CLAIR:  All right.  Thank you, record is
closed.

MS. EKEKWE:  Thank you.

(Whereupon, the HEARING was adjourned.)

*   *   *   *   *