## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOISE SIMMONS, mother and next friend of J.S., a minor, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 08-0388 (JR) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, and LCvR 56.1, Defendants here move for summary judgment in this matter, and also oppose Plaintiff's August 11, 2008, Motion for Summary Judgment ("Pl. Mot."). As shown in the accompanying memorandum of points and authorities, Plaintiff's challenge to the administrative hearing officer's determination ("HOD") in this case lacks merit, and the HOD should be upheld by this Court. A statement of material facts as to which there is no genuine issue, a response to Plaintiff's statement of material facts and a proposed order are also attached hereto.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Juliane T. DeMarco**
JULIANE T. DEMARCO
Assistant Attorney General
Bar Number 490872
441 Fourth Street, N.W., Sixth Floor
Washington, D.C. 20001
(202) 724-6614
(202) 741-0575 (fax)
September 5, 2008    E-mail: Juliane.DeMarco@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
ELOISE SIMMONS, mother and              )
next friend of J.S., a minor,           )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )    Civil Action No. 08-0388 (JR)
                                        )
DISTRICT OF COLUMBIA, *et al.*,         )
                                        )
        Defendants.                     )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff appeals a December 3, 2008, administrative decision issued by a hearing

officer pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et*

*seq.* ("IDEA").  At issue in this case is whether the District of Columbia Public Schools

("DCPS") denied the student a free appropriate public education ("FAPE") by not

providing an appropriate school placement for the student.  As Defendants will

demonstrate below, the proposed placement provided the student with a FAPE as

required under the IDEA.

Under the IDEA, disabled students are entitled to a FAPE.  20 U.S.C §

1412(a)(1).  An "IEP" team, consisting of the disabled student's teachers, parents and

other educational specialists, meet and confer in a collaborative process to determine how

best to accommodate the needs of the student to provide a FAPE.  20 U.S.C.

§1414(d)(1)(B).  The team develops an individualized education plan ("IEP"), which is a

written statement that includes, among other things, goals and instructional objectives,

services to be provided, projections regarding the dates when such services will be

offered, and criteria for evaluating whether instructional objectives are being met. 20

U.S.C. §1414(d)(1)(A); 20 U.S.C § 1401(14).

A team which must include the student's parents must make decisions regarding

the student's educational placement. 20 U.S.C. § 1414(e); 34 C.F.R. § 300.116. The

placement must be the least restrictive environment ("LRE")—whenever it is possible,

children with disabilities should be educated with children who are not disabled. *Id.*

Following the decision, the school system issues a prior notice of placement of the

student at a school that can implement the IEP. 20 U.S.C. § 1415(c)(1). Should the

parents disagree with that placement selection (or any other aspects of the IEP), they can

seek a due process hearing. 20 U.S.C. § 1415(c)(2) and (f).

The administrative process described in the statute, if fully employed, results in an

evidentiary administrative hearing before an impartial hearing officer, at the conclusion

of which an HOD is issued. 20 U.S.C. § 1415(f). Such an HOD contains findings of fact

and conclusions concerning the disputed matters. If the student's parents do not prevail

in the hearing proceedings, judicial review of the HOD by this Court may be sought. 20

U.S.C. § 1415(i)(2)(A).

## BACKGROUND AND RELEVANT FACTS

J.S. is a nine-year old student who has been determined eligible for special

education and related services. Complaint at 2. He has been diagnosed with Attention-

Deficit Hyperactivity Disorder ("ADHD") and he is classified as Other Health Impaired

("OHI"). Complaint at 2; Administrative Record at 22 (hereinafter "AR. at ___"). In the

beginning of the 2007-2008 school years, J.S. was attending Stanton Elementary School. AR. at 16. Pursuant to his then-current IEP, while at Stanton, J.S. was receiving 10 hours of specialized instruction and 1.5 hours of psychological services per week in a combination general/special education setting. AR. at 19, 38.

On September 4, 2007, DCPS convened a meeting to update J.S.' IEP. AR. at 16. The IEP team agreed that J.S' hours of specialized instruction should increase from 10 hours per week to 26 hours per week. AR. at 18. The team also agreed that a combination special education/general education program was no longer appropriate to meet J.S.' educational needs and that J.S. should be placed in a full-time special education program. AR. at 19. In accordance with this requirement, and the others identified in the IEP, DCPS proposed M.C. Terrell Elementary School ("M.C. Terrell") as an appropriate placement. *Id.* J.S.' advocate and his mother, Ms. Simmons, disagreed with the proposed placement of M.C. Terrell. *Id.* Ms. Simmons stated that she objected to the placement at M.C. Terrell "because of the interaction [J.S.] would experience with family members" who Ms. Simmons contends also attend M.C. Terrell. AR. at 19. J.S.' advocate reported that the student had been accepted at Sunrise Academy, which would provide an appropriate placement for J.S. AR. at 19. At the close of the meeting, DCPS issued a Prior Notice of Action formally notifying J.S.' parent that J.S. would be placed at M.C. Terrell. AR. at 217.

On September 20, 2007, the Plaintiff filed a due process complaint notice with the Student Hearing Office, alleging that DCPS had denied the student a FAPE when it (1) failed to properly convene and conduct the IEP/placement meeting; (2) failed to provide an appropriate placement; and (3) failed to properly convene and conduct a Manifestation

Review Determination meeting ("MDR").[1]  AR. at 14-15.  As remedy, Plaintiff sought

DCPS funding for placement at Sunrise Academy and two months of compensatory

education.  AR. at 14-15.

    At the due process hearing, Plaintiff provided no evidence that the IEP meeting

was improperly convened or conducted.  Regarding the allegation that DCPS failed to

have Manifestation Determination Review, Plaintiff provided conflicting testimony and

arguments.  J.S.' mother testified that while J.S. had been suspended from Stanton, he

was never been suspended from M.C. Terrell.  AR. at 46.  In addition, in her closing

statement, counsel for Plaintiff seemingly conceded that no suspension actually occurred

stating "they [DCPS] refuse to suspend this child."  AR. at 108.  No documentation of

suspension for more than ten days, or any other length of time, was presented.  AR. at 46.

Essentially, Plaintiff presented arguments and testimony in support of only one of the

claims made in her complaint: an alleged failure to provide an appropriate placement.

    Accordingly, the hearing officer found no evidence to the effect that the student

was suspended from a DCPS school and therefore determined J.S. was not denied a

Manifestation Determination Review.  AR. at 1, 6.  The hearing officer found that DCPS

had provided J.S. with FAPE.  AR. at 6.  He specifically determined "there was no

evidence to the effect that [M.C. Terrell] was inappropriate for the student…[t]he

uncontroverted testimony of the [special education coordinator at M.C. Terrell] was that

[M.C. Terrell] was implementing the September 4, 2007 IEP."  AR. at 6.

    Plaintiff's civil complaint herein, filed March 3, 2008, does not include

allegations relating to the charge that DCPS failed to properly convene and conduct the

---

[1] The IDEA requires a Manifestation Determination Review when discipline of a disabled student results in
a suspension of more than ten days. 20 U.S.C. § 1415(k)(1).

IEP/placement meeting, or regarding a lack of manifestation review.  *See* Complaint,
generally.  Instead, Plaintiff presents two counts: (1) "DCPS denied FAPE when it failed
to provide appropriate services" and (2)  "DCPS denied FAPE when it failed to issue a
notice of placement for an appropriate setting for the 2005/2006, 2006/2007, 2007/2008
school years."  Complaint at 3.  Count One, *in its entirety*, presents an issue *never raised*
before the hearing officer.  While the basic issue in Count Two – whether or not DCPS
provided an appropriate placement for J.S. – was raised at the administrative level, the
claim here includes time periods never raised with the hearing officer and not
contemplated by Plaintiff's Due Process Complaint.  AR. at 14.

Plaintiff here seeks reimbursement for private placement at Sunrise Academy and
*two years* of compensatory education.  Complaint at 3; Pl. Mot. at 10.[2]

## STANDARD OF REVIEW

### I.    Summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to
summary judgment if "there is no genuine issue of material fact and the moving party is
entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323
(1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Although a court should draw
all reasonable inferences from the records submitted by the nonmoving party, the mere
existence of a factual dispute, by itself, is insufficient to bar summary judgment.
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To be genuine, the issue
must be supported by evidence sufficiently admissible that a reasonable trier of fact could
find for the nonmoving party; to be material, the factual assertion must be capable of

---

[2] Plaintiff's Motion is not page-numbered; Defendants will use the e-file docket pagination when citing those filings.

affecting the substantive outcome of the litigation.  Id.; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In cases such as this, the IDEA dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B).  When neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997). Factual determinations of the hearing officer are to be accorded due weight.

## II.    <u>Review of administrative decisions under the IDEA.</u>

The IDEA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(i)(2)(A).  In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review." *Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).  Stated differently, the court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them." *Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Educ.*, 2001 U.S. Dist. LEXIS 6994, *12 (N.D. Ill., March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect.  *Angevine v. Smith,* 292 U.S.

App. D.C. 346, 959 F.2d 292, 295 (1992); *Kerkam v. McKenzie*, 274 U.S. App. D.C. 139, 862 F.2d 884, 887 (1988); *Lyons v. Smith*, 829 F. Supp. 414, 417 (D.D.C. 1993).  While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education."  *Lyons*, 829 F. Supp. at 418.  This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices.  *Rowley*, 458 U.S. at 207-08.  Accordingly, this Court must give the hearing officer's determination "due weight," and in order to prevail Plaintiff must show by a "preponderance of the evidence" that the hearing officer was wrong.

"Where the Hearing Officer's findings are based on credibility determinations of live witness testimony … and there is no supplementation of the record before the Court, particular deference is due to the Hearing Officer's decision."  *R.D. v. District of Columbia,* 374 F. Supp. 2d 84, 89-90 (D.D.C. 2005).

Because the subject HOD was appropriate in all respects challenged, Plaintiff cannot make the required showing, and summary judgment should be granted to the Defendants.

## <u>ARGUMENT</u>

I.    **Plaintiff's allegation that DCPS did not provide J.S. with appropriate services tailored to meet his unique educational needs was not raised at <u>the administrative level and therefore is not properly before this Court</u>.**

The Court cannot address issues that were not first presented to the hearing officer.  *See Roark v. District of Columbia*, 460 F. Supp. 2d. 32, 43 (D.D.C. 2006), *citing Shaw v. District of Columbia*, 238 F. Supp. 2d 127, 140 (D.D.C. 2002) (*citing Cox v.*

*Jenkins*, 878 F.2d 414, 420 (D.C. Cir. 1989)); *see also Herbin ex rel. Herbin v. District of Columbia*, 362 F. Supp. 2d, 254, 263 n. 10 (D.D.C. 2005) and *Holdzclaw v. District of Columbia*, 524 F. Supp. 2d 43, 47 (D.D.C. 2007).  Absent "allegation[s] that an attempt was made to raise this issue before the hearing officer [who] declined to consider it," and "absent a showing that exhaustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the IDEA before seeking judicial review under the Act."  *Roark* at 43 (internal citations omitted).  The requirement to exhaust administrative remedies serves valuable purposes:

> [I]t prevents courts from interrupting the administrative process permanently; it allows the agency to apply its specialized expertise to the problem; it gives the agency an opportunity to correct its own errors; it ensures that there will be a complete factual record for the court to review; and it prevents the parties from undermining the agency by deliberately flouting the administrative process.

*Id., citing Cox*, 878 F.2d at 419.

Plaintiff here raises, for the first time, the allegation that DCPS denied FAPE by failing to provide appropriate services tailored to meet J.S. unique needs.  Pl. Mot. at 6, Complaint at 3.  Plaintiff did not raise this issue at the administrative level – it is not alleged in her Due Process Complaint and she did not raise it before the hearing officer. AR. at 14.  In addition, the record is clear that Plaintiff's objection was not to the services to be provided to J.S. but to *the proposed placement*.

First, on the September 4, 2007, IEP, which requires a signature of the parents to confirm, *inter alia,*[3] agreement with the contents of the IEP, Ms. Simmons signed and noted:  "I disagree with placement at DCPS."  AR. at 23.  Second, Sunrise Academy, the

---

[3] The full text of the section of the IEP requesting the parent's signature reads:  "I agree with the contents of this IEP. I have has an opportunity to be involved with the development of this IEP.  I have received a copy of this IEP and consent to the implementation of services in the IEP.  I have received a copy of the procedural safeguards and parental rights pertaining to special education."  AR. at 23.

school which Plaintiff argues is the appropriate placement, made the decision that they could properly meet J.S.' needs based on (albeit not exclusively) *the September 4, 2007, IEP*. Tr. at 71-74. Finally, Plaintiff does not claim that Sunrise Academy will provide any services that are not already provided for in J.S.' IEP.

Thus, the due process complaint and the record are clear that Plaintiff did not, at the administrative proceeding, purport to challenge the September 4, 2007, IEP and the services provided. Accordingly, these matters are not properly before the Court, and must be disregarded.

**II.    Alternatively, on review of the merits, Plaintiff's allegation that DCPS did not provide J.S. with appropriate services tailored to meet his unique needs must fail.**

Even if reviewed on the merits, Plaintiff's argument that DCPS did not provide appropriate services "tailored to meet J.S.' unique needs" as required by the IDEA must fail. The IDEA guarantees "that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); see also 34 C.F.R. § 300.8 (defining "child with a disability"). Once a child is determined to be disabled, the school district is required "to create and implement an IEP, which is the 'primary vehicle' for implementing the Act." *Lesesne v. District of Columbia*, 447 F.3d 828, 830 (D.C. Cir. 2006), *citing Honig v. Doe*, 484 U.S. 305, 311 (1988). The IEP "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Id.* (internal citations omitted).

Plaintiff's assertions that DCPS did not provide for appropriate services tailored meet J.S.' needs all focus on services which *were in fact provided for* in J.S.' September 4, 2007, IEP.[4]  Plaintiff alleges, for example, that J.S. is in need of socio-emotional therapy.  Pl. Mot. at 7.  However, J.S.' September 4, 2007, IEP provides for 1.5 hours per week of psychological services.  AR. at 23.

Plaintiff also asserts that J.S. needed specific instruction in reading and writing. Pl. Mot. at 9.  But, this instruction is provided for in J.S.' September 4, 2007, IEP.  AR. at 25-26.  For reading, the IEP includes an annual goal of "6 months to 1 year's growth" by demonstrating eighty-percent mastery of six specific short term objectives.  AR. at 25. For written expression, the IEP contains a similar annual goal, and six additional six short term objectives specific to writing skills.  AR. at 26.  Here too, Plaintiff's allegation that DCPS failed to provide for services tailored to meet J.S.' unique needs lacks any support.

Next, Plaintiff alleges that DCPS did not develop a plan with appropriate strategies to address J.S.' behavior problems.  Pl. Mot. at 7.  In developing an IEP for a child whose behavior impedes the child's learning, the IEP team must "consider the use of positive behavioral interventions and support, and other strategies, to address that behavior."  34 C.F.R. 300.324(a)(2)(i).  Here, J.S.' IEP includes socio-emotional goals and objectives addressing J.S.' ability to stay on task and manage anger issues.  AR. at 28.  In addition, the September 4, 2007, IEP meeting notes include both a Functional Behavioral Assessment ("Assessment") and an Intervention Behavior Plan ("Plan").  AR. at 31-32.  J.S.' behavioral issues are identified in the Assessment, which notes that he disregards classroom and school rules, fights with peers and disrespects adults by leaving

---

[4] In one instance, with regard to the social-emotional services, Plaintiff alleges that the services were not, *in fact*, provided to J.S. for some time periods.  Pl. Mot. at 7.  However, Plaintiff does not proffer, and the record does not provide, any support for this allegation.

class and entering unsupervised areas.  AR. at 31.  The Assessment identifies positive

reinforcement particular to J.S., such as extra computer time.  AR. at 31.  The Plan

identifies the particular behaviors to be addressed and the strategies appropriate for each.

AR. at 32.  The strategies identify specific positive behavioral interventions for J.S.'

teachers including, *inter alia*, use of a token economy system, modeling socially

acceptable behavior and setting boundaries and behavioral expectations.  AR. at 32.

 Thus, J.S.' IEP included each of the services that Plaintiff's assert are necessary to

meet J.S.' unique needs – socio-emotional services, reading and writing instruction and a

proper behavioral plan.  Plaintiff's assertions to the contrary are unsupported and must be

disregarded.

### III. Whether or not M.C. Terrell was an appropriate placement is the only proper issue of placement before this Court.

 Turning now to the issue of placement, which the only proper claim before this

Court, it is again necessary to shave away issues suggested by Plaintiff which were not

presented at the administrative level and are therefore not properly before this Court.

Plaintiff alleges in her civil complaint that "DCPS denied FAPE when it failed to issue a

notice of placement for an appropriate setting for the 2005/2006, 2006/2007, 2007/2008

school years."  Complaint at 3.  However, the issue of placement at the due process

hearing did not span nearly such an expansive timeline.  Plaintiff's due process complaint

alleges that "DCPS denied [J.S.] FAPE by failing to properly provide an appropriate

placement" and the section of the same entitled "Facts and Reasons for the Complaint"

makes clear that the objection is to placement *at M.C. Terrell* for the 2007/2008 school

year:

> [J.S.] is a 9 year-old, special education student currently attending the 4th
> grade at Stanton Elementary School in the District of Columbia. He was
> placed at M.C. Terrell because it his neighborhood school with full time
> special education program. Ms. Simmons informed that she did not
> believe that M.C. Terrell would provide appropriate services for her son.
> Ms. Simmons also wanted to visit the school before her son was sent to
> the school. Stanton informed that they were authorized to only present
> M.C. Terrell to the parent as a placement option. The following day, Ms.
> Simmons visited M.C. Terrell and found it to be an unstructured school
> without walls. [J.S.] went back to Stanton elementary, but he was told that
> he could not come to the school. Parent was sent a letter informing her not
> to allow [J.S.] to attend Stanton. Two days later bus services went into
> effect and [J.S.] began attending M.C. Terrell. Since attending M.C.
> Terrell, [J.S.] has twice been assaulted by a teacher. Police officer Palmer
> took report on the latest incident of assault. Moreover parent has received
> numerous calls informing her that the school is not able to address [J.S.]
> behavioral needs.

AR. at 14. If any doubt still existed about the objection to M.C. Terrell given the above

due process filing, during the hearing Plaintiff's counsel clearly defined the scope of the

allegation regarding inappropriate placement:

> MR. ST. CLAIR: Ms. Ekekwe, why are we here?
> MS. EKEKWE: We're here, because [J.S.] was placed at -- [J.S.] is a
> child with disability. And he was experiencing behavioral difficulties at
> the school.
> MR. ST. CLAIR: At what school?
> MS. EKEKWE: At Stanton School.
> **MR. ST. CLAIR: And which school are you saying is inappropriate?**
> **MS. EKEKWE: M.C. Terrell.**
> MR. ST. CLAIR: All right. Okay.
> MS. EKEKWE: Okay. He was experiencing behavioral difficulties at
> Stanton School. **DCPS placed him at M.C. Terrell over the objection of
> the mom.**

Tr. at 24-25 (emphasis added). Thus, the only issue before the hearing officer, and thus

the only issue properly before this Court, is whether or not the placement *at M.C. Terrell*

for the 2007/2008 school year was appropriate, not whether placement was appropriate for the 2005/2006 or 2006/2007 years.

**IV.    DCPS' proposed placement of M.C. Terrell was appropriate.**

Regarding the issue of the placement at M.C. Terrell, the hearing officer correctly found there was no evidence that M.C. Terrell was inappropriate. AR. at 6. He specifically noted that the "uncontroverted testimony of the [special education coordinator at M.C. Terrell] was that [M.C. Terrell] was implementing the September 4, 2007 IEP." AR. at 6. The hearing officer's determination was legally correct and supported by the record.

An appropriate placement is one that implements the student's IEP in an educational setting suited to the student's needs. *See Wilkins v. District of Columbia,* 2008 U.S. Dist. LEXIS 62769, *3 (D.D.C. 2008)*, citing Roark v. District of Columbia*, 460 F. Supp. 2d 32, 35 (D.D.C. 2006). The placement decision, in addition to conforming to a student's IEP, should consider the least restrictive environment and a setting closest to the student's home. 20 U.S.C § 1412(a)(5)(A); 34 C.F.R. § 300.116. The parents of a student with a disability must be members of the group making a decision regarding placement. 20 U.S.C. § 1414(e); 34 C.F.R. § 300.116. However, the IDEA does not require the student's education to be "designed according to the parent's desires." *See Shaw*, at 139, *citing Rowley* at 207 ("The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child.").

J.S.' September 4, 2007, IEP required 26 hours of specialized instruction per week and 1.5 hours of psychological services per week.  AR. at 23.  The specialized instruction included academic goals and objectives for reading, written expression, and mathematics; the IEP also included goals for J.S.' social-emotional development.  AR. at 25-28.  The IEP team determined that J.S. needed a "full time placement, out of general education setting to address his academic and socio-emotional needs." AR. at 29.  Ms. Pulliam, special education coordinator and clinical social worker at M.C. Terrell, testified that the school has full time special education teachers, social workers and school psychologists who could fully implement all aspects of the IEP.  Tr. at 76, 80.  When pressed by the hearing officer regarding whether M.C. Terrell could implement the IEP's individual objectives and goals for mathematics, reading, written expression and social-emotional aspects, Ms. Pulliam confirmed that all of these aspects of J.S.' IEP could be fulfilled at M.C. Terrell.  Tr. at 84-85.  Furthermore, Ms. Pulliam testified that J.S. was making progress at M.C. Terrell: "We were seeing some progress with [J.S.] here . . . [h]e had started . . . improving and mastering . . . working on some of the goals that were on his IEP."  Tr. at 78.  Ms. Pulliam reported that J.S.' behavioral issues had also improved, while they had not entirely resolved, the issues arose less frequently than when J.S. had arrived at M.C. Terrell.  Tr. at 77.

In support of her assertion that M.C. Terrell was not an appropriate placement, Plaintiff wrongly contends that M.C. Terrell is an "open space school."  Pl. Mot. at 9.  This is simply incorrect.  At the hearing, Ms. Pulliam testified that "J.S. was placed in a self-contained classroom."  Tr. at 86.  She further explained:

> But all the classrooms here, except the art area, is self-contained. You
> have to go through a steel door to get through the MCT Center, as well as

14

> the other three classrooms that are up here are self-contained. The school was an open-space school prior to our merging with another school. Walls have been built, but [J.S.] is not even on the floor that, that would even have anything to do with him. So he was in a self-contained classroom setting not an open-space setting.

Tr. at 86.

Plaintiff also argues that M.C. Terrell was not appropriate because J.S.' behavior problems escalate when he is in the same school as relatives. Pl. Mot. at 7. However, in addition to being completely irrelevant to the issue of placement, other than this bald assertion – the record contains no evidence to support the allegation. Nor does the record contain any evidence that J.S. has any relatives at M.C. Terrell or that he would be in contact with any of them at M.C. Terrell. See AR., generally. In fact, of the number of behavior incidents which Ms. Simmons testified about not one mentioned the involvement of a relative of J.S. See Plaintiff's testimony generally at AR. at 35-61.

Plaintiff's objections to M.C. Terrell rest on two allegations which dissolve under scrutiny. Plaintiff objects to M.C. Terrell based on a categorically incorrect allegation that M.C. Terrell is an open space school and based on a wholly irrelevant and unsupported allegation that J.S.' behavior problems escalate when he is in the same school as other family members. As shown above, DCPS' proposed placement of M.C. Terrell was appropriate, and Plaintiff's assertions to the contrary are without merit.

**V.**    **Because J.S. was provided with FAPE in a timely manner, Plaintiff is not <u>entitled to tuition reimbursement.</u>**

20 U.S.C. §1412(a)(10)(C)(i) provides that:

> Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education

15

> available to the child and the parents elected to place the child in such private school or facility.

20 U.S.C. §1412(a)(10)(C)(ii) provides that:

> If the parents of a child with a disability**,** who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school ***without the consent of or referral by the public agency***, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment  (emphasis added.)

*See also* 34 C.F.R. § 300.148(c).

Parents who unilaterally decide to place their disabled child in private school without consent of local school officials "do so at their own financial risk." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) (quoting *School Comm. of Burlington* v. *Department of Ed. of Mass.*, 471 U.S. 359, 373-374 (1985)).  "Parents may receive tuition reimbursement if a court finds "both that the public placement violated IDEA and the private school placement was proper under the Act." *Id.* at 15.  "The first factor is a threshold condition, for if the public school placement would have been appropriate, the analysis ends, and a disabled child's parents are not entitled to reimbursement."  *Razzaghi v. District of Columbia*, 2005 U.S. Dist. LEXIS 36771, *12 (D.D.C., September 28, 2005), *citing* 20 U.S.C. § 1412(a)(10)(C)(I) (indicating that IDEA "does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility."); *M.C. v. Valentin Bd. of Educ.,* 226 F.3d 60, 66 (2d Cir.2000) ("Only if a court

determines that a challenged IAP [sic] was inadequate should it proceed to the second question").

Defendants have established, *supra*, that the proposed placement at M.C. Terrell was appropriate. DCPS proposed M.C. Terrell as placement on September 4, 2007. AR. at 22. J.S. was accepted at Sunrise Academy on September 13, 2007 and did not start attending until October or November 2007.[5] AR. at 94; Tr. at 36. Since DCPS had proposed an appropriate educational placement for J.S. prior to Plaintiff's unilateral placement of J.S. at Sunrise Academy, Plaintiff is not entitled to tuition reimbursement. Accordingly, the December 3, 2007, HOD must be upheld.

## VI. Because J.S. was provided with FAPE, Plaintiff is not entitled to compensatory education.

Courts and hearing officers may award compensatory education when a school deprives a student of FAPE in violation of the IDEA. *Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005). Compensatory education is intended to replace the "educational services the child should have received in the first place." *Lesesne v. District of Columbia*, 447 F.3d 828, 833 (D.C. Cir. 2006). "Because compensatory education is a remedy for past deficiencies in a student's educational program, however, *such a finding is a necessary prerequisite* to a compensatory education award. *Peak v. District of Columbia*, 526 F. Supp. 2d 32, 36 (D.D.C. 2007), *citing Reid*, 401 F.3d at 523 (emphasis added; internal citations omitted). Here, the hearing officer correctly found that DCPS had provided J.S. with FAPE. AR. at 6. As shown above, this finding is supported by the record which establishes placement at M.C. Terrell was appropriate. Because DCPS

---

[5] The record is not clear regarding the exact date that J.S. started attending Sunrise Academy. Ms. Simmons testimony estimated J.S. started sometime in November 2007, while the testimony of Makini Niliwaambieni, principal of Sunrise Academy, indicated that J.S. started sometime in October 2007. Tr. at 36.

has not denied J.S. FAPE, and because such a finding is a prerequisite to an award of compensatory education, Plaintiff is not entitled to such an award.

## **CONCLUSION**

For the foregoing reasons, this Court should grant the Defendants' Motion for Summary Judgment, and deny Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Juliane T. DeMarco**
JULIANE T. DEMARCO
Assistant Attorney General
Bar Number 490872
441 Fourth Street, N.W., Sixth Floor
Washington, D.C. 20001
(202) 724-6614
(202) 741-0575 (fax)
September 5, 2008          E-mail: Juliane.DeMarco@dc.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| ELOISE SIMMONS, mother and ) | |
| next friend of J.S., a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-0388 (JR) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 56.1, the Defendants submit this statement of

material facts as to which there is no genuine issue:

1.      J.S. is a nine-year old student who has been determined eligible for special

education and related services.  Complaint at 2.

2.      J.S. has been diagnosed with Attention-Deficit Hyperactivity Disorder

("ADHD") and he is classified as Other Health Impaired ("OHI").  Complaint

at 2; AR. at 22.

3.      In the beginning of the 2007-2008 school years, J.S. was attending Stanton

Elementary School ("Stanton").  AR. at 16.  Pursuant to his then-current

Individualized Education Program ("IEP"), while at Stanton, J.S. was

receiving 10 hours of specialized instruction and 1.5 hours of psychological

services per week in a combination general/ special education setting.  AR. at

19, 38.

4.    DCPS convened a meeting on September 4, 2007, to update J.S.' IEP.  AR. at 16.

5.    At the September 4, 2007, meeting, the team developed an IEP which required 26 hours of specialized instruction and 1.5 hours of psychological services per week.  AR. at 25.  The specialized instruction included academic goals and objectives for reading, written expression, and mathematics; the IEP also included goals for J.S.' social-emotional development.  AR. at 25-28.

6.    The specialized instruction in J.S.' September 4, 2007, IEP addressing social-emotional development included goals and objectives concerning J.S. ability to stay on task and manage anger issues.  AR. at 28.

7.    The September 4, 2007, IEP meeting notes included both a Functional Behavioral Assessment and an Intervention Behavior Plan which identify and addressed J.S.' behavioral issues.  AR. at 31-32.  The strategies identified specific positive behavioral interventions for J.S.' teachers including, *inter alia*, use of a token economy system, modeling socially acceptable behavior and setting boundaries and behavioral expectations.  AR. at 32.

8.    At the September 4, 2007, meeting, the IEP team agreed that a combination special education/general education program was no longer appropriate to meet J.S.' educational needs and that J.S. should be placed in a full-time special education program.  AR. at 19.

9.    DCPS proposed M.C. Terrell Elementary School ("M.C. Terrell") as placement for J.S and on September 4, 2007 issued a prior action notice formally placing J.S. at M.C. Terrell.  AR. at 18, 22.

10.    J.S.' advocate and his mother, Ms. Simmons, disagreed with the proposed

placement at M.C. Terrell.  AR. at 18.

11.    On the September 4, 2007, IEP, which requires a signature of the parents to

confirm, *inter alia,* agreement with the contents of the IEP, Ms. Simmons

signed and noted:  "I disagree with placement at DCPS."  AR. at 23.

12.     At the September 4, 2007, meeting, Ms. Simmons stated that she objected to

the placement at M.C. Terrell "because of the interaction he would experience

with family members" who Ms. Simmons contends attend M.C. Terrell.  AR.

at 19.

13.    J.S.' advocate reported that the student had been accepted at Sunrise Academy

which would provide an appropriate placement for J.S.  AR. at 19.

14.    Sunrise Academy made the decision that they could properly meet J.S.' needs

based on (albeit not exclusively) the September 4, 2007, IEP.  Tr. at 71-74.

15.    J.S. attended M.C. Terrell from September 2007 until late October or early

November 2007.[1]

16.    Ms. Pulliam, the special education coordinator at M.C. Terrell, confirmed that

all aspects of J.S.' September 4, 2007, IEP could be fulfilled at M.C. Terrell.

Tr. at 84-85.

17.    Ms. Pulliam testified that J.S. was making progress at M.C. Terrell.  Tr. at 78.

---

[1] The record is not clear regarding the exact date that J.S. started attending Sunrise Academy.  Ms.
Simmons testimony estimated J.S. started sometime in November 2007, while the testimony of Makini
Niliwaambieni, principal of Sunrise Academy, indicated that J.S. started sometime in October 2007.  Tr. at
36.

18.    Ms. Pulliam also reported that J.S.' behavioral issues had improved and while
       not entirely resolved, the issues arose less frequently than when J.S. had
       arrived at M.C. Terrell.  Tr. at 77.

19.    At M.C. Terrell, J.S. was placed in a self-contained classroom; M.C. Terrell is
       not an open space school.  Tr. at 86.

20.    J.S. was accepted at Sunrise Academy on September 13, 2007 and did not
       start attending until October or November 2007.[2]  AR. at 94; Tr. at 36.

21.    On September 20, 2007, Plaintiff filed a due process complaint notice with the
       Student Hearing Office, alleging that DCPS denied the student a FAPE when
       it (1) failed to properly convene and conduct the IEP/placement meeting; (2)
       failed to provide an appropriate placement; and (3) failed to properly convene
       and conduct a Manifestation Review Determination meeting.  AR. at 14-15.

22.    In the December 3, 2007, hearing officer's determination, the hearing officer
       found that DCPS had provided J.S. with FAPE.  AR. at 6.  He specifically
       determined "there was no evidence to the effect that [M.C. Terrell] was
       inappropriate for the student…[t]he uncontroverted testimony of the [special
       education coordinator at M.C. Terrell] was that [M.C. Terrell] was
       implementing the September 4, 2007 IEP."  AR. at 6.

23.    The hearing officer determined that Ms. Simmons "could not recall critical
       details and dates and was not a credible witness."  AR. at 6.

24.    Plaintiff's civil complaint, alleges (1) "DCPS denied FAPE when it failed to
       provide appropriate services" and (2)  "DCPS Denied FAPE when it failed to

---

[2] *See* Fn 1.

issue a notice of placement for an appropriate setting for the 2005/2006, 2006/2007, 2007/2008 school years." Complaint at 3.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Juliane T. DeMarco**
JULIANE T. DEMARCO
Assistant Attorney General
Bar Number 490872
441 Fourth Street, N.W., Sixth Floor
Washington, D.C. 20001
(202) 724-6614
(202) 741-0575 (fax)

September 5, 2008              E-mail: Juliane.DeMarco@dc.gov

5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOISE SIMMONS, mother and<br>next friend of J.S., a minor,<br><br>      Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 08-0388 (JR)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT
### OF MATERIAL FACTS AS WHICH THERE IS NO GENUINE ISSUE

Defendants, by counsel, here respond to the Plaintiff's Statement of Material Facts. Defendants note that the parties agree that this case may be disposed of by summary judgment motions. Thus, while Defendants do not claim that the facts contained in the Plaintiff's Statement create a genuine issue requiring trial, the facts set forth in the Defendants' Statement of Material Facts directly conflict with the Plaintiff's facts in that they require a grant of summary judgment for the Defendants. Also, the Defendants question the materiality of some of the Plaintiff's fact statements, as well as the accuracy of some of those statements. The Court should assess the weight ascribed to these fact statements and their materiality to the issues presented in this case accordingly. (Paragraph numbers below correspond to those in Plaintiff's fact statement.)

1.      Defendants do not dispute that J.S. had behavior and academic problems at Stanton Elementary School ("Stanton") or behavior problems at M.C. Terrell Elementary School ("M.C. Terrell"). The record citations do not support the allegation that J.S. experienced academic difficulties while at M.C. Terrell.

2.    Defendants do not dispute that J.S. had daily behavior problems at Stanton. Defendants do not dispute that behavioral problems existed at M.C. Terrell, but note that the record citations do not support the allegation that the problems were "daily."

3.    Not disputed.

4.    Not disputed.

5.    Not disputed.

6.    This paragraph is not supported by any citation to the record. Absent any evidentiary support, the allegations in this paragraph cannot be evaluated or properly considered as part of a statement of facts. See LCvR 7(h).

7.    Defendants do not dispute that Ms. Simmons testified to the statement in paragraph 7. Defendants note that no additional evidence exists in the record to support this allegation. Defendants further note that the hearing officer found that Ms. Simmons was not a credible witness. AR. at 6.

8.    Not disputed.

9.    Defendants do not dispute that DCPS placed J.S. at M.C. Terrell; Defendants clarify that M.C. Terrell was not J.S.' neighborhood school. AR. at 33-34.

10.   Not disputed.

11.   This statement is inaccurate and unsupported by the citations provided. The September 4, 2007, meeting notes reflect "an attempt was made to contact Sunrise Academy via phone to verify the student was accepted and to discuss their program." Tr. at 102. Defendants do not dispute that no representative from M.C. Terrell was present at the same meeting.

2

12. Defendants do not dispute that Ms. Simmons testified to the statement in paragraph 12. However, the statement is inaccurate, as M.C. Terrell is not an open space school. Tr. at 86-87

13. Defendants do not dispute the general notion that behavioral issues existed at both Stanton and M.C. Terrell. Defendants do not dispute that Ms. Simmons testified to the statements in paragraph 13. Defendants note that no additional evidence exists in the record to support these allegations. Defendants further note that the hearing officer found that Ms. Simmons was not a credible witness as she could not recall critical details and dates. AR. at 6.

14. Defendants do not dispute the general notion that behavioral issues existed at M.C. Terrell. Defendants do not dispute that Ms. Simmons testified to the statement in paragraph 14. Defendants note that no additional evidence exists in the record to support these allegations. Defendants further note that the hearing officer found that Ms. Simmons was not a credible witness as she could not recall critical details and dates. AR. at 6.

15. This paragraph is not supported by any citation to the record. Absent any evidentiary support, the allegations in this paragraph cannot be evaluated or properly considered as part of a statement of facts. See LCvR 7(h).

16. This paragraph is not supported by any citation to the record. Absent any evidentiary support, the allegations in this paragraph cannot be evaluated or properly considered as part of a statement of facts. See LCvR 7(h).

17.    This paragraph is not supported by any citation to the record.  Absent any evidentiary support, the allegations in this paragraph cannot be evaluated or properly considered as part of a statement of facts. See LCvR 7(h).

18.    Paragraph 18 is immaterial as it is unrelated to any claims or allegations made by Plaintiff.

19.    Paragraph 19 is immaterial as it is unrelated to any claims or allegations made by Plaintiff.  Defendants note that the September 4, 2007, IEP changed J.S.' placement from a combination special education/general education program in which he had received 10 hours of specialized instruction per week to a full-time special education program in which received 26 hours of specialized instruction per week.  AR. at 18-19.

20.    Paragraph 20 is immaterial, Plaintiff does not challenge the February 21, 2007, hearing officer's decision, nor does she contest DCPS' compliance with the same.

21.    Paragraph 21 is immaterial, Plaintiff does not challenge the February 21, 2007, hearing officer's decision, nor does she contest DCPS' compliance with the same.

22.    Not disputed.

23.    Not disputed.

24.    Not disputed.

25.    Not disputed that the classroom has a teacher.  The presence of a teacher's assistant and behavioral staff in the classroom is not supported by the record; more precisely, the Sunrise Academy principal testified: "We have a teacher.

4

We have an instructional assistant as well as a behavior staff to work with the classes and the students." T at 69.

26.    Not disputed.

27.    Not disputed.

28.    Not disputed.

29.    Paragraph 29 is not a material fact, but represents Plaintiff's prayer for relief.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Juliane T. DeMarco**
JULIANE T. DEMARCO
Assistant Attorney General
Bar Number 490872
441 Fourth Street, N.W., Sixth Floor
Washington, D.C. 20001
(202) 724-6614
(202) 741-0575 (fax)
September 5, 2008        E-mail: Juliane.DeMarco@dc.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELOISE SIMMONS, mother and next friend of J.S., a minor, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 08-0388 (JR) |
| DISTRICT OF COLUMBIA, *et al.,* | ) ) ) | |
| Defendants. | ) ) | |

## <u>ORDER</u>

Upon consideration of the Defendants' Motion for Summary Judgment and the Plaintiff's Cross-Motion for Summary Judgment, the Oppositions and Replies thereto, and the record herein, it is, on this _____ of _____, 2008, hereby **ORDERED** that:

1. the Defendants' Motion for Summary Judgment is **GRANTED**; and it is further **ORDERED** that

2. the Plaintiff's Motion for Summary Judgment is **DENIED;** and it is further **ORDERED** that

3. this case is **DISMISSED WITH PREJUDICE.**


_____
United States District Judge James Robertson